## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : | Master File No. 02CV1781 |
| | : | |
| | : | **CLASS ACTION** |
| THIS DOCUMENT RELATES TO: | : | |
| <u>Los Angeles County Employees Retirement Association vs. John J. Rigas</u> | : | E.D. Pa. No. 02-4086 |
| | : | |
| <u>Franklin Strategic Income Fund vs. John J. Rigas</u> | : | E.D. Pa. No. 02-4292 |
| | : | |

## O R D E R

AND NOW, this _____ day of _____, 2002, upon

consideration of the Motion to Dismiss, or in the alternative, to Strike and for a More definite

Statement, filed by defendant Peter Venetis, **IT IS ORDERED** that the Motion is **GRANTED**,

and that the claims asserted against Peter Venetis in <u>Los Angeles County Employees Retirement

Association vs. John J. Rigas</u>, E.D. Pa. No. 02-4086, and <u>Franklin Strategic Income Fund vs.

John J. Rigas</u>, E.D. Pa. No. 02-4292, are dismissed.

### BY THE COURT:

_____
Herbert J. Hutton, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : : : | Master File No. 02CV1781 |
| | : | CLASS ACTION |
| THIS DOCUMENT RELATES TO: Los Angeles County Employees Retirement Association vs. John J. Rigas | : : : : : | E.D. Pa. No. 02-4086 |
| Franklin Strategic Income Fund vs. John J. Rigas | : : : | E.D. Pa. No. 02-4292 |

DEFENDANT PETER VENETIS' MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, TO STRIKE AND FOR A MORE DEFINITE STATEMENT

For the reasons set forth in the accompanying memorandum of law, Peter Venetis

respectfully requests that the claims against him in the above captioned cases be dismissed under

Rule 12(b)(6). Alternatively, he requests that all references in those complaints to him being an

"officer" of Adelphia be stricken under Rule 12(f), and that the plaintiffs in those cases be

required to file more specific pleadings, under Rule 12(e), stating the capacity in which they

claim to be suing Peter Venetis, and the statement(s) and/or action(s) of Peter Venetis they allege

give rise to liability.

Respectfully submitted,

COZEN O'CONNOR

Dated:  September 24, 2002          By: _____

Patrick J. O'Connor (13086)
David M. Doret (15634)
Aaron Krauss (62419)
1900 Market Street
Philadelphia, PA  19103
215-665-2000

Attorneys for Defendant Peter Venetis

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : | Master File No. 02CV1781 |
| | : | |
| | : | **CLASS ACTION** |
| THIS DOCUMENT RELATES TO: | : | |
| Los Angeles County Employees Retirement Association vs. John J. Rigas | : | E.D. Pa. No. 02-4086 |
| | : | |
| Franklin Strategic Income Fund vs. John J. Rigas | : | E.D. Pa. No. 02-4292 |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT PETER VENETIS' MOTION TO DISMISS, OR, IN THE
ALTERNATIVE, TO STRIKE AND FOR A MORE DEFINITE STATEMENT**

This Memorandum of Law is respectfully submitted by defendant Peter Venetis in

support of his Motion to Dismiss the complaints in Los Angeles County Employees Retirement

Association vs. John J. Rigas, E.D. Pa. No. 02-4086, and Franklin Strategic Income Fund vs.

John J. Rigas, E.D. Pa. No. 02-4292 (the "Complaints") pursuant to Rule 12(b)(6).

Alternatively, Peter Venetis seeks to strike factually incorrect allegations pervading the

Complaints which refer to him as an "officer" of Adelphia, and to require plaintiffs to file a more

definite statement. This alternative motion is made pursuant to Rules 12(f) and 12(e)

respectively.

**STATEMENT OF FACTS**

**The Adelphia Litigation**

Forty-one class and individual investor actions are presently pending before this

Court, all of which arise out of the decline in the price of the shares of Adelphia

Communications Corporation ("Adelphia"), and its subsequent bankruptcy.[1] On April 30, 2002, this Court entered an order (the "Consolidation Order") consolidating all cases relating to the purchase of Adelphia's securities under a single caption. See Exhibit A. The Consolidation Order explicitly stated that it applied to cases filed after the date of the order, and that such cases would be, and were, consolidated. See Exhibit A at ¶ 5.

In addition to being an exercise of its inherent power to manage its docket, the Consolidation Order was a wise exercise of judicial discretion. It had the effect of conserving the resources of both the Court and the litigants by obviating the need for the parties to prepare, and the Court to supervise and rule on, what would almost certainly be nearly identical pleadings, discovery requests and discovery responses in what has now mushroomed to 41 separate cases. Obviously, it is not an economical use of the resources of either the litigants or the Court to require a defendant to respond to an individual complaint, rather than being allowed to wait for the appointment of lead counsel and the filing of a consolidated complaint (which may have the effect of mooting some or all of the existing complaints).

**The Present Complaints**

On June 26, 2002, the firm of Grant & Eisenhofer, P.A. filed a complaint on behalf of the Los Angeles County Employees Retirement Association ("LACERA") at E.D. Pa. No. 02-4086 (the "LACERA Complaint"). This complaint alleged claims on behalf of LACERA, which was allegedly a purchaser of Adelphia securities, and noted that related claims (including claims enumerated in this Court's Consolidation Order) were pending.

On June 28, 2002, Grant & Eisenhofer filed another complaint on behalf of the Franklin Strategic Income Fund ("Franklin") at E.D. Pa. No. 02-4292 (the "Franklin

---

[1] Adelphia's bankruptcy is pending before Bankruptcy Judge Robert E. Gerber of the Southern District of New York at number 02-41729.

Complaint"). The Franklin Complaint also alleged claims on behalf of several of the Franklin funds, which were allegedly purchasers of Adelphia securities, and noted that it was related to the LACERA Complaint and, by extension, the claims related to the LACERA Complaint.

The Complaints each allege the same substantive wrongdoing. As to Peter Venetis, the Complaints both state that he was an officer of Adelphia, as well as a director. See, e.g., LACERA Complaint at ¶ 297, 307 and 401; Franklin Complaint at ¶ 257, 266, 267 and 302. The allegation that Peter Venetis was an officer of Adelphia is suffused within the fabric of the Complaints, which attempt to insinuate (albeit improperly) that Peter Venetis was in control of Adelphia's day-to-day affairs along with several other directors who also served as officers of Adelphia.

**The Procedural Posture Of The LACERA And Franklin Cases**

For reasons unknown to anyone but plaintiffs' counsel, Grant & Eisenhofer has taken the position that the Consolidation Order, despite its explicit language, does not apply to the Complaints. As a result, on August 2, 2002, Deloitte and Touche ("Deloitte") filed a Motion to Implement the Court's April 30, 2002 Consolidation Order (the "Motion to Implement"). See Exhibit B. After Deloitte filed the Motion to Implement, it asked for an extension of time to respond to the Complaints until the Motion to Implement was decided. Grant & Eisenhofer, however, refused to grant Deloitte an extension of time, and Deloitte filed a motion requesting such an extension. Directors Dennis Coyle, Erland Kailbourne, Leslie Gelber and Peter Metros joined in Deloitte's motion. See Exhibit C.

On August 27, 2002, the Court relieved Deloitte, Coyle, Kailbourne, Gelber and Metros of any obligation to respond to the Complaints until after the disposition of Deloitte's Motion to Implement. See Exhibit D.

3

Prior to August 27, 2002, LACERA and Franklin had agreed to grant Peter Venetis an extension of time to answer, move or otherwise plead with respect to the Complaints up to and including September 24, 2002. When Peter Venetis received a copy of the Court's August 27, 2002 Order, he contacted plaintiffs to see if they would agree that the Court's August 27, 2002 Order also applied to him. Grant & Eisenhofer, however, maintained its refusal to grant extensions pending the disposition of the Motion to Implement, and insisted that Peter Venetis respond to the Complaints by September 24, 2002.

Faced with Grant & Eisenhofer's refusal to agree that the Court's August 27, 2002 Order was generally applicable, as logic dictated and fundamental fairness required, Peter Venetis filed his own motion to suspend his obligation to respond to the Complaints pending the disposition of the Motion to Implement. <u>See</u> Exhibit E. The Court has not ruled on Peter Venetis' motion as of this date.

**<u>The Present Motion</u>**

Peter Venetis hereby files a pre-answer motion under Rules 12(b)(6), 12(e) and 12(f), and seeks the following relief:

1.      Pursuant to Rule 12(b)(6), dismissal of the LACERA and Franklin Complaints for failure to state a cause of action against him.

2.      In the alternative, entry of an order (a) pursuant to Rule 12(f) striking all references in the Complaints to Peter Venetis serving as an officer of Adelphia, and (b) pursuant to Rule 12(e) requiring LACERA and Franklin to file more definite statements specifying the capacity in which Peter Venetis is being sued and the acts of Peter Venetis which plaintiffs allege give rise to liability.

For the reasons set forth below, the relief sought by Peter Venetis' motion should be granted.

4

**ARGUMENT**

I.    **THE LACERA AND FRANKLIN COMPLAINTS SHOULD BE DISMISSED AS TO PETER VENETIS UNDER RULE 12(B)(6).**

The Complaints both state that Peter Venetis was an officer of Adelphia, as well as a director. See, e.g., LACERA Complaint at ¶ 297, 307 and 401; Franklin Complaint at ¶ 257, 266 and 302. Numerous documents filed with the SEC, however, make it clear that, while Peter Venetis was a director of Adelphia at certain times, he was NEVER an officer of Adelphia. See, e.g., Exhibit F.

The Court is entitled to take notice of documents filed with the Securities and Exchange Commission ("SEC") when considering this motion to dismiss, and those documents form part of the Rule 12 record. These documents are part of the Rule 12 record because many of them are fairly incorporated, and relied upon, by LACERA and Franklin in the Complaints. Additionally, a court is entitled to rely on documents filed with the SEC when considering a motion to dismiss, even if those documents are not incorporated into the complaint which is the subject of the motion. See, e.g., Kramer v. Time Warner, Inc., 937 F.2d 767, 773-74 (2d Cir. 1991); Wallace v. Systems & Computer Technology Corp., 1997 WL 602808 at *5 and n.14 (E.D. Pa. Sept. 23, 1997). Where a pleading contradicts a document which forms a part of the Rule 12 record, the document controls. See, e.g., Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.), cert. denied, 484 U.S. 944 (1987).

The allegation that Peter Venetis was an officer of Adelphia pervades the LACERA and Franklin Complaints. The allegation that Peter Venetis was an officer, as well as a director, of Adelphia is the foundation upon which LACERA and Franklin base their claims of wrongdoing against him. This allegation, however, is demonstrably false as a matter of law. See, e.g., Exhibit F. As a result, LACERA and Franklin cannot prevail on any claims which are

predicated on their (demonstrably false) allegation that Peter Venetis was an officer of Adelphia. Such claims must therefore be dismissed under Rule 12(b)(6).[2]

## II.    IN THE ALTERNATIVE, LACERA AND FRANKLIN SHOULD BE REQUIRED TO AMEND THEIR COMPLAINTS.

### A.    The Allegations In The LACERA And Franklin Complaints Regarding Peter Venetis Serving As An Officer Of Adelphia Should Be Stricken Under Rule 12(f).

To the extent that LACERA and Franklin may claim that the allegation that Peter Venetis was an officer of Adelphia is not necessary for them to assert their claims, then such an allegation -- which is incorrect but which is embedded throughout plaintiffs' allegations of wrongdoing -- is "immaterial" or "impertinent" within the meaning of Rule 12(f).

Such an incorrect, but embedded, allegation is both confusing and introduces needless complexities into the claims plaintiffs have attempted to assert against Peter Venetis. Moreover, it improperly misrepresents Peter Venetis' role by claiming he occupied a position as an Adelphia "officer" that all persons (including LACERA and Franklin) know as a result of the SEC filings that he did not occupy. As a result, the Court should enter an order requiring such allegations be stricken.

### B.    LACERA And Franklin Should Be Required To File A More Definite Statement Under Rule 12(e).

The outright contradiction between the allegations in the Complaints and the controlling documents which form a part of the Rule 12 record points up a fundamental deficiency in the Complaints: the Complaints as drafted both misstate and obscure the capacity in which Peter Venetis is being sued. Since LACERA and Franklin have either not stated or misstated the capacity in which they are suing Peter Venetis, he is unable to determine the

---

[2] A number of plaintiffs' claims also fail because they fail to meet the requirements of Rule 9(b). This failure is discussed infra.

6

precise nature of the wrongdoing alleged against him, and thus what defenses, further claims, or other responses would be appropriate.  The Court should therefore require LACERA and Franklin to file a more definite statement.

By alleging that Peter Venetis was both an officer and a director of Adelphia, LACERA and Franklin attempt to lump Peter Venetis together with other defendants who, unlike him, were officers, and therefore had responsibility for running Adelphia's day-to-day affairs.  It is therefore unreasonable for Peter Venetis to be required to respond to the LACERA and Franklin Complaints as they are drafted.  Since he was never an officer, and therefore never had any day-to-day involvement in the company's affairs, or any sphere of operating responsibilities, Peter Venetis only had the responsibilities as one of a number of non-management directors of the company.  Simply put, until LACERA and Franklin specify the basis of their allegations, and the duty they allege Peter Venetis failed to meet, he cannot respond in a meaningful fashion. Requiring LACERA and Franklin to state exactly what they think Peter Venetis did wrong, and the duty he allegedly violated, is necessary to allow him to formulate an appropriate pleading.

The confusion over the capacity in which Peter Venetis is being sued is further complicated by the fact that the Complaints do not specify what he allegedly did wrong.[3]

---

[3] While the Complaints do mention Peter Venetis' involvement with Praxis, see LACERA Complaint at ¶ 21, 193-197; Franklin Complaint at ¶ 20, 175-179, allegations regarding Praxis cannot support plaintiffs' claims.  This is because "the Board of Directors approved the formation and funding of Praxis Capital (the 'Praxis Transaction').  The independent members of the Board of Directors also approved the Praxis Transaction and determined that the Praxis Transaction was in the best interest of the Company and its subsidiaries and on terms at least as favorable as those which would be obtainable in a comparable arm's-length transaction." See Exhibit G at ¶ 16.  LACERA and Franklin incorporated Adelphia's May 24, 2002 8-K filing, in which this statement appears, into their complaints.  See LACERA Complaint at ¶ 129; Franklin Complaint at ¶ 112.  Similarly, allegations regarding Peter Venetis' use of an apartment in New York cannot support claims against Peter Venetis since Adelphia released him from any such claims after he resigned from Adelphia's board of directors.  See LACERA Complaint at ¶ 206(d); Franklin Complaint at ¶ 188(d); Exhibit H.

Plaintiffs fail to specify the "who, what, when, where and how" of Peter Venetis' alleged misrepresentations, or specify the capacity in which they are suing him. This, too, justifies Peter Venetis' request for a more definite statement pursuant to Rule 12(e). See generally DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.), cert. denied, 498 U.S. 941 (1990); Wallace, 1997 WL 602808 at *16 and n.36; Fed. R. Civ. P. 9(b).

It is immaterial that plaintiffs have set forth numerous statements (including the who, what, when, where and how), which they allege constitute misrepresentations by others. In a multi-defendant case, plaintiffs must distinguish between different parties, and must specifically state what each party allegedly did. See, e.g., Rosenbaum & Co. v. H.J. Myers & Co., 1997 WL 689288 at *2-*3 (E.D. Pa. Oct. 9, 1997); Fitch v. Radnor Industries, Ltd., 1990 WL 150110 at *5-*6 (E.D. Pa. Sept. 27, 1990).[4] Since this is the precise failing of the Complaints, at least vis a vis Venetis, LACERA and Franklin should be directed to re-plead in order to state, with the requisite degree of specificity, the conduct of Peter Venetis which they allege gives rise to liability.[5]

---

[4] As the Second Circuit has held, a securities complaint must be dismissed if the plaintiffs "have not linked the alleged fraudulent statements to particular Directors." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). The Second Circuit went on to say that "the mere fact that the Directors were controlling persons at [the company] does not link them to the statements; the plaintiffs also had to allege that the Directors *personally* knew of, or participate in, the fraud." Mills, 12 F.3d at 1175 (emphasis in original). While Peter Venetis does not admit that he was a controlling person (as that term is used under the Securities Laws), see, e.g., Sloane Overseas Fund, Ltd. v. Sapiens International Corp., 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996), even if he were, plaintiffs could not use that status as an excuse to shirk their obligation to plead exactly what they allege Peter Venetis did wrong.

[5] Where multiple defendants file motions to dismiss a complaint, the Court has the discretion to dismiss claims against non-moving defendants, or to dismiss claims against moving defendants based on grounds asserted by other defendants. See, e.g., Citadel Management, Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 146-47 (S.D.N.Y. 2000). Peter Venetis therefore incorporates all bases to dismiss set forth in any motion to dismiss made by other defendants, and asks the Court to dismiss the claims against him on any permissible grounds.

For these reasons, Peter Venetis should not be required to respond to the LACERA and Franklin Complaints as they are presently drafted. A more definite statement should therefore be ordered.

## **CONCLUSION**

For the foregoing reasons, Peter Venetis respectfully requests that his Motion be granted, and that the claims asserted against him in the Complaints be dismissed. Alternatively, he requests that the references to him being an officer of Adelphia be stricken, and that LACERA and Franklin be required to file a more definite statement setting forth the capacity in which Peter Venetis is being sued and precisely what LACERA and Franklin think he did wrong.

Respectfully submitted,

COZEN O'CONNOR

By: _____
Patrick J. O'Connor (13086)
David M. Doret (15634)
Aaron Krauss (62419)
1900 Market Street
Philadelphia, PA 19103
215-665-2000

Attorneys for Defendant Peter Venetis

Dated:  September 24, 2002

9

## CERTIFICATE OF SERVICE

I certify that, on this date, I caused a true and correct copy of the foregoing DEFENDANT PETER VENETIS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE AND FOR A MORE DEFINITE STATEMENT, and the MEMORANDUM OF LAW IN SUPPORT THEREOF, to be served upon counsel on the attached list, via first class mail, postage prepaid.

Dated:  September 24, 2002

## Certificate of Service

| | |
|---|---|
| Arlin M. Adams, Esq.<br>Rolin P. Bissell, Esq.<br>**Schnader Harrison Segal & Lewis, LLP**<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103 | Jonathan P. Bach, Esq.<br>**Morrison & Foerster LLP**<br>1290 Avenue of the Americas<br>New York, NY 10104-0050 |
| Charles Barton, Esquire<br>**McGinnis Lochridge & Kilgore, LLP**<br>919 Congress Avenue<br>Austin, TX 78701 | Thomas S. Biemer, Esquire<br>**Dilworth Paxson**<br>3200 Mellon Bank Center<br>1735 Market Street<br>Philadelphia, PA 19103-7595 |
| Jeffrey Block, Esquire<br>**Berman DeVelario Pease**<br>**Tabacco Burt & Pucilo**<br>One Liberty Square<br>Boston, MA 02109 | James Bonner, Esquire<br>**Shalov Stone & Bonner**<br>485 Seventh Avenue, Suite 1000<br>New York, NY 10018 |
| Michael A. Brady, Esquire<br>**Hagerty & Brady**<br>1010 Chemical Bank Building<br>Buffalo, NY 14202 | David C. Brodsky, Esq.<br>**Cleary, Gottlieb, Steen & Hamilton**<br>1 Liberty Plaza<br>New York, NY 10006 |
| Jules Brody, Esquire<br>Patrick Slyne, Esquire<br>**Stull, Stull & Brody**<br>6 East 45th Street<br>New York, NY 10017 | Vincent Cappucci, Esquire<br>Robert Cappucci, Esquire<br>**Entwistle & Cappucci, LLP**<br>299 Park Avenue, 14th Floor<br>New York, NY 10171 |
| Michael A. Cardozo, Esquire<br>Leslie A. Conason, Esquire<br>**New York City Law Department**<br>100 Church Street<br>New York, NY 10007-2601 | Steven E. Cauley, Esquire<br>Scott Poynter, Esquire<br>**Cauley Geller Bowman & Coates, LLP**<br>Post Office Box 25438<br>Little Rock, AR 72221 |
| Solomon B. Cera, Esquire<br>**Gold Bennett Cera & Sidener LLP**<br>595 Market Street, Suite 2300<br>San Francisco, CA 94105 | Darren J. Check, Esquire<br>**Schiffrin & Barroway, LLP**<br>Three Bala Plaza East, Suite 400<br>Bala Cynwyd, PA 19004 |

| | |
|---|---|
| Nicholas E. Chimicles, Esq.<br>Denise Davis Schwartzman, Esquire<br>**Chimicles & Tikellis, LLP**<br>361 West Lancaster Avenue<br>Haverford, PA 19041 | Martin Chitwood, Esquire<br>**Chitwood & Harley**<br>2900 Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, GA 30309 |
| Bryan L. Clobes, Esq.<br>**Miller Faucher & Cafferty, LLP**<br>18th & Cherry Street<br>One Logan Square, Suite 1700<br>Philadelphia, PA 19103 | William M. Connolly, Esquire<br>**Drinker Biddle & Reath LLP**<br>One Logan Square<br>18th & Cherry Streets<br>Philadelphia, PA 19103-6996 |
| Patrick V. Dahlstrom, Esquire<br>Leigh R. Handelman, Esquire<br>Pomerantz Haudek Block<br>**Grossman & Gross LLP**<br>One North LaSalle Street, Suite 2225<br>Chicago, IL 60602 | Thomas E.L. Dewey, Esquire<br>**Dewey Pegno & Kramarsky LLP**<br>30 Broad Street<br>New York, NY 10004 |
| Gregory M. Egleston, Esquire<br>**Bernstein Liebhard & Lifshitz, LLP**<br>10 East 40th Street<br>New York, NY 10016 | John G. Emerson, Jr., Esquire<br>**The Emerson Firm**<br>Post Office Box 25336<br>Little Rock, AR 72221 |
| Nadeem Faruqi, Esquire<br>**Faruqi & Faruqi**<br>320 East 39th Street<br>New York, NY 10016 | Brian M. Felgoise, Esquire<br>**Law Office of Brian M. Felgoise**<br>230 South Broad Street, Suite 404<br>Philadelphia, PA 19102 |
| Michael I. Fistel, Jr., Esquire<br>**Holzer & Holzer**<br>6135 Barfield Road, Suite 102<br>Atlanta, GA 30328 | Daniel C. Fleming, Esq.<br>**Wong Fleming PC**<br>1528 Walnut Street, Suite 1602<br>Philadelphia, PA 19102 |
| Frederic S. Fox, Esq.<br>**Kaplan, Fox & Kilsheimer, LLP**<br>2200 West Chester Pike<br>Broomall, PA 19008 | David C. Franceski, Jr., Esq.<br>**Stradley Ronon Stevens & Young, LLP**<br>2600 One Commerce Square<br>Philadelphia, PA 19103-7098 |
| Josh Fuller, Esquire<br>**Fuller & Suarez, P.A.**<br>201 Alhambra Circle<br>Suntrust Plaza, Suite 602<br>Coral Gables, FL 33135 | Mark C. Gardy, Esq.<br>**Abbey Gardy LLP**<br>212 East 39th Street<br>New York, NY 10016 |

| | |
|---|---|
| Lionel Z. Glancy<br>Michael Goldberg<br>**Law Office of Lionel Z. Glancy**<br>1801 Avneue of the Stars, Suite 308<br>Los Angeles, CA  90006 | Jeffrey W. Golan, Esquire<br>**Barrack, Rodos & Bacine**<br>3300 Two Commerce Square<br>2001 Market Street<br>Philadelphia, PA  19103-7087 |
| Harvey Greenfield, Esquire<br>**The Law Firm of Harvey Greenfield**<br>60 East 42nd Street, Suite 2001<br>New York, NY  10165 | Deborah R. Gross, Esquire<br>Susan R. Gross, Esquire<br>**Law Offices of Bernard M. Gross, P.C.**<br>1515 Locust Street, Second Floor<br>Philadelphia, PA  19102 |
| Marc I. Gross, Esquire<br>Stanley M. Grossman<br>Pomerantz Haudek Block<br>**Grossman & Gross LLP**<br>100 Park Avenue, 26th Floor<br>New York, NY  10017 | Robert I. Harwood, Esquire<br>Matt Houston, Esquire<br>Wechsler Harwood Halebian & Feffer, LLP<br>488 Madison Avenue, 8th Floor<br>New York, NY  10022 |
| Carol Heckman, Esquire<br>**Harter, Secrets & Emery LLP**<br>One HSBC Center, Suite 3550<br>Buffalo, NY  14203 | Marc S. Henzel, Esquire<br>**Law Offices of Marc S. Henzel**<br>273 Montgomery Avenue, Suite 202<br>Bala Cynwyd, PA  19004 |
| Jeffrey W. Hermann, Esquire<br>**Cohn Lifland Perlman**<br>**Hermann & Knopf, LLP**<br>Park 80 Plaza West-One<br>Saddle Brook, NJ  07663 | Robert L. Hickok, Esquire<br>Jeremy Heep, Esquire<br>**Pepper Hamilton LLP**<br>3000 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA  19103 |
| Fred Isquith, Esquire<br>**Wolf Haldenstein Adler Freeman & Herz**<br>270 Madison Avenue<br>New York, NY  10016 | Dennis J. Johnson, Esquire<br>**Johnson & Perkinson**<br>1690 Williston Road<br>South Burlington, VT  05403 |
| Joseph C. Kohn, Esquire<br>**Kohn, Swift & Graf, PC**<br>One S. Broad Street, Ste. 2100<br>Philadelphia, PA  19107 | Philip C. Korologos, Esquire<br>**Boies, Schiller & Flexner, LLP**<br>333 Main Street<br>Armonk, NY  10504 |
| Jennifer Kroman, Esquire<br>One Liberty Plaza<br>New York, NY  10006 | Roger LeBlanc, Esquire<br>**LeBlanc & Wadell, LLP**<br>5353 Essen Lane, Suite 420<br>Baton Rouge, LA  70809 |

| | |
|---|---|
| Peter A. Lennon, Esquire<br>**Kaplan, Fox & Kilsheimer LLP**<br>2200 West Chester Pike<br>Broomall, PA 19008 | Peter Linden, Esquire<br>Richard L. Stone, Esquire<br>Mark A. Strauss, Esquire<br>**Kirby McInerney & Squire LLP**<br>830 Third Avenue<br>New York, NY 10022 |
| Gregory A. Markel, Esquire<br>Lawrence G. Cooke, II, Esquire<br>**Brobeck, Phelger & Harrison, LLP**<br>1633 Broadway, 47th Floor<br>New York, NY 10019 | |
| Douglas M. McGeige, Esquire<br>Max Berger, Esquire<br>**Bernstein Litowitz Berger & Grossman**<br>1285 Avenue of the Americas<br>New York, NY 10019 | Richard A. McGuirk, Esq.<br>**Nixon Peabody LLP**<br>Clinton Square<br>P.O. Box 31051<br>Rochester, NY 14603 |
| Damon & Morey, LLP<br>1000 Cathedral Place<br>298 Main Street<br>Buffalo, NY 14202-4096 | Bruce G. Murphy, Esquire<br>**Law Office of Bruce G. Murphy**<br>265 Llwyds Lane<br>Vero Beach, FL 32963 |
| Charles J. Piven, Esquire<br>**Law Offices of Charles J. Piven**<br>World Trade Center (Suite 2525)<br>Baltimore, MD 21202 | Jonathan M. Plasse, Esquire<br>**Goodkind Labaton Rudoff**<br>**& Sucharow LLP**<br>100 Park Avenue<br>New York, NY 10017 |
| Juden Justice Reed<br>Robert C. Schubert<br>Willem F. Jonckheer<br>Miranda Kolbe<br>**Schubert & Reed LLP**<br>2 Embarcadero Center, Suite 1660<br>San Francisco, CA 94111 | Ira Neil Richards, Esquire<br>**Trujillo, Rodriguez & Richards, LLC**<br>226 W. Rittenhouse Square<br>The Penthouse<br>Philadelphia, PA 19103 |
| Lawrence M. Rolnick, Esquire<br>**Lowenstein, Sandler, Kohl, Fisher & Boylan**<br>65 Livingston Avenue<br>Roseland, NJ 07068 | Robert M. Roseman, Esquire<br>**Spector Roseman & Kodroff, P.C.**<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103 |

| | |
|---|---|
| Joseph A. Rosenthal, Esquire<br>**Rosenthal Monheit Gross & Goddess PA**<br>919 N. Market Street, Suite 1401<br>Mellon Bank Center<br>Wilmington, DE  19899 | Sherrie R. Savett, Esquire<br>Robin B. Switzenbaum, Esquire<br>**Berger & Montague, PC**<br>1622 Locust Street<br>Philadelphia, PA  19103 |
| Robert S. Schachter, Esquire<br>Richard A. Speirs, Esquire<br>**Zwerling, Schachter & Zwerling**<br>767 Third Avenue<br>New York, NY  10017 | Andrew Schatz, Esquire<br>**Schatz & Nobel, P.C.**<br>330 Main Street<br>Hartford, CT  06106 |
| Steven G. Schulman, Esquire<br>Samuel H. Rudman, Esquire<br>**Milberg Weiss Bershad**<br>**Hynes & Lerach, LLP**<br>One Pennsylvania Plaza, 49th Floor<br>New York, NY  10119 | Scott R. Shepherd, Esquire<br>**Shepherd & Finkelman LLC**<br>117 Gayley Street, Suite 200<br>Media, PA  19063 |
| Evan J. Smith, Esquire<br>Jason L. Brodsky, Esquire<br>**Brodsky & Smith, LLC**<br>11 Bala Avenue, Suite 39<br>Bala Cynwyd, PA  19004-3210 | Howard G. Smith, Esquire<br>3070 Bristol Pike, Suite 112<br>Bensalem, PA  19020 |
| Lee Squitieri, Esquire<br>Stephen J. Fearon, Jr., Esquire<br>**Squitieri & Fearon, LLP**<br>521 Fifth Avenue, 26th Floor<br>New York, NY  10175 | Steven J. Toll, Esquire<br>**Cohen Milstein Hausfeld & Toll**<br>1100 New York Avenue, N.W.<br>West Tower, Suite 500<br>Washington, DC  20005 |
| Marc A. Topaz, Esquire<br>Stuart Berman, Esquire<br>**Schiffrin & Barroway, LLP**<br>Three Bala Plaza East, Suite 400<br>Bala Cynwyd, PA  19004 | Kenneth A. Wexler, Esquire<br>**Kenneth A. Wexler & Associates**<br>One North LaSalle Street, Suite 2000<br>Chicago, IL  60602 |
| Colin Wrabley, Esq.<br>**Thorp, Reed & Armstrong**<br>One Oxford Centre<br>301 Grant Street, 14th Floor<br>Pittsburgh, PA  15219 | |

PHILA1\1693898\1 128233.000

**EXHIBIT A**

MAY. 1. 2002 12:29PM    BERNARD M. GROSS, P. C.                                    NO. 4569    P. 3/9

APR. 30. 2002  11:44AM        BERNARD M. GROSS, P. C.                          NO. 4506    P. 2

*4HH*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JERROLD RUSKIN | : | CIVIL ACTION |
| v. | : | NO. 02-1781 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |
| RICHARD GITTER | : | CIVIL ACTION |
| v. | : | NO. 02-1780 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |
| TZ MICRO COMPUTING, INC. | : | CIVIL ACTION |
| v. | : | NO. 02-1813 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |
| WILLIAM J. HATTRICK, JR. | : | CIVIL ACTION |
| v. | : | NO. 02-1816 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |
| ALAN SHULIMSON | : | CIVIL ACTION |
| v. | : | NO. 02-1819 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |
| STEVEN ROSSOW | : | CIVIL ACTION |
| v. | : | NO. 02-1831 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

FILED
APR 30 2002
MICHAEL E. KUNZ, Clerk
Dep. Clerk

Adelphia 1065

ENTERED
APR 30 2002
CLERK OF COURT

| | |
|---|---|
| MARKET STREET SECURITIES | CIVIL ACTION |
| v. | NO. 02-1835 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| ISRAEL COSTA | CIVIL ACTION |
| v. | NO. 02-1839 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| MARK G. EPSTEIN | CIVIL ACTION |
| v. | NO. 02-1871 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| JOANNE GOLD | CIVIL ACTION |
| v. | NO. 02-1878 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| BARRY GOLDMAN | CIVIL ACTION |
| v. | NO. 02-1893 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| JOHN FULLER | CIVIL ACTION |
| v. | NO. 02-1987 |
| ADELPHIA COMMUNICATIONS, ET AL. | |

2

MAY. 1. 2002 12:29PM    BERNARD M. GROSS. P. C.    NO. 4560    P. 5/9
   APR. 30. 2002 11:44AM    BERNARD M. GROSS. P. C.    NO. 4506    P. 4

| | |
|---|---|
| GERALD J. STREKAL | CIVIL ACTION |
| v. | NO. 02-2061 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| CROSSWAY PARTNERS | CIVIL ACTION |
| v. | NO. 02-2087 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| ALAN GARNER | CIVIL ACTION |
| v. | NO. 02-2099 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| MOHAMMED IDRIES | CIVIL ACTION |
| v. | NO. 02-2100 |
| PETE J. METROS, ET AL. | |
| LEWIS THOMAS HARDIN | CIVIL ACTION |
| v. | NO. 02-2112 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| ROBERT MORELLO | CIVIL ACTION |
| v. | NO. 02-2403 |
| ADELPHIA COMMUNICATIONS, ET AL. | |

3

MAY. 1. 2002 12:29PM     BERNARD M. GROSS. P. C.                    NO. 4506     P. 0/7

APR. 30. 2002 11:44AM     BERNARD M. GROSS. P. C.                    NO. 4506     P. 5

)

| | | |
|---|---|---|
| GEORGE B. INABINET, JR., ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-2416 ⊥ |
| | : | |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

### PROPOSED ORDER RE: CONSOLIDATION

WHEREAS, presently pending before this Court are related securities class actions, which, in order of filing are:

Jerrold Ruskin v. Adelphia Communications, et al., Civil Action No. 02-1781;

Richard Glitter v. Adelphia Communications, et al., Civil Action No. 02-1790;

TZ Micro Computing, Inc. v. Adelphia Communications, et al., Civil Action No. 02-1813;

William J. Hattrick, Jr. v. Adelphia Communications, et al., Civil Action No. 02-1816;

Alan Shulimson v. Adelphia Communications, et al., Civil Action No. 02-1819;

Steven Rossow v. Adelphia Communications, et al., Civil Action No. 02-1831;

Market Street Securities v. Adelphia Communications, et al., Civil Action No. 02-1835;

Israel Costa v. Adelphia Communications, et al., Civil Action No. 02-1839;

Mark G. Epstein v. Adelphia Communications, et al., Civil Action No. 02-1871;

Joanne Gold v. Adelphia Communications, et al., Civil Action No. 02-1878;

Barry Goldman v. Adelphia Communications, et al., Civil Action No. 02-1987;

John Fuller v. Adelphia Communications, et al., Civil Action No. 02-1987;

Gerald J. Strekal v. Adelphia Communications, et al., Civil Action No. 02-2061;

Crossway Partners v. Adelphia Communications, et al., Civil Action No. 02-2087;

Alan Gamer v. Adelphia Communications, et al., Civil Action No. 02-2099;

MAY. 1. 2002 12:30PM    BERNARD M. GROSS, P. C.                    NO. 4560    P. 7/9

APR. 30. 2002 11:45AM    BERNARD M. GROSS, P. C.                   NO. 4506    P. 6

<u>Mohammed Idries v. Pete J. Metros, et al.</u>, Civil Action No. 02-2100;

<u>Lewis Thomas Hardin v. Adelphia Communications, et al.</u>, Civil Action No. 02-2112;

<u>Robert Morello v. Adelphia Communications, et al.</u>, Civil Action No. 02-2403; and

<u>George B. Inabinet, Jr., et al. v. Adelphia Communications, et al.</u>, Civil Action No. 02-2416

WHEREAS, the above-referenced actions all arise out of a common set of facts, and should be consolidated into one single action, and that the procedures set forth below should be followed:

1.    <u>Consolidation.</u>   Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the above-captioned Class Action Lawsuits are to be consolidated for all purposes, including, but not limited to, discovery and all pretrial and trial proceedings.

2.    <u>Master Docket and File.</u>  This action shall be captioned "In re Adelphia Communications Securities Litigation" and the files of this action shall be maintained in one file under Master File No. 02-1781. All orders, pleadings, motions and other documents should, when filed and docketed in the Master File, be deemed filed and docketed in each individual case to the extent applicable. When an order, pleadings, motion or document is filed with a caption indicating that it is applicable to fewer than all of these consolidated actions, the clerk should file such pleading in the Master File and note such filing in the Master Docket and in the docket of each action referenced.

3.    <u>Captions.</u>  Every pleading filed in these consolidated Class Action Lawsuits, or in any separate action included therein, shall bear the following caption:

5

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE ADELPHIA COMMUNICATIONS  : **Master File No.**
SECURITIES LITIGATION     : **02CV1781**
               :
_____ : <u>CLASS ACTION</u>
               :
THIS DOCUMENT RELATES TO:   :
               :
_____ :

   4.  When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set forth above. When a pleading is intended to be applicable to some, but not all, of such actions, this Court's docket number for each individual action to which the paper is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Documents Relates To:" in the caption set forth above.

   5.  <u>Later Filed Cases</u>. The terms of the Order apply to actions later instituted in, removed to, or transferred to this Court that involved claims on behalf of the purchasers of Adelphia securities which are related to the claims of plaintiffs in these consolidated cases, under the following procedures:

     (a)  When such case is filed in, removed to, or transferred to this Court, the Clerk, of the Court will:

       (i)  place a copy of this Order in the separate file for such action;

       (ii)  mail a copy of this Order to counsel for plaintiffs and counsel

6

for defendants; and

        (iii)    make an appropriate notation in the Master Docket.

    (b)    This Order will apply to each such case that arises out of or is related

to the same common nucleus of fact, subsequently instituted in, removed to, or transferred

to this Court.

Dated: *April 30, 200X*                    BY THE COURT:

                                                HUTTON, J.

1. Civil Action No's 02-2121 Stocke et al v. Rigas et al. and CA 02-2136
   Ron Moore v. John Rigas, et al., are to be included in the terms of
   this Order.

2. The Clerk's Office is to CLOSE STATISTICALLY all of the above numbered
   cases with the exception of the lead case CA02-1781

4-30-02
Mailed To:
adelphia Communications
T. Rigas
John Rigas
B. Gross. Esq.

7

**EXHIBIT B**

Sep-09-02    04:16pm    From-Ballard Spahr                    215 864 8999              T-260   P.002    F-745

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

USDC-EDPA
REC'D CLERK

2002 AUG -2 PH 5: 53

| | |
|---|---|
| IN RE:<br><br>ADELPHIA COMMUNICATIONS<br>SECURITIES LITIGATION | MASTER FILE NO.  02-CV-1781 |
| THIS DOCUMENT RELATES TO | ALL ACTIONS |

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of the

Motion of Deloitte & Touche LLP To Implement This Court's Consolidation Order Dated

April 30, 2002, and any responses thereto, it is hereby ORDERED that the Motion is

GRANTED, and that the Court will sign and enter the [Proposed] Supplemental Order attached

as Exhibit B to the Motion.

BY THE COURT:

_____

Hutton, J.

Sep-08-02   04:16pm   From-Ballard Spahr            215 864 8999        T-260  P.003    F-745

USDC-EDPA
REC'D CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 AUG -2  PM 6: 53

| | |
|---|---|
| IN RE:<br><br>ADELPHIA COMMUNICATIONS<br>SECURITIES LITIGATION<br><br><br>THIS DOCUMENT RELATES TO | MASTER FILE NO. 02-CV-1781<br><br><br><br>ALL ACTIONS |

## MOTION OF DELOITTE & TOUCHE LLP
## TO IMPLEMENT THIS COURT'S
## <u>CONSOLIDATION ORDER DATED APRIL 30, 2002</u>

Defendant Deloitte & Touche LLP ("Deloitte") hereby moves to implement the

Court's Consolidation Order dated April 30, 2002, with respect to actions filed after that date.

In support of this motion, Deloitte relies on the accompanying memorandum.


Dated:  August 2, 2002


_Joel E. Tasca_
Alan J. Davis
William A. Slaughter
Joel E. Tasca
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 864-8230/8114/8188
(215) 864-8999 (fax)


Of Counsel:

Max R. Shulman
Katherine B. Forrest
CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Attorneys for Deloitte & Touche LLP

Sep-09-02   04:16pm   From-Ballard Spahr                215 864 8999        T-260   P.004   F-745

USDC-EDPA
REC'D CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA** 2002 SEP -2 PM 6: 53

| | |
|---|---|
| IN RE:<br><br>ADELPHIA COMMUNICATIONS<br>SECURITIES LITIGATION | MASTER FILE NO. 02-CV-1781 |
| THIS DOCUMENT RELATES TO | ALL ACTIONS |

**MEMORANDUM OF DELOITTE & TOUCHE LLP**
**IN SUPPORT OF ITS MOTION TO IMPLEMENT**
**THIS COURT'S CONSOLIDATION ORDER DATED APRIL 30, 2002**

Defendant Deloitte & Touche LLP ("Deloitte") submits this memorandum in

support of its motion to implement the Court's Consolidation Order dated April 30, 2002, with

respect to actions filed after that date.[1]

**I.      BACKGROUND**

Commencing on April 2, 2000, and continuing through the present, a number of

lawsuits have been filed in this Court relating to Adelphia Communications Corporation

("Adelphia") and based upon the same nucleus of operative fact.  On April 30, 2002, the Court

---

[1]  The following are the actions filed after April 30, 2002, that name Deloitte as a defendant: *D'Asaro v. Adelphia Communications Corp.*, C.A. #02-CV-2618; *Kiefer v. Adelphia Communications Corp.*, C.A. #02-CV-3186; *Turrell v. Adelphia Communications Corp.*, C.A. #-02-CV-3197; *Burstein v. Adelphia Communications Corp.*, C.A. #02-CV-3273; *Argent Classic Convertible Arbitrage Fund, L.P.*, C.A. #02-CV-3547; *Victor v. Adelphia Communications Corp.*, C.A. #02-CV-3659; *New York City Employees' Ret. Sys. v. Adelphia Communications Corp.*, C.A. #02-CV-3778; *Los Angeles County Employees Ret. Ass'n v. Rigas et al.*, C.A. #02-CV-4086; *Huhn v. Rigas*, C.A. #02-CV-4334; *Franklin Strategic Income Fund v. Rigas*, C.A. #02-CV-4292. There are six additional actions filed after April 30, 2002, that do not name Deloitte as a defendant: *VR Associates v. Adelphia Communications Corp.* C.A. #02-CV-2238; *Weiner v. Rigas*, C.A. #02-CV-3211; *Seebacher v. Adelphia Communications Corp.*, C.A. #02-CV-3264; *Matovich v. Adelphia Communications Corp.*, C.A. #02-CV-3561; *Burnside v. Rigas*, C.A. #02-CV-3769; *Hyslip v. Rigas*, C.A. #02-CV-3768; *Feivel Gottlieb Restated Defined Benefit Trust v. Rigas*, C.A. #02-CV-4486.

entered an order (the "Consolidation Order") consolidating all the actions filed as of that date

under the caption *In re Adelphia Securities Litigation*, 02-CV-1781 ("*In re Adelphia*") on the

ground that they "arise out of a common set of facts, and should be consolidated into one single

action." (Consolidation Order at 5.)[2]  The Consolidation Order explicitly anticipated that there

would be "Later Filed Cases" that would be consolidated with the ones filed as of April 30,

2002.  The Order provides that "[t]he terms of this Order apply to actions later instituted in,

removed to, or transferred to this Court that involved claims on behalf of the purchasers of

Adelphia securities which are related to the claims of plaintiffs in these consolidated cases" and

that "[t]his Order will apply to each such case that arises out of or is related to the same common

nucleus of fact, subsequently instituted in, removed to, or transferred to this Court."

(Consolidation Order ¶ 5.)

        As the Court expected, after it issued the Consolidation Order, several additional

lawsuits were filed arising out of the same common nucleus of fact as those involved in the

consolidated cases and asserting the same or similar securities law violations; ten of those

complaints name Deloitte as a defendant (the "New Cases").  Two of the New Cases have been

assigned to different judges in the Eastern District of Pennsylvania (*Turrell, Franklin Strategic

Income Fund*); three have been brought as individual (rather than class) actions (*Franklin

Strategic Income Fund, New York City Employees' Retirement Fund, LA County Employees

Retirement Association*); but all fall squarely within the express terms of the Consolidation

Order.

---

[2]    Some of the complaints included in the Consolidation Order were derivative actions: *Rossow v. Adelphia
Communications Corp.*, C.A. #02-1831; *Strekal v. Adelphia Communications Corp.*, C.A. #02-2061; *Idries v.
Merros*, C.A. #02-2100; *Moore v. Rigas*, C.A. #02-2136.  Because on June 25, 2002, Adelphia filed a petition in
the United States Bankruptcy Court for the Southern District of New York for relief under Chapter 11 of the
United States Bankruptcy Code, those derivative actions have been automatically stayed.  *See Pepper v. Litton*,
308 U.S. 295, 306-07 (1939) (holding that in the event of bankruptcy derivative actions are solely the province
of the bankruptcy trustee).

Despite the Order's clear and unambiguous terms, the plaintiffs in several of the New Cases have taken the wholly untenable position that their actions have not been consolidated with *In re Adelphia*. *See, e.g.*, letter from Megan D. McIntyre to Lawrence H. Cooke II, dated July 31, 2002, and letter from Lawrence H. Cooke II to Megan D. McIntyre, dated July 31, 2002, attached hereto as Exhibit A. That has forced Deloitte to make the present motion to implement the Consolidation Order.

## II.    ARGUMENT

There can be no dispute that the New Cases and the cases listed in the Consolidation Order arise out of a common nucleus of fact: *i.e.*, claims by securities purchasers that involve allegations concerning co-borrowing arrangements, off-balance sheet debt, related parties transactions and Adelphia public disclosures pertaining thereto. On those issues, all the cases -- the new ones and the old ones -- will require substantially similar discovery and will be based upon substantially similar evidence. Because the Consolidation Order explicitly applies to every later filed case "that involve[s] claims on behalf of the purchasers of Adelphia securities which are related to the claims of Plaintiffs in these consolidated cases" and that "arises out of or is related to the same common nucleus of fact," the New Cases have clearly been consolidated with the ones pending as of April 30. No distinction is made in the Consolidation Order between individual actions and class actions or between stockholder and debtholder suits -- which is entirely as it should be because the same efficiencies strongly favor common treatment regardless of whether it is an individual or class that is suing or whether plaintiffs purchased debt securities, common stock or preferred stock.[3]

---

[3]    This point is highlighted by the fact that two of the New Cases, *Argent* and *Victor*, are brought on behalf of putative classes that include both debtholders and stockholders.

As a result, the position taken by some of the plaintiffs in the New Cases that the Consolidation Order does not apply is without merit.

## III. CONCLUSION

For the foregoing reasons, this Court should grant Deloitte's motion and enter the proposed Supplemental Order attached hereto as Exhibit B, which implements the Consolidation Order with regard to each of the New Cases.

Date: August 2, 2002

Alan J. Davis
William A. Slaughter
Joel E. Tasca
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8230/8114/8188
(215) 864-8999 (fax)

Of Counsel:

Max R. Shulman
Katherine B. Forrest
CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Attorneys for Deloitte & Touche LLP

Sep-09-02   04:16pm   From-Ballard Spahr                215 864 8999          T-260   P.008/020   F-745

# EXHIBIT A

Sep-09-02  04:17pm  From-Ballard Spahr                    215 864 8999           T-260  P.009/020  F-745

07/31/02  10:22 FAX 302 622 7085          GRANT & EISENHOFER, PA                              @002



# GRANT & EISENHOFER, P.A.

SUITE 2100
1201 NORTH MARKET STREET
WILMINGTON, DELAWARE 19801-2599
(302) 622-7000 • FAX (302) 622-7100
www.gelaw.com

JAY W. EISENHOFER
STUART M. GRANT
MEGAN D. MCINTYRE
GEOFFREY C. JARVIS

DENISE T. DIPERSIO
ABBOTT A. LEBAN
DIANE T. ZILKA • •

KLAUS N. SCHACHT †
OF COUNSEL

MICHAEL J. BARRY ††
CHRISTINE S. BUCKMAN
CYNTHIA A. CALDER
RICHARD M. DONALDSON •
C. JENEY HAFNER •••••
JEFF ISRAEL •
JOHN C. KAIRIS
SIDNEY S. LIEBESMAN
MICHELLE N. PETRUCCI •
DIGITRY PELPE †††
C. CURTIS STARNOUSKI

DIRECT DIAL:  (302) 622-7020

July 31, 2002

* ADMITTED IN NJ & PA ONLY
** ADMITTED IN NY & PA ONLY
*** ADMITTED IN DC & NY ONLY
† ADMITTED IN CA & WI ONLY
†† ADMITTED IN PA, NJ & IL ONLY
††† ADMITTED IN NY ONLY

## BY FACSIMILE

Lawrence H. Cooke II, Esquire
Brobeck, Phleger & Harrison LLP
1633 Broadway
New York, NY 10019

    Re:   Los Angeles County Employees Retirement Association v. John J. Rigas, et al.,
          E.D. Pa., Civil Action No. 02cv4086;
          Franklin Strategic Income Fund, et al. v. John J. Rigas, et al.,
          E.D. Pa., Civil Action No. 02cv4292

Dear Mr. Cooke:

    We write on behalf of the plaintiffs in the above-captioned actions, in response to your letter of July 29th. The above actions are individual (non-class) actions filed by institutional investors who sustained losses on the purchase of certain bonds issued by Adelphia Communications Corporation ("Adelphia") and Arahova Communications Corporation ("Arahova"). We do not know whether counsel in the pending class actions purport to represent purchasers of these bonds, but to the extent they do, our clients have elected to opt out of those class actions and pursue their claims on an individual basis.

    We have reviewed the consolidation order and proposed scheduling order that were attached to your letter. We believe the consolidation order applies only to class actions, and thus do not consider our cases to be subject to either that order or the proposed scheduling order.

    With respect to service of process, we effectuated service upon Messrs. Coyle, Gelber and Kailbourne on July 1, 2002 in Civil Action No. 02cv4086, and on July 8, 2002 in Civil Action No. 02cv4292, by serving the summonses and complaints upon Adelphia's registered agent in Delaware. See Fed.R.Civ.P. 4(e)(2) (service may be effected "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process"). As directors of Adelphia, your clients have consented to the appointment

Sep-09-02    04:17pm    From-Ballard Spahr                        215 864 8999            T-260   P.010/020   F-745

07/31/02  16:22 FAX 302 622 7055        GRANT & EISENHOFER, PA                          ☑003

# GRANT & EISENHOFER, P.A.

Lawrence H. Cooke, II, Esquire
July 31, 2002
Page 2

of Adelphia's registered agent as their agent for purposes of service of process. 8 Del. C. §
3114. Copies of the process server's affidavits are attached hereto for your reference.

     Pursuant to Fed.R.Civ.P. 12(a)(1)(A), your clients' responses to both of our complaints
are past due. We will give you an extension of time until this Friday, August 2, 2002, to file
those responses. If we do not receive responses by Friday, we intend to move for default
judgments.

     Very truly yours,

     Megan D. McIntyre

Enclosures

Sep-09-02  04:17pm  From-Ballard Spahr          215 864 8999          T-260  P.011/020  F-745

07/31/2002 18:43 FAX 212 586 7878        BROBECK NEW YORK                              @002/003

# Brobeck
ATTORNEYS AT LAW

July 31, 2002

**VIA FACSIMILE**

Brobeck, Phleger & Harrison LLP
1633 Broadway
New York, New York 10019
DIRECT  212.237.2535
FAX  212.586.7878
lcooke@brobeck.com
www.brobeck.com

Megan D. McIntyre, Esquire
Grant & Eisenhofer, P.A.
1220 N. Market Street, Suite 500
Wilmington, DE  19801

Re:    In Re: Adelphia Communications Securities Litigation
       Master File No. 02CV1781

Dear Ms. McIntyre:

I write in response to your letter of this morning regarding the above-referenced litigation.
While I appreciate your correspondence and the offer of an extension of time to respond in this
matter, it is our position that no responsive pleading (either by answer or a motion to dismiss) is
required at this time. We also disagree with your assertion that our clients, Messrs. Coyle,
Gelber and Kailbourne, have been properly served in this matter should you dispute that the
stipulated scheduling order applies to your clients' actions.

Your letter begins with the proposition that the actions brought by the Los Angeles County
Employees Retirement Association and Franklin Strategic Income Fund, et al. (the "Grant &
Eisenhofer Complaints") are not consolidated with the above referenced litigation.  This is
clearly incorrect.  The terms of the Order Re: Consolidation relating to "Later Filed Cases"
unquestionably include the actions brought by your clients when it consolidates "actions later
instituted in, removed to, or transferred to this Court that <u>involved claims on behalf of purchasers
of Adelphia securities which are related to the claims of plaintiffs in these consolidated cases</u>, . . .
(b) This Order will apply to each such case that <u>arises out of or is related to the same common
nucleus of fact</u>, subsequently instituted in, removed to, or transferred to this Court" (emphasis
added).  Without admitting any of the allegations of the Grant & Eisenhofer Complaints, those
pleadings involve claims on behalf of purchasers of Adelphia securities and arise out of the same
nucleus of facts as the purported class actions.  Additionally, your suggestion that the
consolidation is limited to class actions in inconsistent with and finds no support in the order
which consolidates the entirety of this litigation, including class actions, opt outs and derivative
actions.  It is therefore clear that the Grant & Eisenhofer Complaints have been consolidated into
the Master Adelphia Securities Litigation.

As for scheduling of deadlines for responsive pleadings, the Stipulation and [Proposed]
Scheduling Order, which applies to all actions in the Master Litigation, provides that the
defendants need not answer or otherwise respond (specifically including the making of a motion

Sep-09-02   04:17pm   From-Ballard Spahr                    215 864 8999         T-260   P.012/020   F-745

07/31/2002 18:43 FAX 212 586 7878          BROBECK NEW YORK                                    003/003

July 29, 2002
Page 2

to dismiss) to the various complaints that have been filed until after the filing of a consolidated complaint. This stipulated and proposed order is currently before the Court and in response to requests made weeks ago regarding its status, the parties were provided guidance by the Judge's deputy clerk to abide by the terms of the stipulation until the Court has an opportunity to rule on the proposed order. Further, following the resolution of the consolidation issue and without prejudice to your clients' decision whether to amend its complaint, join in the anticipated amended consolidated complaint or otherwise stand on the complaints that you have filed, we are willing to discuss a separate scheduling order relating to your clients.

Further, the stipulation and proposed order contains a provision wherein the summons shall be deemed properly served on our clients. While we believe all parts of the stipulation apply to the parties to the consolidated litigation, including your clients, you are advised that we otherwise assert that our clients have not been personally served with the Grant & Eisenhofer Complaints. The Delaware statutory provision you refer to in your letter[1] does not stand for the proposition that Adelphia's designated Delaware agent for the service of process is also so designated on behalf of these directors. The statute is limited in its grant of agency and its scope and your attempt to expand it beyond these limitations is unwarranted and unsupported.

Finally, your intention to move for default judgments against our clients in plainly frivolous under these circumstances. In the event that you continue to plan to move for a default judgment here, please advise as soon as possible so that we can seek a conference with the judge to resolve this issue.

Sincerely,

Lawrence H. Cooke II

cc:    By Facsimile
       Phil Korologus, Esq.
       Max R. Shulman, Esq.
       Glenn A. Mitchell, Esq.
       Deborah R. Gross, Esq.
       Francis S. Chlapowski, Esq.
       Robert L. Hickok, Esq.

---

[1] We believe you are referring to 10 Del C. §3114, not 8 Del C. §3114 as identified in your letter.

NYOLIBN\LHC\547462.01

Sep-09-02   04:17pm   From-Ballard Spahr                   215 864 8999        T-260   P.013/020   F-745

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: <br><br> ADELPHIA COMMUNICATIONS <br> SECURITIES LITIGATION <br><br><br> THIS DOCUMENT RELATES TO | MASTER FILE NO. 02-CV-1781 <br><br><br><br><br> ALL ACTIONS |

### [PROPOSED] SUPPLEMENTAL ORDER

WHEREAS, this Court entered an Order on April 30, 2002, consolidating under the caption *In re Adelphia Securities Litigation* ("*In re Adelphia*"), 02-CV-1781, all actions that relate to Adelphia Communications Corporation ("Adelphia") and that arise out of a common set of facts;

WHEREAS, the above referenced Order specified that its terms apply to actions later instituted in, removed to or transferred to this Court that involved claims on behalf of the purchasers of Adelphia securities which are related to the claims of plaintiffs in the consolidated cases;

WHEREAS subsequent to April 30, 2002, actions were filed in the Eastern District of Pennsylvania arising out of or related to the same common nucleus of fact as the consolidated cases, which subsequently filed actions are listed below:

*D'Asaro v. Adelphia Communications Corp.,* C.A. #02-CV-2618;
*Kiefer v. Adelphia Communications Corp.,* C.A. #02-CV-3186;
*Turrell v. Adelphia Communications Corp.,* C.A. #-02-CV-3197;
*Burstein v. Adelphia Communications Corp.,* C.A. #02-CV-3273;
*Argent Classic Convertible Arbitrage Fund, L.P.,* C.A. #02-CV-3547;
*Victor v. Adelphia Communications Corp.,* C.A. #02-CV-3659;
*New York City Employees' Retirement Sys. v. Adelphia Communications Corp.,* C.A. #02-CV-3778;
*LA County Employees Retirement Ass'n v. Rigas et al.,* C.A. #02-CV-4086;
*Huhn v. Rigas,* C.A.#02-CV-4334;
*Franklin Strategic Income Fund v. Rigas,* C.A. #02-CV-4292;
*Feivel Gottlieb Restated Defined Benefit Trust v. Rigas,* C.A. #02-CV-4486

*VR Associates v. Adelphia Communications Corp.* C.A. #02-CV-2238;
*Weiner v. Rigas*, C.A. #02-CV-3211;
*Seebacher v. Adelphia Communications Corp.*, C.A. #02-CV-3264;
*Matovich v. Adelphia Communications Corp.*, C.A. #02-CV-3561;
*Burnside v. Rigas*, C.A. #02-CV-3769;
*Hyslip v. Rigas*, C.A. #02-CV-3768;

It is hereby ORDERED that:

1.  The above-referenced actions are consolidated for all purposes, including but not limited to discovery and all pretrial and trial proceedings, under the caption *In re Adelphia*, according to the procedures set forth in this Court's April 30, 2002 Order.

2.  The Clerk's Office is directed to consolidate for all purposes under the caption *In re Adelphia*, according to the procedures set forth in this Court's April 30, 2002 Order, all actions later instituted in, removed to, or transferred to this Court that involve claims on behalf of the purchasers of Adelphia debt or stock securities, whether individual or on behalf of a class and which are related to the claims of plaintiffs in these consolidated actions.

3.  Defendants' time to move against or answer any of the complaints consolidated under the caption *In re Adelphia* is hereby stayed until sixty (60) days following the filing of an Amended Consolidated Complaint in *In re Adelphia* or until such later time as the parties agree or the Court so orders.

4.  This Supplemental Order clarifies and implements the terms of this Court's April 30, 2002, Consolidation Order, which remains in effect until otherwise so ordered by this Court.

Dated: _____

                                        _____
                                        Hutton, J.

Sep-09-02   04:17pm   From-Ballard Spahr                    215 864 8999        T-260  P.016/020  F-745

## CERTIFICATE OF SERVICE

I, Joel E. Tasca, hereby certify that on August 2, 2002, I served the foregoing

Motion of Deloitte & Touche LLP to Implement this Court's Consolidation Order dated April

30, 2002 upon the counsel on the attached service list via first class mail postage pre-paid.

Joel E. Tasca

Sep-09-02   04:17pm   From-Ballard Spahr                215 864 8999        T-260   P.017/020   F-745

# SERVICE LIST

Evan J. Smith, Esquire
BRODSKY & SMITH, LLC
11 Bala Avenue, Suite 39
Bala Cynwyd, PA 19004-3210

Steven E. Cauley, Esquire
CAULEY GELLER BOWMAN & COATES, LLP
Post Office Box 25438
Little Rock, AR 72221

Robert L. Harwood, Esquire
Matt Houston, Esquire
WECHSLER HARWOOD HALEBIAN & FEFFER, LLP
488 Madison Avenue, 8th Floor
New York, NY 10022

Deborah R. Gross, Esquire
Susan R. Gross, Esquire
LAW OFFICES OF BERNARD M. GROSS, P.C.
1515 Locust Street, Second Floor
Philadelphia, PA 19102

Steven G. Schulman, Esquire
Samuel H. Rudman, Esquire
MILBERG WEISS BERSHAD HYNES & LERACH, LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119

Nadeem Faruqi, Esquire
FARUQI & FARUQI
320 East 39th Street
New York, NY 10016

Robert S. Schachter, Esquire
Richard A. Speirs, Esquire
ZWERLING, SCHACHTER & ZWERLING
767 Third Avenue
New York, NY 10017

Jules Brody, Esquire
Patrick Slyne, Esquire
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017

Gregory M. Egleston, Esquire
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street
New York, NY 10016

Fred Isquith, Esquire
WOLF HALDENSTEIN ADLER FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016

## SERVICE LIST

Jeffrey Block, Esquire
BERMAN DEVELARIO PEASE TABACCO BURT & PUCILO
One Liberty Square
Boston, MA 02109

Robert Roseman, Esquire
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Scott Poynter, Esquire
CAULEY & GELLER
11311 Arcade Drive, Suite 201
Little Rock, AR 72212

COHEN MILSTEIN HAUSFELD & TOLL
999 Third Avenue, Suite 3600
Seattle, WA 98104

Steven J. Toll, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Steven J. Toll, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Patrick V. Dahlstrom, Esquire
Leigh R. Handelman, Esquire
POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP
One North LaSalle Street, Suite 2225
Chicago, IL 60602

Andrew Schatz, Esquire
SCHATZ & NOBEL, P.C.
330 Main Street
Hartford, CT 06106

Vincent Cappucci, Esquire
Robert Cappucci, Esquire
ENTWISTLE & CAPPUCCI, LLP
299 Park Avenue, 14th Floor
New York NY 10171

Josh Fuller, Esquire
FULLER & SUAREZ, P.A.
201 Alhambra Circle
Suntrust Plaza, Suite 602
Coral Gables, FL 33135

Sep-09-02   04:17pm   From-Ballard Spahr                    215 864 8999        T-260  P.019/020  F-745

## SERVICE LIST

Lee Squitieri, Esquire
Stephen J. Fearon, Jr., Esquire
SQUITIERI & FEARON, LLP
521 Fifth Avenue, 26th Floor
New York, NY 10175

Kenneth A. Wexler, Esquire
KENNETH A. WEXLER & ASSOCIATES
One North LaSalle Street, Suite 2000
Chicago, IL 60602

James Bonner, Esquire
SHALOV STONE & BONNER
276 Fifth Avenue, Suite 704
New York, NY 10011

John G. Emerson, Jr., Esquire
THE EMERSON FIRM
Post Office Box 25336
Little Rock, AR 72221

Robert L. Hickok, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
Philadelphia, PA 19103

Philip C. Korologos, Esquire
BOIES, SCHILLER & FLEXNER, LLP
80 Business Park Drive, Suite 110
Armonk, NY 10504

Glenn A. Mitchell, Esquire
Andrew M. Beato, Esquire
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

Jeffrey W. Golan, Esquire
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103-7087

Darren J. Check, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Sherrie R. Savett, Esquire
Robin B. Switzenbaum, Esquire
BERGER & MONTAGUE, PC
1622 Locust Street
Philadelphia, PA 19103

## SERVICE LIST

Ira Neil Richards, Esquire
TRUJILLO, RODRIGUEZ & RICHARDS, LLC
226 W. Rittenhouse Square
The Penthouse
Philadelphia, PA  19103

Solomon B. Cera, Esquire
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105

Marc S. Henzel, Esquire
LAW OFFICES OF MARC S. HENZEL
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA  19004

Hon. Arlin M. Adams
SCHNADER HARRISON SEGAL & LEWIS, LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103

Harvey Greenfield, Esquire
THE LAW FIRM OF HARVEY GREENFIELD
60 East 42nd Street, Suite 2001
New York, NY 10165

Marc A. Topaz, Esquire
Stuart Berman, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004

Dennis J. Johnson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Joesph C. Kohn
Kohn Swift & Graf PC
One S. Broad Street, Ste. 2100
Philadelphia, PA 19107

Geoffrey C. Garvis
Grant & Eisenhofer PA
1220 N. Market Street, Ste. 500
Wilmington, DE  19801

Lawrence M. Rolnick
Lowenstein, Sandler, Kohl, Fisher & Boylan
65 Livingston Avenue
Roseland, NJ  07068

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : | MASTER FILE NO. 02-1781 |
| THIS DOCUMENT RELATES TO: | : | |
| LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION | : | CASE NO. 02-CV-4086 |
| v. | : | |
| JOHN J. RIGAS, et al. | : | |
| FRANKLIN STRATEGIC INCOME FUND | : | CASE NO. 02-CV-4292 |
| v. | : | |
| JOHN J. RIGAS, et al. | : | |

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of the

Expedited Motion of Defendants Coyle, Kailbourne, Gelber, Metros and Deloitte & Touche LLP

for an Extension of Time to Respond to Certain Complaints, and any response thereto, it is

hereby ORDERED that the Motion is GRANTED, and that Defendants' time for responding to

the complaints in *Los Angeles County Employees Retirement Association v. Rigas, et al.*, No. 02-

CV-4086, and *Franklin Strategic Income Fund v. Rigas, et al.*, No. 02-CV-4292 is extended until

the Court decides the Motion of Deloitte & Touche LLP to Implement the Court's Consolidation

Order Dated April 30, 2002.

BY THE COURT:

_____
                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : | MASTER FILE NO. 02-1781 |
| THIS DOCUMENT RELATES TO: | : | |
| LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION | : | CASE NO. 02-CV-4086 |
| v. | : | |
| JOHN J. RIGAS, et al. | : | |
| FRANKLIN STRATEGIC INCOME FUND | : | CASE NO. 02-CV-4292 |
| v. | : | |
| JOHN J. RIGAS, et al. | : | |

**EXPEDITED MOTION OF DEFENDANTS COYLE,
KAILBOURNE, GELBER, METROS AND DELOITTE &
TOUCHE LLP FOR AN EXTENSION OF TIME
TO RESPOND TO CERTAIN COMPLAINTS**

Defendants Deloitte & Touche LLP ("Deloitte"), Dennis P. Coyle, Erland E.

Kailbourne, Leslie L. Gelber, and Pete J. Metros (collectively "Moving Defendants"), by their

undersigned counsel, hereby move for an extension of time to respond to the complaints in the

two actions identified above. In support of this motion, Moving Defendants aver as follows:

        1.        On April 30, 2002, this Court entered an order consolidating a number of

actions filed as of that date under the caption *In re Adelphia Securities Litigation*, No. 02-CV-

1781 ("*in re Adelphia*"), on the ground that these actions "arise out of a common set of facts, and

should be consolidated into one single action." The consolidation order explicitly anticipated

that there would be "Later Filed Cases" that would be consolidated with the ones filed as of April 30, 2002.

2.    On August 2, 2002, Deloitte filed a Motion to Implement the consolidation order which – consistent with the express terms of the order – sought to perfect the consolidation of actions filed after April 30, 2002 (the "later-filed actions"). As part of the Motion to Implement, Deloitte requested that its time to move against or answer any of the complaints consolidated under *In re Adelphia* be stayed until sixty (60) days following the filing of an Amended Consolidated Complaint or until such time as the parties agreed or the Court so ordered. The other Moving Defendants have joined in Deloitte's Motion to Implement.

3.    Moving Defendants have reached various agreements with the plaintiffs in the later-filed actions for extensions of time to respond to the complaints in those actions at least until the Court rules on the Motion to Implement. However, the plaintiffs in two of the later-filed actions – *Los Angeles County Employees Retirement Association v. Rigas, et al.*, No. 02-CV-4086 (the "LACERA" action) and *Franklin Strategic Income Fund v. Rigas, et al.*, No. 02-CV-4292 (the "Franklin" action) – have refused to agree to any such extension. Instead, the *LACERA* and *Franklin* plaintiffs have threatened to seek default judgments if Moving Defendants do not respond to plaintiffs' complaints by the current September 3, 2002 response date in those actions.

4.    The refusal of the *LACERA* and *Franklin* plaintiffs to agree to extend Moving Defendants' response time until resolution of the Motion to Implement is entirely unreasonable. As noted above, the Motion to Implement requests that Moving Defendants' obligation to respond to the complaints in *all* of the consolidated actions be extended until the filing of an Amended Consolidated Complaint. This approach would put all of the cases on the

same track, as contemplated by the Court's consolidation order. The *LACERA* and *Franklin* plaintiffs fear the Motion to Implement will be granted, and are refusing to agree to Moving Defendants' reasonable request for an extension simply to get a "head-start" on the other plaintiffs. This would result in administrative chaos and a concomitant waste of time, effort and resources if multiple proceedings were permitted to proceed along separate procedural tracks. This Court should not countenance the tactics of the *LACERA* and *Franklin* plaintiffs.

      5.    Because a response to the complaints filed in the *LACERA* and *Franklin* actions is due on September 3, 2002, Moving Defendants respectfully request expedited treatment of this motion.

WHEREFORE, Moving Defendants respectfully requests that the Court grant them an extension of time to respond to the complaints in the *LACERA* and *Franklin* actions until the Motion to Implement is decided.

Alan J. Davis
William A. Slaughter
Joel E. Tasca
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8230/8114/8188
(215) 864-8999 (fax)
Counsel for Defendant
Deloitte & Touche LLP


Robert L. Hickok
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000
(215) 981-4750 (fax)
Counsel for Defendants
Dennis P. Coyle, Erland E. Kailbourne,
Leslie L. Gelber and Pete J.Metros

Dated:  August 22, 2002

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2002, a true and correct copy of the foregoing Expedited Motion of Defendants Coyle, Kailbourne, Gelber, Metros and Deloitte & Touche LLP for an Extension of Time to Respond to Certain Complaints was served via facsimile and Federal Express upon:

> Stuart M. Grant, Esquire
> Megan D. McIntyre, Esquire
> GRANT & EISENHOFER PA
> 1201 N. Market Street, Ste. 2100
> Wilmington, DE 19801
> Facsimile (302) 622-7100

and via first class mail, postage prepaid upon:

Evan J. Smith, Esquire
BRODSKY & SMITH, LLC
11 Bala Avenue, Suite 39
Bala Cynwyd, PA 19004-3210

Steven E. Cauley, Esquire
Scott Poynter, Esquire
CAULEY GELLER BOWMAN & COATES, LLP
Post Office Box 25438
Little Rock, AR 72221

Robert I. Harwood, Esquire
Matt Houston, Esquire
WECHSLER HARWOOD HALEBIAN & FEFFER, LLP
488 Madison Avenue, 8th Floor
New York, NY 10022

Deborah R. Gross, Esquire
Susan R. Gross, Esquire
LAW OFFICES OF BERNARD M. GROSS, P.C.
1515 Locust Street, Second Floor
Philadelphia, PA 19102

Steven G. Schulman, Esquire
Samuel H. Rudman, Esquire
MILBERG WEISS BERSHAD HYNES & LERACH, LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119

Nadeem Faruqi, Esquire
FARUQI & FARUQI
320 East 39th Street
New York, NY 10016

Robert S. Schachter, Esquire
Richard A. Speirs, Esquire
ZWERLING, SCHACHTER & ZWERLING
767 Third Avenue
New York, NY 10017

Jules Brody, Esquire
Patrick Slyne, Esquire
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017

PHL_A #1659354 v1

Gregory M. Egleston, Esquire
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street
New York, NY 10016

Fred Isquith, Esquire
WOLF HALDENSTEIN ADLER FREEMAN &
HERZ
270 Madison Avenue
New York, NY 10016

Jeffrey Block, Esquire
BERMAN DEVELARIO PEASE TABACCO BURT &
PUCILO
One Liberty Square
Boston, MA 02109

Robert Roseman, Esquire
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Howard G. Smith, Esquire
3070 Bristol Pike, Suite 112
Bensalem, PA 19020

Thomas E.L. Dewey, Esquire
DEWEY PEGNO & KRAMARSKY LLP
30 Broad Street
New York, NY 10004

Steven J. Toll, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Thomas S. Biemer, Esquire
DILWORTH PAXSON
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7595

Patrick V. Dahlstrom, Esquire
Leigh R. Handelman, Esquire
POMERANTZ HAUDEK BLOCK GROSSMAN &
GROSS LLP
One North LaSalle Street, Suite 2225
Chicago, IL 60602

Andrew Schatz, Esquire
SCHATZ & NOBEL, P.C.
330 Main Street
Hartford, CT 06106

Vincent Cappucci, Esquire
Robert Cappucci, Esquire
ENTWISTLE & CAPPUCCI, LLP
299 Park Avenue, 14th Floor
New York NY 10171

Josh Fuller, Esquire
FULLER & SUAREZ, P.A.
201 Alhambra Circle
Suntrust Plaza, Suite 602
Coral Gables, FL 33135

Lee Squitieri, Esquire
Stephen J. Fearon, Jr., Esquire
SQUITIERI & FEARON, LLP
521 Fifth Avenue, 26th Floor
New York, NY 10175

Kenneth A. Wexler, Esquire
KENNETH A. WEXLER & ASSOCIATES
One North LaSalle Street, Suite 2000
Chicago, IL 60602

James Bonner, Esquire
SHALOV STONE & BONNER
276 Fifth Avenue, Suite 704
New York, NY 10011

Charles J. Piven, Esquire
LAW OFFICES OF CHARLES J. PIVEN
World Trade Center (Suite 2525)
Baltimore, MD 21202

Glenn A. Mitchell, Esquire
Andrew M. Beato, Esquire
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

Darren J. Check, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Ira Neil Richards, Esquire
TRUJILLO, RODRIGUEZ & RICHARDS, LLC
226 W. Rittenhouse Square
The Penthouse
Philadelphia, PA 19103

Marc S. Henzel, Esquire
LAW OFFICES OF MARC S. HENZEL
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA 19004

Harvey Greenfield, Esquire
THE LAW FIRM OF HARVEY GREENFIELD
60 East 42nd Street, Suite 2001
New York, NY 10165

Dennis J. Johnson, Esquire
JOHNSON & PERKINSON
1690 Williston Road
South Burlington, VT 05403

John G. Emerson, Jr., Esquire
THE EMERSON FIRM
Post Office Box 25336
Little Rock, AR 72221

Philip C. Korologos, Esquire
BOIES, SCHILLER & FLEXNER, LLP
80 Business Park Drive, Suite 110
Armonk, NY 10504

Jeffrey W. Golan, Esquire
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103-7087

Sherrie R. Savett, Esquire
Robin B. Switzenbaum, Esquire
BERGER & MONTAGUE, PC
1622 Locust Street
Philadelphia, PA 19103

Solomon B. Cera, Esquire
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105

Hon. Arlin M. Adams
SCHNADER HARRISON SEGAL & LEWIS,
LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

Marc A. Topaz, Esquire
Stuart Berman, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Joseph C. Kohn, Esquire
KOHN SWIFT & GRAF PC
One S. Broad Street, Ste. 2100
Philadelphia, PA 19107

Gregory A. Markel, Esquire
Lawrence G. Cooke, II, Esquire
BROBECK, PHELGER & HARRISON, LLP
1633 Broadway, 47th Floor
New York, NY 10019

Lawrence M. Rolnick, Esquire
LOWENSTEIN, SANDLER, KOHL, FISHER
   & BOYLAN
65 Livingston Avenue
Roseland, NJ 07068

Nicholas E. Chimicles, Esquire
Denise Davis Schwartzman, Esquire
CHIMICLES & TIKELLIS, LLP
361 West Lancaster Ave.
Haverford, PA 19041

Jonathan P. Bach, Esquire
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050

Scott R. Shepherd, Esquire
SHEPHERD & FINKELMAN LLC
117 Gayley Street, Suite 200
Media, PA 19063

William M. Connolly, Esquire
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Peter Lennon, Esquire
KAPLAN, FOX & KILSHEIMER LLP
2200 West Chester Pike
Broomall, PA 19008

Mark C. Gardy, Esquire
ABBEY GARDY LLP
212 East 39th Street
New York, NY 10016

Brian M. Felgoise, Esquire
LAW OFFICE OF BRIAN M. FELGOISE
230 South Broad Street
Suite 404
Philadelphia, PA 19102

Douglas M. McGeige, Esquire
Max Berger, Esquire
BERNSTEIN LITOWITZ BERGER &
GROSSMAN
1285 Avenue of the Americas
New York, NY 10019

Martin Chitwood, Esquire
CHITWOOD & HARLEY
2900 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309

Jonathan M. Plasse, Esquire
GOODKIND LABATON RUDOFF &
SUCHAROW LLP
100 Park Avenue
New York, NY 10017

Michael I. Fistel, Jr., Esquire
HOLZER & HOLZER
6135 Barfield Road, Suite 102
Atlanta, GA 30328

Mark A. Strauss, Esquire
KIRBY MCINERNEY & SQUIRE LLP
830 Third Avenue
New York, NY 10022

Roger LeBlanc, Esquire
LEBLANC & WADELL, LLP
5353 Essen Lane, Suite 420
Baton Rouge, LA 70809

Charles Barton, Esquire
MCGINNIS LOCHRIDGE & KILGORE, LLP
919 Congress Avenue
Austin, TX 78701

Bruce G. Murphy, Esquire
LAW OFFICE OF BRUCE G. MURPHY
265 Llwyds Lane
Vero Beach, FL 32963

Joel E. Tasca

**EXHIBIT D**

Sep-04-02   12:53pm   From-Ballard Spahr          215 864 8999        T-142   P.003/003   F-634

(6)

HH

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | 02 AUG 22 PM 6:57 |
| ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : | MASTER FILE NO. 02-1781 |
| | : | |
| THIS DOCUMENT RELATES TO: | : | FILED AUG 2 7 2002 |
| LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION | : | CASE NO. 02-CV-4086 |
| v. | : | |
| JOHN J. RIGAS, et al. | : | |
| | : | |
| FRANKLIN STRATEGIC INCOME FUND | : | CASE NO. 02-CV-4292 |
| v. | : | |
| JOHN J. RIGAS, et al. | : | |

## ORDER

AND NOW, this 27th day of _August_, 2002, upon consideration of the

Expedited Motion of Defendants Coyle, Kailbourne, Gelber, Metros and Deloitte & Touche LLP

for an Extension of Time to Respond to Certain Complaints, and any response thereto, it is

hereby ORDERED that the Motion is GRANTED, and that Defendants' time for responding to

the complaints in *Los Angeles County Employees Retirement Association v. Rigas, et al.*, No. 02-

CV-4086, and *Franklin Strategic Income Fund v. Rigas, et al.*, No. 02-CV-4292 is extended until

the Court decides the Motion of Deloitte & Touche LLP to Implement the Court's Consolidation

Order Dated April 30, 2002.

ENTERED

AUG 2 8 2002

CLERK OF COURT

BY THE COURT:

_____ J.

PHL_A #1659354 v1

**EXHIBIT E**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | Master File No. 02CV1781 |
| | |
| THIS DOCUMENT RELATES TO: | CLASS ACTION |
| Los Angeles County Employees Retirement Association vs. John J. Rigas | E.D. Pa. No. 02-4086 |
| Franklin Strategic Income Fund vs. John J. Rigas | E.D. Pa. No. 02-4292 |

02 SEP 11 PM 3: 41

## O R D E R

AND NOW, this _____ day of September, 2002, upon consideration of the

Expedited Motion of defendant Peter Venetis for an Extension of Time to Respond to Certain

Complaints, **IT IS ORDERED** that the Motion is **GRANTED**, and that the time for Peter

Venetis to answer, move or otherwise plead with respect to the complaints in Los Angeles

County Employees Retirement Association vs. John J. Rigas, E.D. Pa. No. 02-4086, and Franklin

Strategic Income Fund vs. John J. Rigas, E.D. Pa. No. 02-4292, is extended as follows:

(a) If the Court grants Deloitte & Touche's Motion to Implement the Court's

April 30, 2002 Consolidation Order, Peter Venetis' obligation to answer, move, or otherwise

plead with respect to the Los Angeles County Employees Retirement Association and Franklin

Strategic Income Fund complaints shall be governed by the consolidation order and the Court's

subsequent scheduling orders;

(b) If the Court denies Deloitte & Touche's Motion to Implement the Court's

April 30, 2002 Consolidation Order, Peter Venetis will answer, move, or otherwise plead with

respect to the Los Angeles County Employees Retirement Association and Franklin Strategic

Income Fund complaints thirty days after the denial of the motion.

                                   BY THE COURT:


                                   _____
                                   Herbert J. Hutton, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE ADELPHIA COMMUNICATIONS | : | Master File No. |
| SECURITIES LITIGATION | : | 02CV1781 |
| | : | |
| | : | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | : | |
| Los Angeles County Employees Retirement | : | |
| Association vs. John J. Rigas | : | E.D. Pa. No. 02-4086 |
| | : | |
| Franklin Strategic Income Fund vs. | : | |
| John J. Rigas | : | E.D. Pa. No. 02-4292 |
| | : | |

EXPEDITED MOTION OF DEFENDANT PETER VENETIS FOR AN EXTENSION OF
TIME TO RESPOND TO CERTAIN COMPLAINTS

Peter Venetis makes this expedited motion for an extension of time to answer,

move, or otherwise plead with respect to the complaints in Los Angeles County Employees

Retirement Association vs. John J. Rigas, E.D. Pa. No. 02-4086, and Franklin Strategic Income

Fund vs. John J. Rigas, E.D. Pa. No. 02-4292, and in support thereof states as follows:

1.      On April 30, 2002, this Court entered a consolidation order, a copy of

which is attached as Exhibit A. Paragraph five of that Order provided as follows:

> Later Filed Cases. The terms of the Order apply to actions later
> instituted in, removed to, or transferred to this Court that involved
> claims on behalf of the purchasers of Adelphia securities which are
> related to the claims of plaintiffs in these consolidated cases. . . .

2.      On June 26, 2002, the firm of Grant & Eisenhofer, P.A. filed a complaint

captioned Los Angeles County Employees Retirement Association vs. John J. Rigas, E.D. Pa.

No. 02-4086 ("LACERA"). This complaint alleged, inter alia, claims on behalf of purchasers of

Adelphia securities, and noted that related claims (including claims enumerated in this Court's

April 30, 2002 consolidation order) were pending.

3.    On June 28, 2002, the firm of Grant & Eisenhofer, P.A. filed a complaint captioned <u>Franklin Strategic Income Fund vs. John J. Rigas</u>, E.D. Pa. No. 02-4292 ("<u>Franklin</u>"). This complaint also alleged, <u>inter alia</u>, claims on behalf of purchasers of Adelphia securities, and noted that it was related to the <u>LACERA</u> case and, by extension, the claims related to the <u>LACERA</u> case.

4.    On August 2, 2002, Deloitte and Touche filed a motion to Implement the Court's April 30, 2002 Consolidation Order. A copy of this motion is attached as Exhibit B.

5.    Although all other plaintiffs agreed to extend the time for Deloitte & Touche to answer, move or otherwise plead with respect to the complaints they had filed until the motion to Implement the Court's April 30, 2002 Consolidation order was decided, plaintiffs in the <u>LACERA</u> and <u>Franklin</u> cases refused to do so.

6.    Deloitte & Touche therefore filed an Expedited Motion for an Extension of Time to Respond to Certain Complaints on August 22, 2002. Directors Dennis Coyle, Erland Kailbourne, Leslie Gelber and Peter Metros joined in Deloitte's motion. A copy of this Motion is attached as Exhibit C.

7.    On August 27, 2002, the Court granted the Expedited Motion for an Extension of Time to Respond to Certain Complaints filed by Deloitte, Coyle, Kailbourne, Gelber and Metros, and relieved them of any obligation to respond to the <u>LACERA</u> and <u>Franklin</u> complaints until after the disposition of Deloitte's motion to Implement the Court's April 30, 2002 consolidation order. A copy of the Court's August 27, 2002 Order is attached as Exhibit D.

2

8.     Following the Court's August 27, 2002 Order, counsel for Peter Venetis contacted counsel for the various plaintiffs to confirm that they would agree to extend to Peter Venetis an extension similar to the one the Court had granted to Deloitte, Coyle, Kailbourne, Gelber and Metros.  See Exhibit E.

9.     Despite the fact that the Court granted the motion filed by Deloitte, Coyle, Kailbourne, Gelber and Metros, the LACERA and Franklin plaintiffs refused to agree that the Court's August 27, 2002 Order would extend to Peter Venetis.  See Exhibit F.

10.     The various consolidated complaints allege, inter alia, that Peter Venetis, like Coyle, Kailbourne, Gelber and Metros, was a director of Adelphia who was not an officer of Adelphia.  For scheduling purposes, there is no reason to treat Peter Venetis differently than other defendants.  Further, there is no reason to require Peter Venetis to respond to the LACERA and Franklin complaints when (a) Deloitte, Coyle, Kailbourne, Gelber and Metros do not have to do so, and (b) Deloitte's Motion to Implement the Court's April 30, 2002 Consolidation Order would place all consolidated cases on a schedule where all defendants would have a consistent deadline to respond to the complaint.

11.     The refusal of the LACERA and Franklin plaintiffs to agree to extend the time for Peter Venetis to answer, move, or otherwise plead with respect to their complaints is manifestly unreasonable, and subverts the orderly disposition of these consolidated cases.

12.     The Court should therefore order that the time for Peter Venetis to answer, move or otherwise plead with respect to the LACERA and Franklin claims be extended until required by the Court's scheduling orders (if Deloitte & Touche's Motion to Implement the Court's April 30, 2002 Consolidation Order is granted), or until thirty days after the Court's

3

decision on Deloitte & Touche's Motion to Implement the Court's April 30, 2002 Consolidation Order (if that motion is denied).

13.    Because the <u>LACERA</u> and <u>Franklin</u> plaintiffs have refused to agree to extend the time beyond September 24, 2002 for Peter Venetis to answer, move or otherwise plead with respect to their complaints, Peter Venetis respectfully requests expedited treatment of this motion.

Respectfully submitted,

COZEN O'CONNOR

By: _____
Patrick J. O'Connor (13086)
David M. Doret (15634)
Aaron Krauss (62419)
1900 Market Street
Philadelphia, PA  19103
215-665-2000

Attorneys for Defendant Peter Venetis

Dated:  September <u>11</u>, 2002

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2002, a true and correct copy of the foregoing EXPEDITED MOTION OF DEFENDANT PETER VENETIS FOR AN EXTENSION OF TIME TO RESPOND TO CERTAIN COMPLAINTS was served via first class mail, postage prepaid upon:

See Attached Counsel List.

_____
Aaron Krauss

Dated: September 11, 2002

Evan J. Smith, Esquire
Brodsky & Smith, LLC
11 Bala Avenue, Suite 39
Bala Cynwyd, PA 19004-3210

Robert I. Harwood, Esquire
Matt Houston, Esquire
Wechsler Harwood Halebian & Feffer, LLP
488 Madison Avenue, 8th Floor
New York, NY 10022

Steven G. Schulman, Esquire
Samuel H. Rudman, Esquire
Milberg Weiss Bershad Hynes & Lerach, LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119

Robert S. Schachter, Esquire
Richard A. Speirs, Esquire
Zwerling, Schachter & Zwerling
767 Third Avenue
New York, NY 10017

Gregory M. Egleston, Esquire
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, NY 10016

Steven E. Cauley, Esquire
Scott Poynter, Esquire
Cauley Geller Bowman & Coates, LLP
Post Office Box 25438
Little Rock, AR 72221

Deborah R. Gross, Esquire
Susan R. Gross, Esquire
Law Offices of Bernard M. Gross, P.C.
1515 Locust Street, Second Floor
Philadelphia, PA 19102

Nadeem Faruqi, Esquire
Faruqi & Faruqi
320 East 39th Street
New York, NY 10016

Jules Brody, Esquire
Patrick Slyne, Esquire
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Fred Isquith, Esquire
Wolf Haldenstein Adler Freeman & Herz
270 Madison Avenue
New York, NY 10016

Jeffrey Block, Esquire
Berman DeVelario Pease Tabacco Burt & Pucilo
One Liberty Square
Boston, MA 02109

Howard G. Smith, Esquire
3070 Bristol Pike, Suite 112
Bensalem, PA 19020

Steven J. Toll, Esquire
Cohen Milstein Hausfeld & Toll
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Patrick V. Dahlstrom, Esquire
Leigh R. Handelman, Esquire
Pomerantz Haudek Block Grossman & Gross LLP
One North LaSalle Street, Suite 2225
Chicago, IL 60602

Vincent Cappucci, Esquire
Robert Cappucci, Esquire
Entwistle & Cappucci, LLP
299 Park Avenue, 14th Floor
New York NY 10171

Lee Squitieri, Esquire
Stephen J. Fearon, Jr., Esquire
Squitieri & Fearon, LLP
521 Fifth Avenue, 26th Floor
New York, NY 10175

James Bonner, Esquire
Shalov Stone & Bonner
276 Fifth Avenue, Suite 704
New York, NY 10011

Robert Roseman, Esquire
Spector Roseman & Kodroff
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Thomas E.L. Dewey, Esquire
Dewey Pegno & Kramarsky LLP
30 Broad Street
New York, NY 10004

Thomas S. Biemer, Esquire
Dilworth Paxson
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7595

Andrew Schatz, Esquire
Schatz & Nobel, P.C.
330 Main Street
Hartford, CT 06106

Josh Fuller, Esquire
Fuller & Suarez, P.A.
201 Alhambra Circle
Suntrust Plaza, Suite 602
Coral Gables, FL 33135

Kenneth A. Wexler, Esquire
Kenneth A. Wexler & Associates
One North LaSalle Street, Suite 2000
Chicago, IL 60602

John G. Emerson, Jr., Esquire
The Emerson Firm
Post Office Box 25336
Little Rock, AR 72221

Robert L. Hickok, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

Glenn A. Mitchell, Esquire
Andrew M. Beato, Esquire
Stein Mitchell & Mezines
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

Darren J. Check, Esquire
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Ira Neil Richards, Esquire
Trujillo, Rodriguez & Richards, LLC
226 W. Rittenhouse Square
The Penthouse
Philadelphia, PA 19103

Marc S. Henzel, Esquire
Law Offices of Marc S. Henzel
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA 19004

Harvey Greenfield, Esquire
The Law Firm of Harvey Greenfield
60 East 42nd Street, Suite 2001
New York, NY 10165

Dennis J. Johnson, Esquire
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Philip C. Korologos, Esquire
Boies, Schiller & Flexner, LLP
80 Business Park Drive, Suite 110
Armonk, NY 10504

2

Jeffrey W. Golan, Esquire
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103-7087

Sherrie R. Savett, Esquire
Robin B. Switzenbaum, Esquire
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA 19103

Solomon B. Cera, Esquire
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA 94105

Hon. Arlin M. Adams
Schnader Harrison Segal & Lewis, LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

Marc A. Topaz, Esquire
Stuart Berman, Esquire
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Joseph C. Kohn, Esquire
Kohn Swift & Graf PC
One S. Broad Street, Ste. 2100
Philadelphia, PA 19107

Stuart M. Grant, Esquire
Megan D. McIntyre, Esquire
Grant & Eisenhofer PA
1201 N. Market Street, Ste. 2100
Wilmington, DE 19801

Scott R. Shepherd, Esquire
Shepherd & Finkelman LLC
117 Gayley Street, Suite 200
Media, PA 19063

Peter Lennon, Esquire
Kaplan, Fox & Kilsheimer LLP
2200 West Chester Pike
Broomall, PA 19008

Brian M. Felgoise, Esquire
Law Office of Brian M. Felgoise
230 South Broad Street
Suite 404
Philadelphia, PA 19102

Martin Chitwood, Esquire
Chitwood & Harley
2900 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309

Michael I. Fistel, Jr., Esquire
Holzer & Holzer
6135 Barfield Road, Suite 102
Atlanta, GA 30328

Roger LeBlanc, Esquire
LeBlanc & Wadell, LLP
5353 Essen Lane, Suite 420
Baton Rouge, LA 70809

Lawrence M. Rolnick, Esquire
Lowenstein, Sandler, Kohl, Fisher & Boylan
65 Livingston Avenue
New York, NY 10104-0050

William M. Connolly, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Mark C. Gardy, Esquire
Abbey Gardy LLP
212 East 39th Street
New York, NY 10016

3

Douglas M. McGeige, Esquire
Max Berger, Esquire
Bernstein Litowitz Berger & Grossman
1285 Avenue of the Americas
New York, NY 10019

Charles Barton, Esquire
McGinnis Lochridge & Kilgore, LLP
919 Congress Avenue
Austin, TX 78701

Jonathan M. Plasse, Esquire
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue
New York, NY 10017

Bruce G. Murphy, Esquire
Law Office of Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963

Mark A. Strauss, Esquire
Kirby McInerney & Squire LLP
830 Third Avenue
New York, NY 10022

Gregory A. Markel, Esquire
Lawrence G. Cooke, II, Esquire
Brobeck, Phelger & Harrison, LLP
1633 Broadway, 47th Floor
New York, NY 10019

Charles J. Piven, Esquire
Law Offices of Charles J. Piven
World Trade Center (Suite 2525)
Baltimore, MD 21202

PHILA1\1693898\1 128233.000

4

Exhibit A

MAY. 1. 2002 12:29PM   BERNARD M. GROSS, P. C.            NO. 4567   P. 3/9

APR. 30. 2002 11:44AM   BERNARD M. GROSS. P. C.           NO. 4506   P. 2



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERROLD RUSKIN | CIVIL ACTION |
| v. | NO. 02-1781 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| RICHARD GITTER | CIVIL ACTION |
| v. | NO. 02-1780 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| TZ MICRO COMPUTING, INC. | CIVIL ACTION |
| v. | NO. 02-1813 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| WILLIAM J. HATTRICK, JR. | CIVIL ACTION |
| v. | NO. 02-1816 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| ALAN SHULIMSON | CIVIL ACTION |
| v. | NO. 02-1819 |
| ADELPHIA COMMUNICATIONS, ET AL. | |
| | |
| STEVEN ROSSOW | CIVIL ACTION |
| v. | NO. 02-1831 |
| ADELPHIA COMMUNICATIONS, ET AL. | |

FILED

APR 3 0 2002

MICHAEL E. KUNZ, Clerk
Dep. Clerk

ENTERED

APR 3 0 2002

CLERK OF COURT

Adelphia 1065

MAY. 1. 2002 12:29PM    BERNARD M. GROSS, P.C.                    NO. 4506    P. 4/9

APR. 30. 2002 11:44AM    BERNARD M. GROSS, P.C.                    NO. 4506    P. 3

| | | |
|---|---|---|
| MARKET STREET SECURITIES | : | CIVIL ACTION |
| v. | : | NO. 02-1835 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

| | | |
|---|---|---|
| ISRAEL COSTA | : | CIVIL ACTION |
| v. | : | NO. 02-1839 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

| | | |
|---|---|---|
| MARK G. EPSTEIN | : | CIVIL ACTION |
| v. | : | NO. 02-1871 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

| | | |
|---|---|---|
| JOANNE GOLD | : | CIVIL ACTION |
| v. | : | NO. 02-1878 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

| | | |
|---|---|---|
| BARRY GOLDMAN | : | CIVIL ACTION |
| v. | : | NO. 02-1893 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

| | | |
|---|---|---|
| JOHN FULLER | : | CIVIL ACTION |
| v. | : | NO. 02-1987 |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

2

MAY  1  2002 12:29PM    BERNARD M. GROSS. P. C.                    NO 4563   P  5/9
APR. 30. 2002 11:44AM     BERNARD M. GROSS. P. C.                  NO. 4506   P.  4

GERALD J. STREKAL                          :      CIVIL ACTION

            v.                             :      NO. 02-2061

ADELPHIA COMMUNICATIONS, ET AL.            :

---

CROSSWAY PARTNERS                          :      CIVIL ACTION

            v.                             :      NO. 02-2087

ADELPHIA COMMUNICATIONS, ET AL.            :

---

ALAN GARNER                                :      CIVIL ACTION

            v.                             :      NO. 02-2099

ADELPHIA COMMUNICATIONS, ET AL.            :

---

MOHAMMED IDRIES                            :      CIVIL ACTION

            v.                             :      NO. 02-2100

PETE J. METROS, ET AL.                     :

---

LEWIS THOMAS HARDIN                        :      CIVIL ACTION

            v.                             :      NO. 02-2112

ADELPHIA COMMUNICATIONS, ET AL.            :

---

ROBERT MORELLO                             :      CIVIL ACTION

            v.                             :      NO. 02-2403

ADELPHIA COMMUNICATIONS, ET AL.            :

---

3

| | | |
|---|---|---|
| GEORGE B. INABINET, JR., ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-2416 |
| | : | |
| ADELPHIA COMMUNICATIONS, ET AL. | : | |

---

### PROPOSED ORDER RE: CONSOLIDATION

WHEREAS, presently pending before this Court are related securities class actions, which, in order of filing are:

<u>Jerrold Ruskin v. Adelphia Communications, et al.</u>, Civil Action No. 02-1781;

<u>Richard Gitter v. Adelphia Communications, et al.</u>, Civil Action No. 02-1790;

<u>TZ Micro Computing, Inc. v. Adelphia Communications, et al.</u>, Civil Action No. 02-1813;

<u>William J. Hattrick, Jr. v. Adelphia Communications, et al.</u>, Civil Action No. 02-1816;

<u>Alan Shulimson v. Adelphia Communications, et al.</u>, Civil Action No. 02-1819;

<u>Steven Rossow v. Adelphia Communications, et al.</u>, Civil Action No. 02-1831;

<u>Market Street Securities v. Adelphia Communications, et al.</u>, Civil Action No. 02-1835;

<u>Israel Costa v. Adelphia Communications, et al.</u>, Civil Action No. 02-1839;

<u>Mark G. Epstein v. Adelphia Communications, et al.</u>, Civil Action No. 02-1871;

<u>Joanne Gold v. Adelphia Communications, et al.</u>, Civil Action No. 02-1878;

<u>Barry Goldman v. Adelphia Communications, et al.</u>, Civil Action No. 02-1987;

<u>John Fuller v. Adelphia Communications, et al.</u>, Civil Action No. 02-1987;

<u>Gerald J. Strekal v. Adelphia Communications, et al.</u>, Civil Action No. 02-2061;

<u>Crossway Partners v. Adelphia Communications, et al.</u>, Civil Action No. 02-2087;

<u>Alan Gamer v. Adelphia Communications, et al.</u>, Civil Action No. 02-2099;

4

MAY. 1. 2002 12:30PM    BERNARD M. GROSS, P. C.                    NO. 4565    P. 7/9
     APR. 30. 2002 11:45AM    BERNARD M. GROSS, P. C.                NO. 4506    P. 6

Mohammed Idries v. Pete J. Metros, et al., Civil Action No. 02-2100;

Lewis Thomas Hardin v. Adelphia Communications, et al., Civil Action No. 02-2112;

Robert Morello v. Adelphia Communications, et al., Civil Action No. 02-2403; and

George B. Inabinet, Jr., et al. v. Adelphia Communications, et al., Civil Action No. 02-2416

      WHEREAS, the above-referenced actions all arise out of a common set of facts, and should be consolidated into one single action, and that the procedures set forth below should be followed:

      1.    Consolidation.  Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the above-captioned Class Action Lawsuits are to be consolidated for all purposes, including, but not limited to, discovery and all pretrial and trial proceedings.

      2.    Master Docket and File.  This action shall be captioned "In re Adelphia Communications Securities Litigation" and the files of this action shall be maintained in one file under Master File No. 02-1781. All orders, pleadings, motions and other documents should, when filed and docketed in the Master File, be deemed filed and docketed in each individual case to the extent applicable. When an order, pleadings, motion or document is filed with a caption indicating that it is applicable to fewer than all of these consolidated actions, the clerk should file such pleading in the Master File and note such filing in the Master Docket and in the docket of each action referenced.

      3.    Captions.  Every pleading filed in these consolidated Class Action Lawsuits, or in any separate action included therein, shall bear the following caption:

MAR. 1. 2002 12:50PM    BERNARD M. GROSS, P. C.    NO. 5554    P. 5/9

APR. 30. 2002 11:45AM    BERNARD M. GROSS, P. C.

NO. 4506    P. 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : | Master File No. 02CV1781 |
| ——————————————— | : | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | : | |
| ——————————————— | : | |

4.    When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set forth above. When a pleading is intended to be applicable to some, but not all, of such actions, this Court's docket number for each individual action to which the paper is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Documents Relates To:" in the caption set forth above.

5.    Later Filed Cases. The terms of the Order apply to actions later instituted in, removed to, or transferred to this Court that involved claims on behalf of the purchasers of Adelphia securities which are related to the claims of plaintiffs in these consolidated cases, under the following procedures:

(a)    When such case is filed in, removed to, or transferred to this Court, the Clerk, of the Court will:

(i)    place a copy of this Order in the separate file for such action;

(ii)    mail a copy of this Order to counsel for plaintiffs and counsel

6

MAY  1 2002 12:30PM    BERNARD M. GROSS, P.C.                NO. 4550    P. 9/9

APR. 30. 2002 11:45AM    BERNARD M. GROSS, P.C.

                                                          NO. 4506    P.  8

for defendants; and

         (iii)     make an appropriate notation in the Master Docket.

       (b)     This Order will apply to each such case that arises out of or is related to the same common nucleus of fact, subsequently instituted in, removed to, or transferred to this Court.

Dated: *April 30, 2002*

                                    BY THE COURT:

                                              HUTTON, J.

1. Civil Action No's 02-2121 Stocke et al v. Rigas et al. and CA 02-2136 Ron Moore v. John Rigas, et al., are to be included in the terms of this Order.

2. The Clerk's Office is to CLOSE STATISTICALLY all of the above numbered cases with the exception of the lead case CA02-1781

4-30-02
Mailed To:
Adelphia Communications
T. Rigas
John Rigas
B. Gross, Esq.

Exhibit B

Sep-09-02   04:16pm   From-Ballard Spahr                    215 664 8999        T-260   P.002   F-745

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

USDC-EDPA
REC'D CLERK
2002 AUG -2 PH 6: 53

| | |
|---|---|
| IN RE:<br><br>ADELPHIA COMMUNICATIONS<br>SECURITIES LITIGATION | MASTER FILE NO.  02-CV-1781 |
| THIS DOCUMENT RELATES TO | ALL ACTIONS |

## ORDER

AND NOW, this ____ day of _____, 2002, upon consideration of the

Motion of Deloitte & Touche LLP To Implement This Court's Consolidation Order Dated

April 30, 2002, and any responses thereto, it is hereby ORDERED that the Motion is

GRANTED, and that the Court will sign and enter the [Proposed] Supplemental Order attached

as Exhibit B to the Motion.

BY THE COURT:

_____
Hutton, J.

Sep-09-02   04:16pm   From-Ballard Spahr                215 864 8999        T-260  P.003     F-745

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

USDC-EDPA
REC'D CLERK
2002 AUG -2 PM 6: 53

IN RE:

ADELPHIA COMMUNICATIONS
SECURITIES LITIGATION

MASTER FILE NO. 02-CV-1781

THIS DOCUMENT RELATES TO

ALL ACTIONS

## MOTION OF DELOITTE & TOUCHE LLP
## TO IMPLEMENT THIS COURT'S
## CONSOLIDATION ORDER DATED APRIL 30. 2002

Defendant Deloitte & Touche LLP ("Deloitte") hereby moves to implement the

Court's Consolidation Order dated April 30, 2002, with respect to actions filed after that date.

In support of this motion, Deloitte relies on the accompanying memorandum.

Dated:  August 2, 2002

Alan J. Davis
William A. Slaughter
Joel E. Tasca
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 864-8230/8114/8188
(215) 864-8999 (fax)

Of Counsel:

Max R. Shulman
Katherine B. Forrest
CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Attorneys for Deloitte & Touche LLP

Sep-09-02   04:16pm   From-Ballard Spahr                215 864 8999          T-260  P.004    F-745

USDC-EDPA
REC'D CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA   2002 SEP -2  PM 6: 53

| | |
|---|---|
| IN RE:<br><br>ADELPHIA COMMUNICATIONS<br>SECURITIES LITIGATION | MASTER FILE NO.  02-CV-1781 |
| THIS DOCUMENT RELATES TO | ALL ACTIONS |

**MEMORANDUM OF DELOITTE & TOUCHE LLP
IN SUPPORT OF ITS MOTION TO IMPLEMENT
THIS COURT'S CONSOLIDATION ORDER DATED APRIL 30, 2002**

Defendant Deloitte & Touche LLP ("Deloitte") submits this memorandum in

support of its motion to implement the Court's Consolidation Order dated April 30, 2002, with

respect to actions filed after that date.[1]

I.    **BACKGROUND**

Commencing on April 2, 2000, and continuing through the present, a number of

lawsuits have been filed in this Court relating to Adelphia Communications Corporation

("Adelphia") and based upon the same nucleus of operative fact.  On April 30, 2002, the Court

---

[1]  The following are the actions filed after April 30, 2002, that name Deloitte as a defendant: *D'Asaro v. Adelphia Communications Corp.*, C.A. #02-CV-2618; *Kiefer v. Adelphia Communications Corp.*, C.A. #02-CV-3186; *Turrell v. Adelphia Communications Corp.*, C.A. #-02-CV-3197; *Burstein v. Adelphia Communications Corp.*, C.A. #02-CV-3273; *Argent Classic Convertible Arbitrage Fund, L.P.*, C.A. #02-CV-3547; *Victor v. Adelphia Communications Corp.*, C.A. #02-CV-3659; *New York City Employees' Ret. Sys. v. Adelphia Communications Corp.*, C.A. #02-CV-3778; *Los Angeles County Employees Ret. Ass'n v. Rigas et al.*, C.A. #02-CV-4086; *Huhn v. Rigas*, C.A. #02-CV-4334; *Franklin Strategic Income Fund v. Rigas*, C.A. #02-CV-4292.  There are six additional actions filed after April 30, 2002, that do not name Deloitte as a defendant: *VR Associates v. Adelphia Communications Corp.* C.A. #02-CV-2238; *Weiner v. Rigas*, C.A. #02-CV-3211; *Seebacher v. Adelphia Communications Corp.*, C.A. #02-CV-3264; *Matovich v. Adelphia Communications Corp.*, C.A. #02-CV-3561; *Burnside v. Rigas*, C.A. #02-CV-3769; *Hyslip v. Rigas*, C.A. #02-CV-3768; *Feivel Gottlieb Restated Defined Benefit Trust v. Rigas*, C.A. #02-CV-4486.

Sep-09-02    04:16pm    From-Ballard Spahr                215 864 8999        T-260  P.005    F-745

entered an order (the "Consolidation Order") consolidating all the actions filed as of that date under the caption *In re Adelphia Securities Litigation*, 02-CV-1781 ("*In re Adelphia*") on the ground that they "arise out of a common set of facts, and should be consolidated into one single action." (Consolidation Order at 5.)[2]  The Consolidation Order explicitly anticipated that there would be "Later Filed Cases" that would be consolidated with the ones filed as of April 30, 2002.  The Order provides that "[t]he terms of this Order apply to actions later instituted in, removed to, or transferred to this Court that involved claims on behalf of the purchasers of Adelphia securities which are related to the claims of plaintiffs in these consolidated cases" and that "[t]his Order will apply to each such case that arises out of or is related to the same common nucleus of fact, subsequently instituted in, removed to, or transferred to this Court." (Consolidation Order ¶ 5.)

As the Court expected, after it issued the Consolidation Order, several additional lawsuits were filed arising out of the same common nucleus of fact as those involved in the consolidated cases and asserting the same or similar securities law violations; ten of those complaints name Deloitte as a defendant (the "New Cases").  Two of the New Cases have been assigned to different judges in the Eastern District of Pennsylvania (*Turrell, Franklin Strategic Income Fund*); three have been brought as individual (rather than class) actions (*Franklin Strategic Income Fund, New York City Employees' Retirement Fund, LA County Employees Retirement Association*); but all fall squarely within the express terms of the Consolidation Order.

---

[2]  Some of the complaints included in the Consolidation Order were derivative actions: *Rossow v. Adelphia Communications Corp.*, C.A. #02-1831; *Srekal v. Adelphia Communications Corp.*, C.A. #02-2061; *Idries v. Merros*, C.A. #02-2100; *Moore v. Rigas*, C.A. #02-2136.  Because on June 25, 2002, Adelphia filed a petition in the United States Bankruptcy Court for the Southern District of New York for relief under Chapter 11 of the United States Bankruptcy Code, those derivative actions have been automatically stayed.  *See Pepper v. Litton*, 308 U.S. 295, 306-07 (1939) (holding that in the event of bankruptcy derivative actions are solely the province of the bankruptcy trustee).

Despite the Order's clear and unambiguous terms, the plaintiffs in several of the New Cases have taken the wholly untenable position that their actions have not been consolidated with *In re Adelphia*. *See, e.g.*, letter from Megan D. McIntyre to Lawrence H. Cooke II, dated July 31, 2002, and letter from Lawrence H. Cooke II to Megan D. McIntyre, dated July 31, 2002, attached hereto as Exhibit A. That has forced Deloitte to make the present motion to implement the Consolidation Order.

## II.    ARGUMENT

There can be no dispute that the New Cases and the cases listed in the Consolidation Order arise out of a common nucleus of fact: *i.e.*, claims by securities purchasers that involve allegations concerning co-borrowing arrangements, off-balance sheet debt, related parties transactions and Adelphia public disclosures pertaining thereto. On those issues, all the cases -- the new ones and the old ones -- will require substantially similar discovery and will be based upon substantially similar evidence. Because the Consolidation Order explicitly applies to every later filed case "that involve[s] claims on behalf of the purchasers of Adelphia securities which are related to the claims of Plaintiffs in these consolidated cases" and that "arises out of or is related to the same common nucleus of fact," the New Cases have clearly been consolidated with the ones pending as of April 30. No distinction is made in the Consolidation Order between individual actions and class actions or between stockholder and debtholder suits -- which is entirely as it should be because the same efficiencies strongly favor common treatment regardless of whether it is an individual or class that is suing or whether plaintiffs purchased debt securities, common stock or preferred stock.[3]

---

[3]  This point is highlighted by the fact that two of the New Cases, *Argent* and *Victor*, are brought on behalf of putative classes that include both debtholders and stockholders.

As a result, the position taken by some of the plaintiffs in the New Cases that the

Consolidation Order does not apply is without merit.

## III. CONCLUSION

For the foregoing reasons, this Court should grant Deloitte's motion and enter the

proposed Supplemental Order attached hereto as Exhibit B, which implements the Consolidation

Order with regard to each of the New Cases.

Date: August 2, 2002

_Joel E. Tasca_

Alan J. Davis
William A. Slaughter
Joel E. Tasca
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 864-8230/8114/8188
(215) 864-8999 (fax)

Of Counsel:

Max R. Shulman
Katherine B. Forrest
CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Attorneys for Deloitte & Touche LLP

Sep-09-02    04:16pm    From-Ballard Spahr                215 864 8999        T-260    P.008/020    F-745

# EXHIBIT A

07/31/02   10:22 FAX 302 622 7085          GRANT & EISENHOFER, PA                                    ⌀002



# GRANT & EISENHOFER, P.A.

Jay W. Eisenhofer
Stuart M. Grant
Megan D. McIntyre
Geoffrey C. Jarvis

Daniel T. DiPrimeo
Abbott A. Leban
Diane T. Zilka **

Kurt N. Schacht †
Of Counsel

Suite 2100
1201 North Market Street
Wilmington, Delaware 19801-2599
(302) 622-7000 • Fax (302) 622-7100
www.gelaw.com

Michael J. Barry ††
Christine S. Buman
Cynthia A. Calder
Richard M. Donaldson *
C. Kney Harper ****
Jeff Israel ***
John C. Kairis
Sidney S. Liebesman
Michelle N. Peetrich **
Dmitry Peipo †††
C. Curtis Stafencki

July 31, 2002

Direct Dial: (302) 622-7020

*    Admitted in NJ & PA only
**   Admitted in NY & PA only
***  Admitted in DC & NY only
†    Admitted in WI only
††   Admitted in PA, NJ & WA only
†††  Admitted in NY only

## BY FACSIMILE

Lawrence H. Cooke II, Esquire
Brobeck, Phleger & Harrison LLP
1633 Broadway
New York, NY 10019

Re:    Los Angeles County Employees Retirement Association v. John J. Rigas, et al.,
       E.D. Pa., Civil Action No. 02cv4086;
       Franklin Strategic Income Fund, et al. v. John J. Rigas, et al.,
       E.D. Pa., Civil Action No. 02cv4292.

Dear Mr. Cooke:

    We write on behalf of the plaintiffs in the above-captioned actions, in response to your letter of July 29th. The above actions are individual (non-class) actions filed by institutional investors who sustained losses on the purchase of certain bonds issued by Adelphia Communications Corporation ("Adelphia") and Arahova Communications Corporation ("Arahova"). We do not know whether counsel in the pending class actions purport to represent purchasers of these bonds, but to the extent they do, our clients have elected to opt out of those class actions and pursue their claims on an individual basis.

    We have reviewed the consolidation order and proposed scheduling order that were attached to your letter. We believe the consolidation order applies only to class actions, and thus do not consider our cases to be subject to either that order or the proposed scheduling order.

    With respect to service of process, we effectuated service upon Messrs. Coyle, Gelber and Kailbourne on July 1, 2002 in Civil Action No. 02cv4086, and on July 8, 2002 in Civil Action No. 02cv4292, by serving the summonses and complaints upon Adelphia's registered agent in Delaware. See Fed.R.Civ.P. 4(e)(2) (service may be effected "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process"). As directors of Adelphia, your clients have consented to the appointment

Sep-09-02   04:17pm   From-Ballard Spahr                    215 864 8999        T-260   P.010/020   F-745

07/31/02  10:22 FAX 302 622 7055        GRANT & EISENHOFER, PA                    ☒ 008

## GRANT & EISENHOFER, P.A.

Lawrence H. Cooke, II, Esquire
July 31, 2002
Page 2

of Adelphia's registered agent as their agent for purposes of service of process.  8 Del. C. §
3114.  Copies of the process server's affidavits are attached hereto for your reference.

Pursuant to Fed.R.Civ.P. 12(a)(1)(A), your clients' responses to both of our complaints
are past due.  We will give you an extension of time until this Friday, August 2, 2002, to file
those responses.  If we do not receive responses by Friday, we intend to move for default
judgments.

Very truly yours,

*Megan D. McIntyre*

Megan D. McIntyre

Enclosures

# Brobeck

ATTORNEYS AT LAW

July 31, 2002

VIA FACSIMILE

Brobeck, Phleger & Harrison LLP
1633 Broadway
New York, New York 10019
DIRECT 212.237.2535
FAX 212.586.7878
lcooke3@brobeck.com
www.brobeck.com

Megan D. McIntyre, Esquire
Grant & Eisenhofer, P.A.
1220 N. Market Street, Suite 500
Wilmington, DE 19801

Re:    In Re: Adelphia Communications Securities Litigation
       Master File No. 02CV1781

Dear Ms. McIntyre:

I write in response to your letter of this morning regarding the above-referenced litigation. While I appreciate your correspondence and the offer of an extension of time to respond in this matter, it is our position that no responsive pleading (either by answer or a motion to dismiss) is required at this time. We also disagree with your assertion that our clients, Messrs. Coyle, Gelber and Kailbourne, have been properly served in this matter should you dispute that the stipulated scheduling order applies to your clients' actions.

Your letter begins with the proposition that the actions brought by the Los Angeles County Employees Retirement Association and Franklin Strategic Income Fund, et al. (the "Grant & Eisenhofer Complaints") are not consolidated with the above referenced litigation. This is clearly incorrect. The terms of the Order Re: Consolidation relating to "Later Filed Cases" unquestionably include the actions brought by your clients when it consolidates "actions later instituted in, removed to, or transferred to this Court that involved claims on behalf of purchasers of Adelphia securities which are related to the claims of plaintiffs in these consolidated cases, . . . (b) This Order will apply to each such case that arises out of or is related to the same common nucleus of fact, subsequently instituted in, removed to, or transferred to this Court" (emphasis added). Without admitting any of the allegations of the Grant & Eisenhofer Complaints, those pleadings involve claims on behalf of purchasers of Adelphia securities and arise out of the same nucleus of facts as the purported class actions. Additionally, your suggestion that the consolidation is limited to class actions in inconsistent with and finds no support in the order which consolidates the entirety of this litigation, including class actions, opt outs and derivative actions. It is therefore clear that the Grant & Eisenhofer Complaints have been consolidated into the Master Adelphia Securities Litigation.

As for scheduling of deadlines for responsive pleadings, the Stipulation and [Proposed] Scheduling Order, which applies to all actions in the Master Litigation, provides that the defendants need not answer or otherwise respond (specifically including the making of a motion

NYDMNURCG#762.01

July 29, 2002
Page 2

to dismiss) to the various complaints that have been filed until after the filing of a consolidated complaint. This stipulated and proposed order is currently before the Court and in response to requests made weeks ago regarding its status, the parties were provided guidance by the Judge's deputy clerk to abide by the terms of the stipulation until the Court has an opportunity to rule on the proposed order. Further, following the resolution of the consolidation issue and without prejudice to your clients' decision whether to amend its complaint, join in the anticipated amended consolidated complaint or otherwise stand on the complaints that you have filed, we are willing to discuss a separate scheduling order relating to your clients.

Further, the stipulation and proposed order contains a provision wherein the summons shall be deemed properly served on our clients. While we believe all parts of the stipulation apply to the parties to the consolidated litigation, including your clients, you are advised that we otherwise assert that our clients have not been personally served with the Grant & Eisenhofer Complaints. The Delaware statutory provision you refer to in your letter[1] does not stand for the proposition that Adelphia's designated Delaware agent for the service of process is also so designated on behalf of these directors. The statute is limited in its grant of agency and its scope and your attempt to expand it beyond these limitations is unwarranted and unsupported.

Finally, your intention to move for default judgments against our clients in plainly frivolous under these circumstances. In the event that you continue to plan to move for a default judgment here, please advise as soon as possible so that we can seek a conference with the judge to resolve this issue.

Sincerely,

Lawrence H. Cooke II

cc:     **By Facsimile**
        Phil Korologus, Esq.
        Max R. Shulman, Esq.
        Glenn A. Mitchell, Esq.
        Deborah R. Gross, Esq.
        Francis S. Chlapowski, Esq.
        Robert L. Hickok, Esq.

---

[1] We believe you are referring to 10 Del C. §3114, not 8 Del C. §3114 as identified in your letter.

NYDLIBNLKCC447962.81

Sep-09-02    04:17pm    From-Ballard Spahr                              215 864 8999         T-260    P.013/020    F-745

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE:<br><br>ADELPHIA COMMUNICATIONS<br>SECURITIES LITIGATION<br><br><br>THIS DOCUMENT RELATES TO | MASTER FILE NO. 02-CV-1781<br><br><br><br><br>ALL ACTIONS |

## [PROPOSED] SUPPLEMENTAL ORDER

WHEREAS, this Court entered an Order on April 30, 2002, consolidating under the caption *In re Adelphia Securities Litigation* ("*In re Adelphia*"), 02-CV-1781, all actions that relate to Adelphia Communications Corporation ("Adelphia") and that arise out of a common set of facts;

WHEREAS, the above referenced Order specified that its terms apply to actions later instituted in, removed to or transferred to this Court that involved claims on behalf of the purchasers of Adelphia securities which are related to the claims of plaintiffs in the consolidated cases;

WHEREAS subsequent to April 30, 2002, actions were filed in the Eastern District of Pennsylvania arising out of or related to the same common nucleus of fact as the consolidated cases, which subsequently filed actions are listed below:

*D'Asaro v. Adelphia Communications Corp., C.A. #02-CV-2618;*
*Kiefer v. Adelphia Communications Corp., C.A. #02-CV-3186;*
*Turrell v. Adelphia Communications Corp., C.A. #-02-CV-3197;*
*Burstein v. Adelphia Communications Corp., C.A. #02-CV-3273;*
*Argent Classic Convertible Arbitrage Fund, L.P., C.A. #02-CV-3547;*
*Victor v. Adelphia Communications Corp., C.A. #02-CV-3659;*
*New York City Employees' Retirement Sys. v. Adelphia Communications Corp., C.A. #02-CV-3778;*
*LA County Employees Retirement Ass'n v. Rigas et al., C.A. #02-CV-4086;*
*Huhn v. Rigas, C.A. #02-CV-4334;*
*Franklin Strategic Income Fund v. Rigas, C.A. #02-CV-4292;*
*Feivel Gottlieb Restated Defined Benefit Trust v. Rigas, C.A. #02-CV-4486*

*VR Associates v. Adelphia Communications Corp.* C.A. #02-CV-2238;
*Weiner v. Rigas*, C.A. #02-CV-3211;
*Seebacher v. Adelphia Communications Corp.*, C.A. #02-CV-3264;
*Matovich v. Adelphia Communications Corp.*, C.A. #02-CV-3561;
*Burnside v. Rigas*, C.A. #02-CV-3769;
*Hyslip v. Rigas*, C.A. #02-CV-3768;

It is hereby ORDERED that:

1.  The above-referenced actions are consolidated for all purposes, including but not limited to discovery and all pretrial and trial proceedings, under the caption *In re Adelphia*, according to the procedures set forth in this Court's April 30, 2002 Order.

2.  The Clerk's Office is directed to consolidate for all purposes under the caption *In re Adelphia*, according to the procedures set forth in this Court's April 30, 2002 Order, all actions later instituted in, removed to, or transferred to this Court that involve claims on behalf of the purchasers of Adelphia debt or stock securities, whether individual or on behalf of a class and which are related to the claims of plaintiffs in these consolidated actions.

3.  Defendants' time to move against or answer any of the complaints consolidated under the caption *In re Adelphia* is hereby stayed until sixty (60) days following the filing of an Amended Consolidated Complaint in *In re Adelphia* or until such later time as the parties agree or the Court so orders.

4.  This Supplemental Order clarifies and implements the terms of this Court's April 30, 2002, Consolidation Order, which remains in effect until otherwise so ordered by this Court.

Dated: _____


_____

Hutton, J.

# CERTIFICATE OF SERVICE

I, Joel E. Tasca, hereby certify that on August 2, 2002, I served the foregoing

Motion of Deloitte & Touche LLP to Implement this Court's Consolidation Order dated April

30, 2002 upon the counsel on the attached service list via first class mail postage pre-paid.


Joel E. Tasca

# SERVICE LIST

Evan J. Smith, Esquire
BRODSKY & SMITH, LLC
11 Bala Avenue, Suite 39
Bala Cynwyd, PA 19004-3210

Steven E. Cauley, Esquire
CAULEY GELLER BOWMAN & COATES, LLP
Post Office Box 25438
Little Rock, AR 72221

Robert L. Harwood, Esquire
Matt Houston, Esquire
WECHSLER HARWOOD HALEBIAN & FEFFER, LLP
488 Madison Avenue, 8th Floor
New York, NY 10022

Deborah R. Gross, Esquire
Susan R. Gross, Esquire
LAW OFFICES OF BERNARD M. GROSS, P.C.
1515 Locust Street, Second Floor
Philadelphia, PA 19102

Steven G. Schulman, Esquire
Samuel H. Rudman, Esquire
MILBERG WEISS BERSHAD HYNES & LERACH, LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119

Nadeem Faruqi, Esquire
FARUQI & FARUQI
320 East 39th Street
New York, NY 10016

Robert S. Schachter, Esquire
Richard A. Speirs, Esquire
ZWERLING, SCHACHTER & ZWERLING
767 Third Avenue
New York, NY 10017

Jules Brody, Esquire
Patrick Slyne, Esquire
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017

Gregory M. Egleston, Esquire
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street
New York, NY 10016

Fred Isquith, Esquire
WOLF HALDENSTEIN ADLER FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016

Sep-09-02    04:17pm    From-Ballard Spahr                    215 864 8999          T-260   P.018/020   F-745

## SERVICE LIST

Jeffrey Block, Esquire
BERMAN DEVELARIO PEASE TABACCO BURT & PUCILO
One Liberty Square
Boston, MA  02109

Robert Roseman, Esquire
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA  19103

Scott Poynter, Esquire
CAULEY & GELLER
11311 Arcade Drive, Suite 201
Little Rock, AR 72212

COHEN MILSTEIN HAUSFELD & TOLL
999 Third Avenue, Suite 3600
Seattle, WA 98104

Steven J. Toll, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Steven J. Toll, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Patrick V. Dahlstrom, Esquire
Leigh R. Handelman, Esquire
POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP
One North LaSalle Street, Suite 2225
Chicago, IL  60602

Andrew Schatz, Esquire
SCHATZ & NOBEL, P.C.
330 Main Street
Hartford, CT  06106

Vincent Cappucci, Esquire
Robert Cappucci, Esquire
ENTWISTLE & CAPPUCCI, LLP
299 Park Avenue, 14th Floor
New York NY 10171

Josh Fuller, Esquire
FULLER & SUAREZ, P.A.
201 Alhambra Circle
Suntrust Plaza, Suite 602
Coral Gables, FL 33135

# SERVICE LIST

Lee Squitieri, Esquire
Stephen J. Fearon, Jr., Esquire
SQUITIERI & FEARON, LLP
521 Fifth Avenue, 26th Floor
New York, NY 10175

Kenneth A. Wexler, Esquire
KENNETH A. WEXLER & ASSOCIATES
One North LaSalle Street, Suite 2000
Chicago, IL 60602

James Bonner, Esquire
SHALOV STONE & BONNER
276 Fifth Avenue, Suite 704
New York, NY 10011

John G. Emerson, Jr., Esquire
THE EMERSON FIRM
Post Office Box 25336
Little Rock, AR 72221

Robert L. Hickok, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
Philadelphia, PA 19103

Philip C. Korologos, Esquire
BOIES, SCHILLER & FLEXNER, LLP
80 Business Park Drive, Suite 110
Armonk, NY 10504

Glenn A. Mitchell, Esquire
Andrew M. Beato, Esquire
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

Jeffrey W. Golan, Esquire
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103-7087

Darren J. Check, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Sherrie R. Savett, Esquire
Robin B. Switzenbaum, Esquire
BERGER & MONTAGUE, PC
1622 Locust Street
Philadelphia, PA 19103

## SERVICE LIST

Ira Neil Richards, Esquire
TRUJILLO, RODRIGUEZ & RICHARDS, LLC
226 W. Rittenhouse Square
The Penthouse
Philadelphia, PA 19103

Solomon B. Cera, Esquire
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105

Marc S. Henzel, Esquire
LAW OFFICES OF MARC S. HENZEL
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA 19004

Hon. Arlin M. Adams
SCHNADER HARRISON SEGAL & LEWIS, LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

Harvey Greenfield, Esquire
THE LAW FIRM OF HARVEY GREENFIELD
60 East 42nd Street, Suite 2001
New York, NY 10165

Marc A. Topaz, Esquire
Stuart Berman, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Dennis J. Johnson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Joesph C. Kohn
Kohn Swift & Graf PC
One S. Broad Street, Ste. 2100
Philadelphia, PA 19107

Geoffrey C. Garvis
Grant & Eisenhofer PA
1220 N. Market Street, Ste. 500
Wilmington, DE 19801

Lawrence M. Rolnick
Lowenstein, Sandler, Kohl, Fisher & Boylan
65 Livingston Avenue
Roseland, NJ 07068



Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                              :

ADELPHIA COMMUNICATIONS                             :     MASTER FILE NO. 02-1781
SECURITIES LITIGATION
                                                    :
_____            :

THIS DOCUMENT RELATES TO:                           :

LOS ANGELES COUNTY EMPLOYEES                        :     CASE NO. 02-CV-4086
RETIREMENT ASSOCIATION
                                                    :
              v.                                    :

JOHN J. RIGAS, et al.                               :

_____            :

FRANKLIN STRATEGIC INCOME FUND                      :     CASE NO. 02-CV-4292

              v.                                    :

JOHN J. RIGAS, et al.                               :

## ORDER

AND NOW, this _____ day of _____, 2002, upon consideration of the

Expedited Motion of Defendants Coyle, Kailbourne, Gelber, Metros and Deloitte & Touche LLP

for an Extension of Time to Respond to Certain Complaints, and any response thereto, it is

hereby ORDERED that the Motion is GRANTED, and that Defendants' time for responding to

the complaints in *Los Angeles County Employees Retirement Association v. Rigas, et al.*, No. 02-

CV-4086, and *Franklin Strategic Income Fund v. Rigas, et al.*, No. 02-CV-4292 is extended until

the Court decides the Motion of Deloitte & Touche LLP to Implement the Court's Consolidation

Order Dated April 30, 2002.

                                BY THE COURT:


                                _____
                                                              J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                          :

ADELPHIA COMMUNICATIONS                         :        MASTER FILE NO. 02-1781
SECURITIES LITIGATION
                                                :

_____        :

THIS DOCUMENT RELATES TO:                       :

LOS ANGELES COUNTY EMPLOYEES                    :        CASE NO. 02-CV-4086
RETIREMENT ASSOCIATION
                                                :
                    v.                          :
                                                :
JOHN J. RIGAS, et al.                           :

_____        :

FRANKLIN STRATEGIC INCOME FUND                  :        CASE NO. 02-CV-4292
                                                :
                    v.                          :
                                                :
JOHN J. RIGAS, et al.                           :

**EXPEDITED MOTION OF DEFENDANTS COYLE,
KAILBOURNE, GELBER, METROS AND DELOITTE &
TOUCHE LLP FOR AN EXTENSION OF TIME
TO RESPOND TO CERTAIN COMPLAINTS**

Defendants Deloitte & Touche LLP ("Deloitte"), Dennis P. Coyle, Erland E.

Kailbourne, Leslie L. Gelber, and Pete J. Metros (collectively "Moving Defendants"), by their

undersigned counsel, hereby move for an extension of time to respond to the complaints in the

two actions identified above. In support of this motion, Moving Defendants aver as follows:

    1.  On April 30, 2002, this Court entered an order consolidating a number of

actions filed as of that date under the caption *In re Adelphia Securities Litigation*, No. 02-CV-

1781 ("*in re Adelphia*"), on the ground that these actions "arise out of a common set of facts, and

should be consolidated into one single action." The consolidation order explicitly anticipated

that there would be "Later Filed Cases" that would be consolidated with the ones filed as of April 30, 2002.

2.      On August 2, 2002, Deloitte filed a Motion to Implement the consolidation order which – consistent with the express terms of the order – sought to perfect the consolidation of actions filed after April 30, 2002 (the "later-filed actions"). As part of the Motion to Implement, Deloitte requested that its time to move against or answer any of the complaints consolidated under *In re Adelphia* be stayed until sixty (60) days following the filing of an Amended Consolidated Complaint or until such time as the parties agreed or the Court so ordered. The other Moving Defendants have joined in Deloitte's Motion to Implement.

3.      Moving Defendants have reached various agreements with the plaintiffs in the later-filed actions for extensions of time to respond to the complaints in those actions at least until the Court rules on the Motion to Implement. However, the plaintiffs in two of the later-filed actions – *Los Angeles County Employees Retirement Association v. Rigas, et al.*, No. 02-CV-4086 (the "LACERA" action) and *Franklin Strategic Income Fund v. Rigas, et al.*, No. 02-CV-4292 (the "Franklin" action) – have refused to agree to any such extension. Instead, the *LACERA* and *Franklin* plaintiffs have threatened to seek default judgments if Moving Defendants do not respond to plaintiffs' complaints by the current September 3, 2002 response date in those actions.

4.      The refusal of the *LACERA* and *Franklin* plaintiffs to agree to extend Moving Defendants' response time until resolution of the Motion to Implement is entirely unreasonable. As noted above, the Motion to Implement requests that Moving Defendants' obligation to respond to the complaints in *all* of the consolidated actions be extended until the filing of an Amended Consolidated Complaint. This approach would put all of the cases on the

same track, as contemplated by the Court's consolidation order. The *LACERA* and *Franklin* plaintiffs fear the Motion to Implement will be granted, and are refusing to agree to Moving Defendants' reasonable request for an extension simply to get a "head-start" on the other plaintiffs. This would result in administrative chaos and a concomitant waste of time, effort and resources if multiple proceedings were permitted to proceed along separate procedural tracks. This Court should not countenance the tactics of the *LACERA* and *Franklin* plaintiffs.

       5.    Because a response to the complaints filed in the *LACERA* and *Franklin* actions is due on September 3, 2002, Moving Defendants respectfully request expedited treatment of this motion.

WHEREFORE, Moving Defendants respectfully requests that the Court grant them an extension of time to respond to the complaints in the *LACERA* and *Franklin* actions until the Motion to Implement is decided.

Alan J. Davis
William A. Slaughter
Joel E. Tasca
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8230/8114/8188
(215) 864-8999 (fax)
Counsel for Defendant
Deloitte & Touche LLP


Robert L. Hickok
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000
(215) 981-4750 (fax)
Counsel for Defendants
Dennis P. Coyle, Erland E. Kailbourne,
Leslie L. Gelber and Pete J.Metros

Dated: August 22, 2002

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2002, a true and correct copy of the foregoing Expedited Motion of Defendants Coyle, Kailbourne, Gelber, Metros and Deloitte & Touche LLP for an Extension of Time to Respond to Certain Complaints was served via facsimile and Federal Express upon:

> Stuart M. Grant, Esquire
> Megan D. McIntyre, Esquire
> GRANT & EISENHOFER PA
> 1201 N. Market Street, Ste. 2100
> Wilmington, DE 19801
> Facsimile (302) 622-7100

and via first class mail, postage prepaid upon:

Evan J. Smith, Esquire
BRODSKY & SMITH, LLC
11 Bala Avenue, Suite 39
Bala Cynwyd, PA 19004-3210

Steven E. Cauley, Esquire
Scott Poynter, Esquire
CAULEY GELLER BOWMAN & COATES, LLP
Post Office Box 25438
Little Rock, AR 72221

Robert I. Harwood, Esquire
Matt Houston, Esquire
WECHSLER HARWOOD HALEBIAN & FEFFER, LLP
488 Madison Avenue, 8th Floor
New York, NY 10022

Deborah R. Gross, Esquire
Susan R. Gross, Esquire
LAW OFFICES OF BERNARD M. GROSS, P.C.
1515 Locust Street, Second Floor
Philadelphia, PA 19102

Steven G. Schulman, Esquire
Samuel H. Rudman, Esquire
MILBERG WEISS BERSHAD HYNES & LERACH, LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119

Nadeem Faruqi, Esquire
FARUQI & FARUQI
320 East 39th Street
New York, NY 10016

Robert S. Schachter, Esquire
Richard A. Speirs, Esquire
ZWERLING, SCHACHTER & ZWERLING
767 Third Avenue
New York, NY 10017

Jules Brody, Esquire
Patrick Slyne, Esquire
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017

Gregory M. Egleston, Esquire
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street
New York, NY 10016

Fred Isquith, Esquire
WOLF HALDENSTEIN ADLER FREEMAN &
HERZ
270 Madison Avenue
New York, NY 10016

Jeffrey Block, Esquire
BERMAN DEVELARIO PEASE TABACCO BURT &
PUCILO
One Liberty Square
Boston, MA 02109

Robert Roseman, Esquire
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Howard G. Smith, Esquire
3070 Bristol Pike, Suite 112
Bensalem, PA 19020

Thomas E.L. Dewey, Esquire
DEWEY PEGNO & KRAMARSKY LLP
30 Broad Street
New York, NY 10004

Steven J. Toll, Esquire
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

Thomas S. Biemer, Esquire
DILWORTH PAXSON
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7595

Patrick V. Dahlstrom, Esquire
Leigh R. Handelman, Esquire
POMERANTZ HAUDEK BLOCK GROSSMAN &
GROSS LLP
One North LaSalle Street, Suite 2225
Chicago, IL 60602

Andrew Schatz, Esquire
SCHATZ & NOBEL, P.C.
330 Main Street
Hartford, CT 06106

Vincent Cappucci, Esquire
Robert Cappucci, Esquire
ENTWISTLE & CAPPUCCI, LLP
299 Park Avenue, 14th Floor
New York NY 10171

Josh Fuller, Esquire
FULLER & SUAREZ, P.A.
201 Alhambra Circle
Suntrust Plaza, Suite 602
Coral Gables, FL 33135

Lee Squitieri, Esquire
Stephen J. Fearon, Jr., Esquire
SQUITIERI & FEARON, LLP
521 Fifth Avenue, 26th Floor
New York, NY 10175

Kenneth A. Wexler, Esquire
KENNETH A. WEXLER & ASSOCIATES
One North LaSalle Street, Suite 2000
Chicago, IL 60602

James Bonner, Esquire
SHALOV STONE & BONNER
276 Fifth Avenue, Suite 704
New York, NY 10011

Charles J. Piven, Esquire
LAW OFFICES OF CHARLES J. PIVEN
World Trade Center (Suite 2525)
Baltimore, MD 21202

Glenn A. Mitchell, Esquire
Andrew M. Beato, Esquire
STEIN MITCHELL & MEZINES
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

Darren J. Check, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Ira Neil Richards, Esquire
TRUJILLO, RODRIGUEZ & RICHARDS, LLC
226 W. Rittenhouse Square
The Penthouse
Philadelphia, PA 19103

Marc S. Henzel, Esquire
LAW OFFICES OF MARC S. HENZEL
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA 19004

Harvey Greenfield, Esquire
THE LAW FIRM OF HARVEY GREENFIELD
60 East 42nd Street, Suite 2001
New York, NY 10165

Dennis J. Johnson, Esquire
JOHNSON & PERKINSON
1690 Williston Road
South Burlington, VT 05403

John G. Emerson, Jr., Esquire
THE EMERSON FIRM
Post Office Box 25336
Little Rock, AR 72221

Philip C. Korologos, Esquire
BOIES, SCHILLER & FLEXNER, LLP
80 Business Park Drive, Suite 110
Armonk, NY 10504

Jeffrey W. Golan, Esquire
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103-7087

Sherrie R. Savett, Esquire
Robin B. Switzenbaum, Esquire
BERGER & MONTAGUE, PC
1622 Locust Street
Philadelphia, PA 19103

Solomon B. Cera, Esquire
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105

Hon. Arlin M. Adams
SCHNADER HARRISON SEGAL & LEWIS,
LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

Marc A. Topaz, Esquire
Stuart Berman, Esquire
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Joseph C. Kohn, Esquire
KOHN SWIFT & GRAF PC
One S. Broad Street, Ste. 2100
Philadelphia, PA 19107

Gregory A. Markel, Esquire
Lawrence G. Cooke, II, Esquire
BROBECK, PHELGER & HARRISON, LLP
1633 Broadway, 47th Floor
New York, NY 10019

Lawrence M. Rolnick, Esquire
LOWENSTEIN, SANDLER, KOHL, FISHER
&  BOYLAN
65 Livingston Avenue
Roseland, NJ 07068

Nicholas E. Chimicles, Esquire
Denise Davis Schwartzman, Esquire
CHIMICLES & TIKELLIS, LLP
361 West Lancaster Ave.
Haverford, PA 19041

Jonathan P. Bach, Esquire
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050

Scott R. Shepherd, Esquire
SHEPHERD & FINKELMAN LLC
117 Gayley Street, Suite 200
Media, PA 19063

William M. Connolly, Esquire
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Peter Lennon, Esquire
KAPLAN, FOX & KILSHEIMER LLP
2200 West Chester Pike
Broomall, PA 19008

Mark C. Gardy, Esquire
ABBEY GARDY LLP
212 East 39th Street
New York, NY 10016

Brian M. Felgoise, Esquire
LAW OFFICE OF BRIAN M. FELGOISE
230 South Broad Street
Suite 404
Philadelphia, PA 19102

Douglas M. McGeige, Esquire
Max Berger, Esquire
BERNSTEIN LITOWITZ BERGER &
GROSSMAN
1285 Avenue of the Americas
New York, NY 10019

Martin Chitwood, Esquire
CHITWOOD & HARLEY
2900 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309

Jonathan M. Plasse, Esquire
GOODKIND LABATON RUDOFF &
SUCHAROW LLP
100 Park Avenue
New York, NY 10017

Michael I. Fistel, Jr., Esquire
HOLZER & HOLZER
6135 Barfield Road, Suite 102
Atlanta, GA 30328

Mark A. Strauss, Esquire
KIRBY MCINERNEY & SQUIRE LLP
830 Third Avenue
New York, NY 10022

Roger LeBlanc, Esquire
LEBLANC & WADELL, LLP
5353 Essen Lane, Suite 420
Baton Rouge, LA 70809

Charles Barton, Esquire
MCGINNIS LOCHRIDGE & KILGORE, LLP
919 Congress Avenue
Austin, TX 78701

Bruce G. Murphy, Esquire
LAW OFFICE OF BRUCE G. MURPHY
265 Llwyds Lane
Vero Beach, FL 32963


_____
Joel E. Tasca

Exhibit D

(6)

HH

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

02 AUG 22 PM 6: 57

FILED. AUG 2 7 2002

IN RE:                                              :

ADELPHIA COMMUNICATIONS                             :    MASTER FILE NO. 02-1781
SECURITIES LITIGATION

_____                 :

THIS DOCUMENT RELATES TO:                           :

LOS ANGELES COUNTY EMPLOYEES                        :    CASE NO. 02-CV-4086
RETIREMENT ASSOCIATION

v.                                                  :

JOHN J. RIGAS, et al.                               :

_____                 :

FRANKLIN STRATEGIC INCOME FUND                     :    CASE NO. 02-CV-4292

v.                                                  :

JOHN J. RIGAS, et al.                               :

## ORDER

AND NOW, this 27th day of _August_, 2002, upon consideration of the

Expedited Motion of Defendants Coyle, Kailbourne, Gelber, Metros and Deloitte & Touche LLP

for an Extension of Time to Respond to Certain Complaints, and any response thereto, it is

hereby ORDERED that the Motion is GRANTED, and that Defendants' time for responding to

the complaints in _Los Angeles County Employees Retirement Association v. Rigas, et al._, No. 02-

CV-4086, and _Franklin Strategic Income Fund v. Rigas, et al._, No. 02-CV-4292 is extended until

the Court decides the Motion of Deloitte & Touche LLP to Implement the Court's Consolidation

Order Dated April 30, 2002.

ENTERED                          BY THE COURT:

AUG 2 8 2002

CLERK OF COURT                   _____ J.



Exhibit E



PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES

**COZEN**
**O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC
WEST CONSHOHOCKEN
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

AARON KRAUSS
DIRECT DIAL (215) 665-4181
DIRECT FAX (215) 665-2013
E-MAIL  AKRAUSS@COZEN.COM

September 6, 2002

**VIA FACSIMILE**
Megan D. McIntyre, Esquire
Grant & Eisenhofer P.A.
1201 N. Market Street, Suite 2100
Wilmington, DE   19801

Re:    <u>Los Angeles County Employees Retirement Association vs. John J.</u>
<u>Rigas</u>, E.D. Pa. No. 02-4086
<u>Franklin Strategic Income Fund vs. John J. Rigas</u>, E.D. Pa. No. 02-4292
E.D. Pa. Master File No. 02-CV-1781
Our File No. 128233

Dear Megan:

As we discussed, I have enclosed a proposed stipulation which we believe is appropriate in light of Judge Hutton's August 27, 2002 order extending the time for Deloitte & Touche, and directors Coyle, Kailbourne, Gelber and Metros, to respond to the complaints you filed in this matter pending the determination of Deloitte & Touche's motion to Implement the Court's April 30, 2002 Consolidation Order. As I told you over the phone, Goodkind Labaton Rudoff & Sucharow LLP has agreed to this stipulation in their case.

I understand that you will give me a call on Monday or Tuesday to discuss this matter, and whether you are willing to add your signature to this stipulation.

Sincerely,

COZEN O'CONNOR

BY:    AARON KRAUSS

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE ADELPHIA COMMUNICATIONS SECURITIES LITIGATION | : : : | Master File No. 02CV1781 |
| | : | **CLASS ACTION** |
| THIS DOCUMENT RELATES TO: Los Angeles County Employees Retirement Association vs. John J. Rigas | : : : : | E.D. Pa. No. 02-4086 |
| Franklin Strategic Income Fund vs. John J. Rigas | : : : | E.D. Pa. No. 02-4292 |

## STIPULATION

It is hereby stipulated and agreed that the time for Peter Venetis to answer, move, or otherwise plead with respect to the complaint in this matter is extended as follows:

(a) If the Court denies Deloitte & Touche's Motion to Implement the Court's April 30, 2002 Consolidation Order, Peter Venetis will answer, move, or otherwise plead with respect to the Los Angeles County Employees Retirement Association and Franklin Strategic Income Fund complaints thirty days after the denial of the motion.

(b) If the Court grants Deloitte & Touche's Motion to Implement the Court's April 30, 2002 Consolidation Order, Peter Venetis' obligation to answer, move, or otherwise plead with respect to the Los Angeles County Employees Retirement Association and Franklin Strategic Income Fund complaints shall be governed by the consolidation order and the Court's

subsequent scheduling orders.

**SO STIPULATED AND AGREED:**


_____        _____
Patrick J. O'Connor                     Stuart M. Grant
David M. Doret                          Jay W. Eisenhofer
Aaron Krauss                            Geoffrey C. Jarvis
COZEN O'CONNOR                          Megan D. McIntyre
1900 Market Street                      GRANT & EISENHOFER P.A.
Philadelphia, PA  19103                 1201 N. Market Street, Suite 2100
(215) 665-2000                          Wilmington, DE   19801
                                        (302) 622-7000


Attorneys for Defendant Peter Venetis   Attorneys for Los Angeles County Employees
                                        Retirement Association and Franklin Strategic
                                        Income Fund

Dated:  September 6, 2002               Dated:


**APPROVED AND SO ORDERED:**


_____
Herbert J. Hutton, J.

Exhibit F

PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES



COZEN
O'CONNOR
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC
WEST CONSHOHOCKEN
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET     PHILADELPHIA, PA 19103-3508     215.665.2000     800.523.2900     215.665 2013 FAX     www.cozen.com

AARON KRAUSS
DIRECT DIAL (215) 665-4161
DIRECT FAX (215) 665-2013
E-MAIL: AKRAUSS@COZEN.COM

September 6, 2002

**VIA FACSIMILE**
Megan D. McIntyre, Esquire
Grant & Eisenhofer P.A.
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

Re:     <u>Los Angeles County Employees Retirement Association vs. John J.</u>
<u>Rigas</u>, E.D. Pa. No. 02-4086
<u>Franklin Strategic Income Fund vs. John J. Rigas</u>, E.D. Pa. No. 02-4292
E.D. Pa. Master File No. 02-CV-1781
Our File No. 128233

Dear Megan:

      This confirms that, despite Judge Hutton's August 27, 2002 order extending the time for Deloitte & Touche, and directors Coyle, Kailbourne, Gelber and Metros, to respond to the complaints you filed in this matter pending the determination of Deloitte & Touche's motion to Implement the Court's April 30, 2002 Consolidation Order, you are unwilling to enter into a stipulation extending Peter Venetis' time to respond to the complaints you have filed until Deloitte's motion is resolved. On the contrary, you informed me that your clients are not willing to grant an extension beyond September 24, 2002, and that I will have to file a motion if I want Judge Hutton's August 27, 2002 order to apply to Peter Venetis.

      Sincerely,

      COZEN O'CONNOR

      BY:   AARON KRAUSS

**EXHIBIT F**

**AS FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ON July 20, 2001**
**REGISTRATION NO. 333-64224**

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

**AMENDMENT NO. 1**
**TO**

# FORM S-3
**REGISTRATION STATEMENT**
**UNDER**
**THE SECURITIES ACT OF 1933**

# ADELPHIA COMMUNICATIONS CORPORATION

(Exact name of registrant as specified in its charter)

| DELAWARE | 4841 | 23-2417713 |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification No.) |

**ONE NORTH MAIN STREET**
**COUDERSPORT, PENNSYLVANIA 16915**
(814) 274-9830
(Address, including zip code, and telephone number, including area code, of
registrant's principal executive offices)

**COLIN H. HIGGIN, ESQUIRE**
**DEPUTY GENERAL COUNSEL**
**ADELPHIA COMMUNICATIONS CORPORATION**
**ONE NORTH MAIN STREET**
**COUDERSPORT, PENNSYLVANIA 16915**
(814) 274-9830
(Name, address, including zip code, and telephone number, including
area code, of agent for service)

**PLEASE ADDRESS A COPY OF ALL COMMUNICATIONS TO:**

**CARL E. ROTHENBERGER, JR., ESQUIRE**
**BUCHANAN INGERSOLL PROFESSIONAL CORPORATION**
**21ST FLOOR, 301 GRANT STREET**
**PITTSBURGH, PENNSYLVANIA 15219**
(412) 562-8826

**APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO THE PUBLIC: From time to**
time after the effective date of this Registration Statement.

If the only securities being registered on this Form are being offered pursuant to dividend or interest reinvestment plans, please check
the following box. [ ]

If any of the securities being registered on this Form are being offered on a delayed or continuous basis pursuant to Rule 415 under the
Securities Act of 1933, other than securities offered only in connection with dividend or interest reinvestment plans, check the

following box. [X]

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [_]

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [_]

If delivery of the prospectus is expected to be made pursuant to Rule 434, please check the following box. [_]

THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(A) OF THE SECURITIES ACT OR UNTIL THE REGISTRATION STATEMENT SHALL BECOME EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(A), MAY DETERMINE.

This Registration Statement has been filed pursuant to Rule 429 and relates to a previously filed registration statement on Form S-3, No. 333-78027.

## Prospectus

## ADELPHIA COMMUNICATIONS CORPORATION

By this prospectus, we may offer from time to time up to $5,000,000,000 of:

. debentures, notes and other debt securities in one or more series which may be senior debt securities or subordinated debt securities,

. shares of preferred stock issuable in series designated by the board of directors of Adelphia,

. debt warrants and equity warrants,

. shares of Class A common stock,

. shares of Class B common stock,

. depositary shares, and

. guarantees of securities issued by our subsidiaries.

When we offer securities, we will provide you with a prospectus supplement describing the terms of the specific issue of securities, including the offering price of the securities. You should read this prospectus and the accompanying prospectus supplement carefully before you invest.

Our Class A common stock is quoted on the Nasdaq National Market. Our Class A common stock's ticker symbol is "ADLAC." On July 18, 2001, the closing sale price on the Nasdaq National Market of a single share of Class A common stock was $40.37.

Our common stock includes Class A and Class B common stock. The rights of holders of the Class A common stock and Class B common stock differ with respect to certain aspects of dividends, liquidations and voting. The Class A common stock has preferential rights with respect to cash dividends and distributions upon the liquidation of Adelphia. Holders of Class B common stock are entitled to greater voting rights than the holders of Class A common stock. However, the holders of Class A common stock, voting as a separate class, are entitled to elect one of Adelphia's directors.

You should carefully review "Risk Factors" beginning on page 3 for a discussion of things you should consider when investing in securities of Adelphia.

Neither the SEC nor any state securities commission has approved or disapproved of these securities or passed upon the adequacy or accuracy of this prospectus. Any representation to the contrary is a criminal offense.

The date of this prospectus is July 20, 2001

EDGARpro    © 2002.  EDGAR Online, Inc.

The information in this prospectus is not complete and may be changed. We may not sell these securities until the registration statement filed with the SEC is effective. This prospectus is not an offer to sell these securities and it is not soliciting an offer to buy these securities in any state where the offer or sale is prohibited.

## TABLE OF CONTENTS

```
ADELPHIA...................................................................    2
RISK FACTORS...............................................................    3
RATIO OF EARNINGS TO COMBINED FIXED CHARGES AND PREFERRED STOCK DIVIDENDS..   12
DILUTION...................................................................   13
USE OF PROCEEDS............................................................   13
DESCRIPTION OF DEBT SECURITIES.............................................   14
DESCRIPTION OF CAPITAL STOCK...............................................   25
DESCRIPTION OF WARRANTS....................................................   29
DESCRIPTION OF DEPOSITARY SHARES...........................................   34
DESCRIPTION OF GUARANTEES..................................................   37
PLAN OF DISTRIBUTION.......................................................   38
LEGAL MATTERS..............................................................   42
EXPERTS....................................................................   42
```

This summary may not contain all the information that may be important to you. You should read the entire prospectus and those documents incorporated by reference into this document, including the risk factors, financial data and related notes, before making an investment decision. When we use the term Adelphia Parent Company in this prospectus, we are referring only to the parent holding company entity, Adelphia Communications Corporation, and not to its subsidiaries.

## ADELPHIA

Adelphia is a leader in the telecommunications industry with cable television and local telephone operations. We are the sixth largest cable television operator in the United States. Through our subsidiary Adelphia Business Solutions, Inc., we own and operate a leading national provider of facilities-based integrated communications services. John J. Rigas, the Chairman, President, Chief Executive Officer and founder of Adelphia, has owned and operated cable television systems since 1952.

Our operations consist of providing telecommunications services primarily over our networks, which are commonly referred to as broadband networks because they can transmit large quantities of voice, video and data by way of digital or analog signals. We owned cable television systems with broadband networks that passed in front of approximately 9.5 million homes and served approximately 5.8 million basic subscribers as of March 31, 2001, after giving effect to pending cable system acquisitions. Our core cable systems are organized into six clusters: Los Angeles, PONY (Western Pennsylvania, Ohio and New York), New England, Florida, Virginia and Colorado Springs. Approximately 45% of our basic subscribers are located in our Los Angeles and PONY clusters and approximately 82% of our basic subscribers are located in our six core clusters.

Adelphia Business Solutions provides its customers with alternatives to the incumbent local telephone company for local and long distance voice services, high-speed data and Internet services. Adelphia Business Solutions' telephone operations are referred to as being facilities based, which means it generally owns or has long-term leases for the local telecommunications networks and facilities it uses to deliver these services. Adelphia Business Solutions served 75 markets and had 309 central office collocations as of March 31, 2001. Adelphia Business Solutions' Class A common stock is quoted on the Nasdaq National Market under the symbol "ABIZ."

Our executive offices are located at One North Main Street, Coudersport, Pennsylvania 16915, and our telephone number is (814) 274-9830.

**Recent Developments**

Please see the applicable prospectus supplement and Adelphia's recent public filings for recent developments.

2

## RISK FACTORS

Before you invest in our securities, you should be aware that there are various risks associated with investing in Adelphia, including those described below. You should consider carefully these risk factors together with all of the other information included in or incorporated by reference in this prospectus before you decide to purchase our securities.

## High Level Of Indebtedness

As of March 31, 2001, we owed approximately $13.7 billion. Our high level of indebtedness can have important adverse consequences to us and to you.

Adelphia has a substantial amount of debt. We borrowed this money to purchase and to expand our cable systems and other operations and, to a lesser extent, for investments and loans to our subsidiaries and other affiliates. At March 31, 2001, our indebtedness totaled approximately $13.7 billion. This included approximately:

- . $4.3 billion of Adelphia Parent Company public debt;

- . $852.1 million of public debt owed by our subsidiary, Adelphia Business Solutions;

- . $1.8 billion of public debt owed by our subsidiary, Arahova Communications, Inc.;

- . $531.2 million of public debt owed by our subsidiary, FrontierVisionm Partners, L.P.;

- . $202.9 million of public debt owed by our subsidiary, Olympus Communications, L.P.; and

- . $6.0 billion of other debt owed by our subsidiaries to banks, other financial institutions and other persons.

Debt service consumes a substantial portion of the cash we generate. This could affect our ability to invest in our business in the future as well as to react to changes in our industry or economic downturns.

Our high level of indebtedness can have important adverse consequences to us and to you. It requires that we spend a substantial portion of the cash we get from our business to repay the principal and interest on these debts. Otherwise, we could use these funds for general corporate purposes or for capital improvements. Our ability to obtain new loans for working capital, capital expenditures, acquisitions or capital improvements may be limited by our current level of debt. In addition, having such a high level of debt could limit our ability to react to changes in our industry and to economic conditions generally. In addition to our debt, at March 31, 2001, the Adelphia Parent Company had approximately $148.6 million and Adelphia Business Solutions had approximately $306.9 million of redeemable exchangeable preferred stock which contain payment obligations that are similar to Adelphia's debt obligations.

Approximately 44% of our debt outstanding at March 31, 2001 matures on or before December 31, 2005 and all of it matures prior to December 31, 2017.

Our debt comes due at various times through the year 2017, including an aggregate of approximately $5.9 billion as of March 31, 2001, which matures on or before December 31, 2005.

Our Business Requires Substantial Additional Financing And If We Do Not Obtain That Financing We May Not Be Able To Upgrade Our Plant, Offer Services, Make Payments When Due Or Refinance Existing Debt

Our business requires substantial additional financing on a continuing basis for capital expenditures and other purposes including:

- . constructing and upgrading our plant and networks--some of these upgrades we must make to comply with the requirements of local cable franchise authorities;
- . offering new services;

3

EDGARpro    © 2002.  EDGAR Online, Inc.

. scheduled principal and interest payments;
. refinancing existing debt; and
. acquisitions and investments.

There can be no guarantee that we will be able to issue additional debt or sell stock or other additional equity on satisfactory terms, or at all, to meet our future financing needs.

**We Have Had Large Losses And We Expect This To Continue**

Our Total Convertible Preferred Stock, Common Stock and Other Stockholders' Equity at March 31, 2001 was approximately $5.2 billion.

Our continuing net losses, which are mainly due to our high levels of depreciation and amortization and interest expense, may create deficiencies in or reduce our Total Convertible Preferred Stock, Common Stock and Other Stockholders' Equity. Our recent net (losses) income applicable to our common stockholders were approximately as follows for the periods specified:

. nine months ended December 31, 1998--$(114.5) million;
. fiscal year ended December 31, 1999--$(282.7) million;
. fiscal year ended December 31, 2000--$(602.5) million; and
. three months ended March 31, 2001--$137.1 million.

We expect to continue to incur large net losses for the next several years. Net income for the three months ended March 31, 2001 includes a substantial non-cash gain on a cable systems swap.

**Historically our earnings have been insufficient to pay for our fixed charges and preferred stock dividends.**

For the nine months ended December 31, 1998 and the years ended December 31, 1999 and 2000, our earnings from continuing operations could not pay for our combined fixed charges and preferred stock dividends as set forth in the table below, although combined fixed charges and preferred stock dividends included substantial non-cash charges for depreciation, amortization and non-cash interest expense on some of our debts and the non-cash expense of Adelphia Business Solutions' preferred stock dividends:

|  | Earnings Deficiency | Non-Cash Charges |
|---|---|---|
|  | (in thousands) | |
| . nine months ended December 31, 1998 | $ 95,595 | $ 186,173 |
| . fiscal year ended December 31, 1999 | $281,975 | $ 455,266 |
| . fiscal year ended December 31, 2000 | $916,103 | $1,053,900 |

For the three months ended March 31, 2001, our ratio of earnings to combined fixed charges and preferred stock dividends was 1.68 to 1.00, however our earnings included a substantial non-cash gain on a cable systems swap.

**If we cannot refinance our debt or obtain new loans, we would likely have to consider various financing options. We cannot guarantee that any options available to us would enable us to repay our debt in full.**

Historically, the cash we generate from our operating activities and borrowings has been sufficient to meet our requirements for debt service, working capital, capital expenditures and investments in and advances to our affiliates, and we have depended on additional borrowings to meet our liquidity requirements. Although in the past we have been able both to refinance our debt and to obtain new debt, there can be no guarantee that we will be able to continue to do so in the future or that the cost to us or the other terms which would affect us would be as favorable to us as current loans and credit agreements. Under these circumstances, we may need to consider various financing options, such as the sale of additional equity or some of our assets to meet the principal and interest payments we owe, negotiate with our lenders to restructure existing loans or explore other options available under applicable laws including those under reorganization or bankruptcy laws. We believe that our business will continue to generate cash and that we will be able to obtain new loans to meet our cash needs. However, the covenants in the indentures and credit agreements for our current debt provide some limitations on our

EDGARpro    © 2002, EDGAR Online, Inc.

ability to borrow more money.

## Competition

The telecommunications services provided by Adelphia are subject to strong competition and potential competition from various sources.

Our cable television business is subject to strong competition from several sources which could adversely affect revenue or revenue growth.

Our cable television systems compete with other means of distributing video to home televisions such as Direct Broadcast Satellite systems, commonly known as DBS systems. Some local telephone companies have expressed an interest in entering the video-to-home business.

In addition, because our systems are operated under non-exclusive franchises, other applicants may obtain franchises in our franchise areas and overbuild our systems. For example, some regional Bell telephone operating companies and local telephone companies have facilities which are capable of delivering cable television service and could seek competitive franchises. We cannot predict either the extent to which competition will continue to materialize or, if such competition materializes, the extent of its effect on our cable television business.

Our cable television systems also face competition from other communications and entertainment media, including conventional off-air television broadcasting services, newspapers, movie theaters, live sporting events and home video products. We cannot predict the extent to which competition may affect us.

Our cable modem and dial up Internet access business is currently subject to strong competition and there exists the potential for future competition from a number of sources. With respect to high-speed cable modem service, telephone companies are beginning to implement various digital subscriber line services, xDSL, that allow high-speed internet access services to be offered over telephone lines. DBS companies offer high-speed Internet access over their satellite facilities and other terrestrial based wireless operators, or MultiChannel Multipoint Distribution Systems, commonly known as MMDS, are beginning to introduce high-speed access as well. In addition, there are now a number of legislative, judicial and regulatory efforts seeking to mandate cable television operators to provide open access to their facilities to competitors that want to offer Internet access over cable services. With respect to dial up Internet access services, there are numerous competitive Internet Service Providers commonly known as ISPs, in virtually every franchise area. The local telephone exchange company typically offers ISP services, as do a number of other nationally marketed ISPs such as America Online, Compuserve and AT&T Worldnet. Adelphia cannot predict the extent to which competition will continue to materialize or, if such competition materializes, the extent of its effect on our Internet access business.

We depend on third-party equipment and software suppliers. If we are unable to procure the necessary equipment, our ability to offer our services could be impaired. This could adversely affect our growth, financial condition and results of operations.

We depend on vendors to supply our cable and telephone related electronic equipment, such as the set-top converter boxes for analog and digital cable services. This equipment is available from a limited number of suppliers. For example, we typically purchase set-top converter boxes under purchase orders placed from time to time and do not carry significant inventories of set-top converter boxes. If demand for set-top converter boxes exceeds our supply or inventories and we are unable to obtain required set-top converter boxes on a timely basis and at an acceptable cost, our ability to recognize additional revenue from these services could be delayed or impaired. In addition, if there are no suppliers who are able to provide converter devices that comply with evolving Internet and telecommunications standards or that are compatible with other products or components we use, our business may be materially impaired.

Adelphia Business Solutions' operations are also subject to risk because Adelphia Business Solutions competes principally with established local telephone carriers that have

In each of the markets served by Adelphia Business Solutions' networks, the competitive local exchange carrier services offered by Adelphia Business Solutions compete principally with the services offered by the incumbent local telephone exchange carrier company serving that area. Local telephone companies have long-standing relationships with their customers, have the potential to subsidize competitive services from monopoly

5

EDGAR EDGARpro    © 2002.  EDGAR Online, Inc.

long-standing utility relationships with their customers and pricing flexibility for local telephone services.

service revenues, and benefit from favorable state and federal regulations. The mergers of Bell Atlantic and NYNEX, SBC and Ameritech, and Bell Atlantic and GTE, which created Verizon Communications, created very large companies whose combined territories cover a substantial portion of Adelphia Business Solutions' markets. Other combinations have occurred in the industry, such as the mergers between Qwest and US West, and AOL and Time Warner, which may have a material adverse effect on Adelphia Business Solutions' ability to compete and terminate and originate calls over Adelphia Business Solutions' networks.

We believe that local telephone companies will gain increased pricing flexibility from regulators as competition increases. Adelphia Business Solutions' operating results and cash flow could be materially and adversely affected by actions by regulators, including permitting the incumbent local telephone companies in Adelphia Business Solutions' markets to do the following:

.  lower their rates substantially;
.  engage in aggressive volume and term discount pricing practices for their customers; or
.  charge excessive fees or otherwise impose on Adelphia Business Solutions excessive obstacles for interconnection to the incumbent local telephone company's networks.

If the regional Bell telephone operating companies obtain regulatory approval to offer long distance service in competition with Adelphia Business Solutions' significant customers, some of these major customers could lose market share.

The regional Bell telephone operating companies can now obtain regulatory approval to offer long distance services if they comply with the local market opening requirements of the federal Telecommunications Act of 1996. To date, the FCC has authorized Verizon to provide long distance services in New York and Massachusetts, and SBC to provide these services in Texas, Kansas, and Oklahoma. The FCC has rejected several other applications, but we expect that numerous additional requests will be filed by Bell operating companies over the next few years. Approvals of such requests could result in decreased market share for the major long distance carriers which are among Adelphia Business Solutions' significant customers. This could have a material adverse effect on Adelphia Business Solutions.

In addition, once they obtain long distance authority, the regional Bell telephone operating companies could be less cooperative in providing access to their networks. This lack of cooperation, or labor strikes or work stoppages similar to the August 2000 Verizon strike, could impair or delay the ability of Adelphia Business Solutions to connect its networks with those of the incumbent local exchange carriers.

The regional Bell telephone companies continue to seek other regulatory approvals that could significantly enhance their competitive position against Adelphia Business Solutions.

Some of the regional Bell operating companies have also filed petitions with the FCC requesting waivers of other obligations under the federal Telecommunications Act of 1996. These involve services Adelphia Business Solutions also provides such as high speed data, long distance, and services to ISPs. If the FCC grants the regional Bell operating companies' petitions, this could have a material adverse effect on Adelphia Business Solutions.

Potential competitors to Adelphia Business Solutions' telecommunications services include the regional Bell telephone companies, AT&T, WorldCom and Sprint, electric utilities and other companies that have advantages over Adelphia Business Solutions.

Potential competitors of Adelphia Business Solutions include other competitive local exchange carriers, incumbent local telephone companies which are not subject to regional Bell operating companies' restrictions on offering long distance service, AT&T, WorldCom, Sprint, Global Crossing and other long distance carriers, cable television companies, electric utilities, microwave carriers, wireless telecommunications providers, and private networks built by large end users. Both AT&T and WorldCom offer local telephone services in some areas of the country and are expanding their networks. AT&T also merged with both Tele-Communications, Inc. and MediaOne Group, Inc., thereby becoming the largest operator of cable television systems in the country. Although we have good relationships with the long distance carriers, they could build their own facilities, purchase other carriers or their facilities, or resell the services of other carriers rather than use Adelphia Business Solutions' services when entering the market for local exchange services.

6

EDGAR EDGARpro    © 2002.  EDGAR Online, Inc.

Many of Adelphia Business Solutions' current and potential competitors, particularly incumbent local telephone companies, have financial, personnel and other resources substantially greater than those of Adelphia Business Solutions, as well as other competitive advantages over Adelphia Business Solutions.

**We are subject To Extensive Regulation**

Our cable television and telecommunications businesses are heavily regulated as to rates we can charge and other matters. This regulation could limit our ability to increase rates, cause us to decrease then current rates or require us to refund previously collected fees.

The cable television industry and the provision of local telephone exchange services are subject to extensive regulation at the federal, state and local levels, and many aspects of such regulation are currently the subject of judicial proceedings and administrative or legislative proposals. In particular, FCC regulations limit our ability to set and increase rates for our basic cable television service package and for the provision of cable television-related equipment. The law permits certified local franchising authorities to order refunds of rates paid in the previous 12-month period determined to be in excess of the permitted reasonable rates. It is possible that rate reductions or refunds of previously collected fees may be required in the future. In addition, the FCC has recently adopted rules which will require cable operators to carry the digital signals of broadcast television stations. However, the FCC has tentatively decided that cable operators should not be required to carry both the analog and digital services of broadcast television stations while broadcasters are transitioning from analog to digital transmission. Carrying both the analog and digital services of broadcast television stations would consume additional cable capacity. As a result, a requirement to carry both analog and digital services of broadcast television stations could require the removal of popular programming services with materially adverse results for cable operators.

We must comply with rules of the local franchising authorities to retain and renew our cable franchises, among other matters. There can be no assurances that the franchising authorities will not impose new and more restrictive requirements as a condition to franchise renewal.

Similarly, Adelphia Business Solutions is subject to state and local regulations and in some cases must obtain appropriate state certifications and/or local franchises to construct facilities and offer services. There can be no assurance that Adelphia Business Solutions' state and local regulators will not impose new and more restrictive requirements as a condition to renew any required certifications and franchises.

On February 26, 1999, the FCC released a Declaratory Ruling and Notice of Proposed Rulemaking which held that calls to ISPs within a local calling area are "non-local" because such calls tend to continue beyond state borders, meaning that the reciprocal compensation provisions of the federal Telecommunications Act of 1996 did not apply to calls to ISPs. However, the FCC left open the possibility that state commissions could impose reciprocal compensation obligations on local exchange carriers that send calls to ISPs. Imposition of reciprocal compensation obligations would benefit the local exchange carriers that terminate the calls with the ISP, such as competitive local Exchange carriers that provide local exchange services to their own ISPs. As ISPs do not make outgoing calls, the compensation for terminating traffic would always flow from the LECs that originate the calls to the LECs that terminate the calls. The United States Court of Appeals for the District of Columbia Circuit vacated this FCC ruling on March 24, 2000, and remanded the matter to the FCC. On April 27, 2001, the FCC decided on remand that calls to ISPs constitute interstate access traffic and thus are not subject to reciprocal compensation. Rather than immediately eliminate the current system, the FCC established a transitional cost recovery mechanism for the exchange of this traffic. In addition, the FCC capped the number of minutes for which a CLEC may receive compensation in a given state, at the number of minutes received in the first quarter of 2001 (annualized), plus a 10% growth factor. It appears likely that this ruling will be appealed. In the meantime, the FCC's current order and/or subsequent state or court rulings could affect the costs incurred by ISPs and CLECs and the demand for their services.

7

LIVEDGAR EDGARpro    © 2002   EDGAR Online, Inc.

Proposals are continuing to be made before Congress and the FCC to mandate cable operators to provide "open access" over their cable systems to other ISPs. To date, the FCC has declined to impose such requirements. This same open access issue is being considered by some local franchising authorities as well. Several local franchising authorities have mandated open access. This issue is being actively litigated. A federal district court in Portland, Oregon, upheld the authority of the local franchising authority to impose an open access requirement in connection with a cable television franchise transfer. On appeal, the U.S. Court of Appeals for the Ninth Circuit reversed the district court and ruled that a local franchising authority has no authority to impose an open access requirement on cable television operators. Additionally, federal district courts in Richmond, Virginia and Miami, Florida have held that a local franchising authority cannot impose an open access requirement. The Virginia case has been appealed to the U.S. Court of Appeals for the Fourth Circuit. If the FCC or other authorities mandate additional access to Adelphia's cable systems, we cannot predict the effect that this would have on our Internet access over cable business.

**The federal Telecommunications Act of 1996 may have a significant impact on our cable television and telephone businesses.**

The federal Telecommunications Act of 1996 substantially changed federal, state and local laws and regulations governing our cable television and telecommunications businesses. This law could materially affect the growth and operation of the cable television industry and the cable services we provide. Although this legislation may lessen regulatory burdens, the cable television industry may be subject to new competition as a result. There are numerous rulemakings that have been and continue to be undertaken by the FCC which will interpret and implement the provisions of this law. Furthermore, portions of this law have been, and likely other portions will be, challenged in the courts. We cannot predict the outcome of such rulemakings or lawsuits or the short- and long-term effect, financial or otherwise, of this law and FCC rulemakings on us.

Similarly, the federal Telecommunications Act of 1996 removes entry barriers for all companies and could increase substantially the number of competitors offering comparable services in Adelphia Business Solutions' markets or potential markets. Furthermore, we cannot guarantee that rules adopted by the FCC or state regulators or other legislative or judicial initiatives relating to the telecommunications industry will not have a material adverse effect on Adelphia Business Solutions.

**Unequal Voting Rights Of Stockholders**

Adelphia has two classes of common stock--Class A which carries one vote per share and Class B which carries 10 votes per share. Under Adelphia's Certificate of Incorporation, the Class A shares elect only one of our nine directors.

**Control Of Voting Power By The Rigas Family**

**The Rigas family can control stockholder decisions on very important matters.**

While the public owns a majority of the outstanding shares of Adelphia's Class A common stock, the Rigas family owns about 16.7% of those shares as of April 1, 2001, as well as all of the outstanding shares of Class B common stock.  The Rigas family has also agreed to purchase (i) approximately 5,819,367 shares of Class B common stock, (ii) $167,367,000 of 6% convertible subordinated notes due 2006, which are initially convertible into approximately 3,000,000 shares of Class B common stock, and (iii) $400,000,000 of 3.25% convertible subordinated notes due 2021, which are initially convertible into approximately 9,141,000 shares of Class B common stock, pursuant to separate purchase agreements between Adelphia and Highland 2000, L.P., a Rigas family partnership, which when consummated (and assuming full conversion into Class B common stock by only the Rigas family) would result in the Rigas family beneficially owning shares representing approximately 32.9% of the total number of outstanding shares of both classes of Adelphia's common stock and approximately 75.7% of the total voting power of Adelphia's shares. As a result of the Rigas family's stock ownership and an agreement among the Class B stockholders, members of the Rigas family have the power to elect eight of nine Adelphia directors. In addition, the Rigas family could control stockholder decisions on other matters such as amendments to Adelphia's Certificate of Incorporation and Bylaws, and mergers or other fundamental corporate transactions.

8

| | |
|---|---|
| **There Are Potential Conflicts Of Interest Between Adelphia And The Rigas Family** | John J. Rigas and the other executive officers of Adelphia, including other members of the Rigas family, own other corporations and partnerships, which are managed by us for a fee. Subject to the restrictions contained in a business opportunity agreement regarding future acquisitions, Rigas family members and the executive officers are free to continue to own these interests and acquire additional interests in cable television systems. These activities could present a conflict of interest with Adelphia, such as how much time our executive officers devote to our business. In addition, there have been and will continue to be transactions between us and the executive officers or the other entities they own or with which they have affiliations. |
| **Holding Company Structure And Potential Impact Of Restrictive Covenants In Subsidiary Debt Agreements** | The Adelphia Parent Company directly owns no significant assets other than stock, partnership interests and equity and other interests in our subsidiaries and in other companies. This creates risks regarding our ability to provide cash to the Adelphia Parent Company to repay the interest and principal which it owes, our ability to pay cash dividends to our common stockholders in the future, and the ability of our subsidiaries and other companies to respond to changing business and economic conditions and to get new loans. |
| **The Adelphia Parent Company depends on its subsidiaries and other companies in which it has investments to fund its cash needs.** | The public indentures and the credit agreements for bank and other financial institution loans of our subsidiaries and other companies in which we have invested, restrict their ability and the ability of the companies they own to make payments to the Adelphia Parent Company. These agreements also place other restrictions on the borrower's ability to borrow new funds. The ability of a subsidiary or a company in which we have invested to comply with debt restrictions may be affected by events that are beyond our control. The breach of any of these covenants could result in a default which could result in all loans and other amounts owed to its lenders becoming due and payable. Our subsidiaries and companies in which we have invested might not be able to repay in full the accelerated loans. |
| **It Is Unlikely You Will Receive A Return On Your Shares Through The Payment Of Cash Dividends** | Adelphia has never declared or paid cash dividends on any of its common stock and has no intention of doing so in the foreseeable future. As a result, it is unlikely that you will receive a return on your shares through the payment of cash dividends. |
| **Future Sales Of Adelphia Common Stock Could Adversely Affect Its Market Price** | Sales of a substantial number of shares of Class A common stock or Class B common stock, including sales by any pledgees of such shares, could adversely affect the market price of Class A common stock and could impair our ability in the future to raise capital through stock offerings. Under various registration rights agreements or arrangements, the Rigas family has the right, subject to some limitations, to require Adelphia to register substantially all of the shares which it owns of Class A common stock, consisting of approximately 25,600,000 shares, Class B common stock, consisting of 19,235,998 shares and the equivalent number of shares of Class A common stock into which they may be converted. Among others, Adelphia has registered or agreed to register for public sale the following shares: |

- for Citizens Cable Company--1,852,302 shares of Class A common stock owned as of October 1, 1999;
- for the selling stockholders receiving shares in the Verto Communications, Inc. acquisition--2,574,379 shares of Class A common stock;
- for the former owners of FrontierVision--approximately 7,000,000 shares of Class A common stock in connection with the FrontierVision acquisition;
- for the selling stockholders receiving shares in the Benchmark Media, Inc. acquisition--2,394,778 shares of Class A common stock;
- for the selling stockholders receiving shares in the Buenavision Telecommunications, Inc. acquisition--453,636 shares of Class A common stock;
- for an entity controlled by members of the family of John J. Rigas-5,819,367 shares of Class B (and the underlying Class A) common stock to be purchased by that entity

9

EDGAR EDGARpro    © 2002    EDGAR Online, Inc.

within 270 days from January 23, 2001;
- for members of the immediate family of John J. Rigas and entities they control and the Estate of Bill Daniels-- up to approximately 12,000,000 shares of Class A common stock (including Class B common stock to be converted into Class A) in connection with the Rigas family's acquisition of cable systems from the Estate of Bill Daniels;
- for an entity controlled by members of the family of John J. Rigas-approximately 3,000,000 shares of Class B (and the underlying Class A) common stock, upon conversion of the convertible subordinated notes to be purchased by that entity within 270 days from January 23, 2001;
- for an entity controlled by members of the family of John J. Rigas-approximately 9,141,000 shares of Class B (and the underlying Class A) common stock, upon conversion of the convertible subordinated notes to be purchased by that entity within 270 days from April 25, 2001;
- in connection with the acquisition of cable television systems from AT&T Corp., approximately $73,000,000 of shares of Class A common stock to be issued upon the closing of that transaction;
- in connection with the Century Communications Corp. acquisition approximately 26,000,000 shares of Class A common stock held by Leonard Tow and trusts and foundations established by Mr. Tow; and
- in connection with the acquisition of the greater Cleveland systems from Cablevision Systems Corporation, 10,800,000 shares of Class A common stock.

In addition, the Rigas family may pledge their shares in connection with margin loans made to members of the Rigas family. These pledgees could freely sell any shares acquired upon a foreclosure.

| | |
|---|---|
| Our Acquisitions And Expansion Could Involve Operational And Other Risks | Because we are experiencing a period of rapid expansion through acquisition, the operating complexity of Adelphia, as well as the responsibilities of management personnel, have increased. Our ability to manage such expansion effectively will require us to continue to expand and improve our operational and financial systems and to expand, train and manage our employee base.

Our recent and pending acquisitions involve, and our future acquisitions will involve, the acquisition of companies that have previously operated independently. There is no guarantee that we will be able to realize the benefits expected from the integration of operations from these transactions. |
| Purchasers Of Our Common Stock Will Incur Immediate Dilution | Persons purchasing our common stock will incur immediate and substantial net tangible book value dilution. |
| Forward-Looking Statements In This Prospectus Are Subject To Risks And Uncertainties | The statements contained or incorporated by reference in this prospectus that are not historical facts are "forward-looking statements" and can be identified by the use of forward-looking terminology such as "believes," "expects," "may," "will," "should," "intends" or "anticipates" or the negative thereof or other variations thereon or comparable terminology, or by discussions of strategy that involve risks and uncertainties.

Certain information set forth or incorporated by reference in this prospectus, including "Management's Discussion and Analysis of Financial Condition and Results of Operations" in Adelphia's Annual Report on Form 10-K, as amended by Form 10-K/A, and in Adelphia's most recent Quarterly Report on Form 10-Q is forward-looking. Such forward-looking information involves important risks and uncertainties that could significantly affect expected results in the future from those expressed in any forward-looking statements made by, or on behalf of, us. These risks and uncertainties include, but are not limited to, uncertainties relating to general business and economic conditions, |

10

our growth and financings, the availability and cost of capital, acquisitions and divestitures, government and regulatory policies, the pricing and availability of equipment, materials, inventories and programming, dependence on customers and their spending patterns, risks associated with reliance on the performance and financial condition of vendors and customers, product acceptance, our ability to execute on our business plans and to construct, expand and upgrade our cable systems, fiber optic networks and related facilities, technological developments and changes in the competitive environment in which we operate. Persons reading this prospectus are cautioned that such statements are only predictions and that actual events or results may differ materially. In evaluating such statements, readers should specifically consider the various factors which could cause actual events or results to differ materially from those indicated by such forward-looking statements.

11

## RATIO OF EARNINGS TO COMBINED FIXED CHARGES AND PREFERRED STOCK DIVIDENDS

The following table sets forth the ratio of earnings to combined fixed charges and preferred stock dividends of Adelphia for the periods indicated. For purposes of calculating the ratio of earnings available to cover combined fixed charges and preferred stock dividends:

EDGAR EDGARpro    © 2002, EDGAR Online, Inc.

. earnings consist of loss before income taxes and extraordinary items plus fixed charges, excluding capitalized interest, and

. fixed charges consist of interest, whether expensed or capitalized, plus amortization of debt issuance costs plus the assumed interest component of rent expense.

| Fiscal Year Ended March 31, | | Nine Months Ended December 31, | Fiscal Year Ended December 31, | | Three Months Ended March 31, |
|---|---|---|---|---|---|
| 1997 | 1998 | 1998 | 1999 | 2000 | 2001 |
| ---- | ---- | ---- | ---- | ---- | ---- |
| -- | -- | -- | -- | -- | 1.68 to 1.00 |

For the years ended March 31, 1997 and 1998, the nine months ended December 31, 1998 and the years ended December 31, 1999 and 2000, Adelphia's earnings were insufficient to cover its combined fixed charges and preferred stock dividends by approximately $61,848,000, $113,941,000, $95,595,000, $281,975,000 and $916,103,000, respectively.

12

## DILUTION

The net tangible book value of Adelphia's common stock as of March 31, 2001 was a deficit of approximately $10,309,584,000 or a negative $59.70 a share. Net tangible book value per share represents the amount of Adelphia's convertible preferred stock, common stock and other stockholders' equity, less intangible assets, divided by shares of Adelphia's common stock outstanding. Purchasers of our common stock will have an immediate dilution of net tangible book value which will exceed the purchase price per share, due to our having a net tangible book value deficit.

## USE OF PROCEEDS

Unless otherwise specified in the applicable prospectus supplement, we intend to apply the net proceeds from the sale of the securities to which this prospectus relates to general funds to be used for general corporate purposes including capital expenditures, acquisitions, the reduction of indebtedness, investments and other purposes. We may invest funds not required immediately for such purposes in short-term obligations or we may use them to reduce the future level of our indebtedness.

13

## DESCRIPTION OF DEBT SECURITIES

The following description sets forth general terms and provisions of the debt securities to which any prospectus supplement may relate. We will describe the particular terms and provisions of the series of debt securities offered by a prospectus supplement, and the extent to which such general terms and provisions described below may apply thereto, in the prospectus supplement relating to such series of debt securities.

The senior debt securities are to be issued in one or more series under an indenture, as supplemented or amended from time to time between Adelphia and an institution that we will name in the related prospectus supplement, as trustee. For ease of reference, we will refer to the indenture relating to senior debt securities as the senior indenture and we will refer to the trustee under that indenture as the senior trustee. The subordinated debt securities are to be issued in one or more series under an indenture, as supplemented or amended from time to time, between Adelphia and an institution that we will name in the related prospectus supplement, as trustee. For ease of reference, we will refer to the indenture relating to subordinate debt securities as the subordinate indenture and we will refer to the trustee under that indenture as the subordinate trustee. This summary of certain terms and provisions of the debt securities and the indentures is not necessarily complete, and we refer you to the copy of the form of the indentures which are filed as an exhibit to the registration statement of which this prospectus forms a part, and to the Trust Indenture Act. Whenever we refer to particular defined terms of the indentures in this Section or in a prospectus supplement, we are incorporating these definitions into this prospectus or the prospectus supplement.

## General

The debt securities will be issuable in one or more series pursuant to an indenture supplemental to the applicable indenture or a resolution of Adelphia's board of directors or a committee of the board. Unless otherwise specified in a prospectus supplement, each series of senior debt securities will rank pari passu in right of payment with all of Adelphia Parent Company's other senior unsecured obligations. Each series of subordinated debt securities will be subordinated and junior in right of payment to the extent and in the manner set forth in the subordinated indenture and the supplemental indenture relating to that debt. Except as otherwise provided in a

prospectus supplement, the indentures do not limit the incurrence or issuance of other secured or unsecured debt of Adelphia, whether under the indentures, any other indenture that Adelphia may enter into in the future or otherwise. For more information, you should read the prospectus supplement relating to a particular offering of securities.

The applicable prospectus supplement or prospectus supplements will describe the following terms of each series of debt securities:

. the title of the debt securities and whether such series constitutes senior debt securities or subordinated debt securities;

. any limit upon the aggregate principal amount of the debt securities;

. the date or dates on which the principal of the debt securities is payable or the method of that determination or the right, if any, of Adelphia to defer payment of principal;

. the rate or rates, if any, at which the debt securities will bear interest (including reset rates, if any, and the method by which any such rate will be determined), the interest payment dates on which interest will be payable and the right, if any, of Adelphia to defer any interest payment;

14

. the place or places where, subject to the terms of the indenture as described below under the caption "--Payment and Paying Agents," the principal of and premium, if any, and interest, if any, on the debt securities will be payable and where, subject to the terms of the indenture as described below under the caption "--Denominations, Registration and Transfer," Adelphia will maintain an office or agency where debt securities may be presented for registration of transfer or exchange and the place or places where notices and demands to or upon Adelphia in respect of the debt securities and the indenture may be made;

. any period or periods within, or date or dates on which, the price or prices at which and the terms and conditions upon which debt securities may be redeemed, in whole or in part, at the option of Adelphia pursuant to any sinking fund or otherwise;

. the obligation, if any, of Adelphia to redeem or purchase the debt securities pursuant to any sinking fund or analogous provisions or at the option of a holder and the period or periods within which, the price or prices at which, the currency or currencies including currency unit or units, in which and the other terms and conditions upon which the debt securities will be redeemed or purchased, in whole or in part, pursuant to such obligation;

. the denominations in which any debt securities will be issuable if other than denominations of $1,000 and any integral multiple thereof;

. if other than in U.S. Dollars, the currency or currencies, including currency unit or units, in which the principal of, and premium, if any, and interest, if any, on the debt securities will be payable, or in which the debt securities shall be denominated;

. any additions, modifications or deletions in the events of default or covenants of Adelphia specified in the indenture with respect to the debt securities;

. if other than the principal amount, the portion of the principal amount of debt securities that will be payable upon declaration of acceleration of the maturity thereof;

. any additions or changes to the indenture with respect to a series of debt securities that will be necessary to permit or facilitate the issuance of the series in bearer form, registrable or not registrable as to principal, and with or without interest coupons;

. any index or indices used to determine the amount of payments of principal of and premium, if any, on the debt securities and the manner in which such amounts will be determined;

. subject to the terms described under "--Global Debt Securities," whether the debt securities of the series will be issued in whole or in part in the form of one or more global securities and, in such case, the depositary for the global securities;

. the appointment of any trustee, registrar, paying agent or agents;

. the terms and conditions of any obligation or right of Adelphia or a holder to convert or exchange debt securities into preferred securities or other securities;

. whether the defeasance and covenant defeasance provisions described under the caption "--Satisfaction and Discharge; Defeasance" will be inapplicable or modified;

EDGAR EDGARpro    © 2002.  EDGAR Online, Inc.

. any applicable subordination provisions in addition to those set forth herein with respect to subordinated debt securities; and

15

. any other terms of the debt securities not inconsistent with the provisions of the applicable indenture.

We may sell debt securities at a substantial discount below their stated principal amount, bearing no interest or interest at a rate which at the time of issuance is below market rates. We will describe material U.S. federal income tax consequences and special considerations applicable to the debt securities in the applicable prospectus supplement.

If the purchase price of any of the debt securities is payable in one or more foreign currencies or currency units or if any debt securities are denominated in one or more foreign currencies or currency units or if the principal of, premium, if any, or interest, if any, on any debt securities is payable in one or more foreign currencies or currency units, we will set forth the restrictions, elections, material U.S. federal income tax considerations, specific terms and other information with respect to such issue of debt securities and such foreign currency or currency units in the applicable prospectus supplement.

If any index is used to determine the amount of payments of principal, premium, if any, or interest on any series of debt securities, we will describe the material U.S. federal income tax, accounting and other considerations applicable thereto in the applicable prospectus supplement.

**Denominations, Registration and Transfer**

Unless otherwise specified in the applicable prospectus supplement, the debt securities will be issuable only in registered form, without coupons, in denominations of $1,000 and any integral multiple thereof. Debt securities of any series will be exchangeable for other debt securities of the same issue and series, of any authorized denominations of a like aggregate principal amount, the same original issue date, stated maturity and bearing the same interest rate.

Holders may present each series of debt securities for exchange as provided above, and for registration of transfer, with the form of transfer endorsed thereon, or with a satisfactory written instrument of transfer, duly executed, at the office of the appropriate securities registrar or at the office of any transfer agent designated by Adelphia for such purpose and referred to in the applicable prospectus supplement, without service charge and upon payment of any taxes and other governmental charges as described in the indenture. Adelphia will appoint the trustee of each series of debt securities as securities registrar for such series under the indenture.

If the applicable prospectus supplement refers to any transfer agents, in addition to the securities registrar initially designated by Adelphia with respect to any series, Adelphia may at any time rescind the designation of any such transfer agent or approve a change in the location through which any such transfer agent acts, provided that Adelphia maintains a transfer agent in each place of payment for the series. Adelphia may at any time designate additional transfer agents with respect to any series of debt securities.

In the event of any redemption, neither Adelphia nor the trustee will be required to:

. issue, register the transfer of or exchange debt securities of any series during a period beginning at the opening of business 15 days before the day of mailing of a notice for redemption of debt securities of that series, and ending at the close of business on the day of mailing of the relevant notice of redemption, or

. transfer or exchange any debt securities so selected for redemption, except, in the case of any debt securities being redeemed in part, any portion not being redeemed.

16

**Global Debt Securities**

Unless otherwise specified in the applicable prospectus supplement, the debt securities of a series may be issued in whole or in part in the form of one or more global securities that we will deposit with, or on behalf of, a depositary identified in the prospectus supplement relating to such series. Global debt securities may be issued only in fully registered form and in either temporary or permanent form. Unless and until it is exchanged in whole or in part for the individual debt securities represented by it, a global debt security may not be transferred except as a whole by the depositary for the global debt security to a nominee of the depositary or by a nominee of the depositary to the depositary or another nominee of the depositary or by the depositary or any nominee to a successor depositary or any nominee of the successor.

The specific terms of the depositary arrangement with respect to a series of debt securities will be described in the prospectus supplement relating to the series. Adelphia anticipates that the following provisions will generally apply to depositary arrangements.

Upon the issuance of a global debt security, and the deposit of the global debt security with or on behalf of the applicable depositary,

EDGARpro    © 2002    EDGAR Online, Inc.

the depositary for the global debt security or its nominee will credit on its book-entry registration and transfer system, the respective principal amounts of the individual debt securities represented by the global debt security to the accounts of persons, more commonly known as participants, that have accounts with the depositary. These accounts will be designated by the dealers, underwriters or agents with respect to the debt securities or by Adelphia if the debt securities are offered and sold directly by Adelphia. Ownership of beneficial interests in a global debt security will be limited to participants or persons that may hold interests through participants. Ownership of beneficial interests in the global debt security will be shown on, and the transfer of that ownership will be effected only through, records maintained by the applicable depositary or its nominee with respect to interests of participants and the records of participants with respect to interests of persons who hold through participants. The laws of some states require that certain purchasers of securities take physical delivery of the securities in definitive form. These limits and laws may impair the ability to transfer beneficial interests in a global debt security.

So long as the depositary for a global debt security, or its nominee, is the registered owner of the global debt security, the depositary or its nominee, as the case may be, will be considered the sole owner or holder of the debt securities represented by the global debt security for all purposes under the indenture. Except as provided below, owners of beneficial interests in a global debt security will not be entitled to have any of the individual debt securities of the series represented by the global debt security registered in their names, will not receive or be entitled to receive physical delivery of any debt securities of the series in definitive form and will not be considered the owners or holders of them under the indenture.

Payments of principal of, and premium, if any, and interest on individual debt securities represented by a global debt security registered in the name of a depositary or its nominee will be made to the depositary or its nominee, as the case may be, as the registered owner of the global debt security representing the debt securities. None of Adelphia, or the trustee, any paying agent, or the securities registrar for the debt securities will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial ownership interest of the global debt security for the debt securities or for maintaining, supervising or reviewing any records relating to those beneficial ownership interests.

Adelphia expects that the depositary for a series of debt securities or its nominee, upon receipt of any payment of principal, premium or interest in respect of a permanent global debt security representing any of the debt securities, immediately will credit participants' accounts with payments in amounts

17

proportionate to their respective beneficial interest in the principal amount of the global debt security for the debt securities as shown on the records of the depositary or its nominee. Adelphia also expects that payments by participants to owners of beneficial interests in the global debt security held through the participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name." These payments will be the responsibility of these participants.

Unless otherwise specified in the applicable prospectus supplement, if the depositary for a series of debt securities is at any time unwilling, unable or ineligible to continue as depositary and a successor depositary is not appointed by Adelphia within 90 days, Adelphia will issue individual debt securities of the series in exchange for the global debt security representing the series of debt securities. In addition, unless otherwise specified in the applicable prospectus supplement, Adelphia may at any time and in its sole discretion, subject to any limitations described in the prospectus supplement relating to the debt securities, determine not to have any debt securities of the series represented by one or more global debt securities and, in such event, will issue individual debt securities of the series in exchange for such global debt securities. Further, if Adelphia so specifies with respect to the debt securities of a series, an owner of a beneficial interest in a global debt security representing debt securities of the series may, on terms acceptable to Adelphia, the trustee and the depositary for the global debt security, receive individual debt securities of the series in exchange for such beneficial interests, subject to any limitations described in the prospectus supplement relating to the debt securities. In any such instance, an owner of a beneficial interest in a global debt security will be entitled to physical delivery of individual debt securities of the series represented by the global debt security equal in principal amount to its beneficial interest and to have the debt securities registered in its name. Individual debt securities of the series so issued will be issued in denominations, unless otherwise specified by Adelphia, of $1,000 and integral multiples thereof. The applicable prospectus supplement may specify other circumstances under which individual debt securities may be issued in exchange for the global debt security representing any debt securities.

**Payment and Paying Agents**

Unless otherwise indicated in the applicable prospectus supplement, payment of principal of, and premium, if any, and any interest on debt securities will be made at the office of the trustee in New York or at the office of such paying agent or paying agents as Adelphia may designate from time to time in the applicable prospectus supplement, except that at the option of Adelphia payment of any interest may be made:

. except in the case of global debt securities, by check mailed to the address of the person or entity entitled thereto as such address shall appear in the securities register; or

EDGARpro

by transfer to an account maintained by the person or entity entitled thereto as specified in the securities register, provided that proper transfer instructions have been received by the regular record date. Unless otherwise indicated in the applicable prospectus supplement, we will make payment of any interest on debt securities to the person or entity in whose name the debt security is registered at the close of business on the regular record date for the interest payment, except in the case of defaulted interest. Adelphia may at any time designate additional paying agents or rescind the designation of any paying agent. However, Adelphia will at all times be required to maintain a paying agent in each place of payment for each series of debt securities.

Any moneys deposited with the trustee or any paying agent, or held by Adelphia in trust, for the payment of the principal of, and premium, if any, or interest on any debt security and remaining unclaimed for two years after such principal, and premium, if any, or interest has become due and payable will, at the request of Adelphia, be repaid to Adelphia or released from such trust, as applicable, and the holder of the debt security will thereafter look, as a general unsecured creditor, only to Adelphia for payment.

18

**Option to Defer Interest Payments or to Pay-in-Kind**

If provided in the applicable prospectus supplement, Adelphia will have the right, at any time and from time to time during the term of any series of debt securities, to defer the payment of interest for such number of consecutive interest payment periods as may be specified in the applicable prospectus supplement, subject to the terms, conditions and covenants, if any, specified in such prospectus supplement, provided that an extension period may not extend beyond the stated maturity of the final installment of principal of the series of debt securities. If provided in the applicable prospectus supplement, Adelphia will have the right, at any time and from time to time during the term of any series of debt securities, to make payments of interest by delivering additional debt securities of the same series. Certain material U.S. federal income tax consequences and special considerations applicable to the debt securities will be described in the applicable prospectus supplement.

**Subordination**

Except as set forth in the applicable prospectus supplement, the subordinated indenture provides that the subordinated debt securities are subordinated and junior in right of payment to all senior indebtedness of Adelphia. If:

. Adelphia defaults in the payment of any principal, or premium, if any, or interest on any senior indebtedness when the same becomes due and payable, whether at maturity or at a date fixed for prepayment or declaration or otherwise; or

. an event of default occurs with respect to any senior indebtedness permitting the holders thereof to accelerate the maturity thereof and written notice of such event of default, requesting that payments on subordinated debt securities cease, is given to Adelphia by the holders of senior indebtedness,

then, unless and until the default in payment or event of default shall have been cured or waived or shall have ceased to exist, no direct or indirect payment, in cash, property or securities, by set-off or otherwise, will be made or agreed to be made on account of the subordinated debt securities or interest thereon or in respect of any repayment, redemption, retirement, purchase or other acquisition of subordinated debt securities.

Except as set forth in the applicable prospectus supplement, the subordinated indenture provides that in the event of:

. any insolvency, bankruptcy, receivership, liquidation, reorganization, readjustment, composition or other similar proceeding relating to Adelphia, its creditors or its property;

. any proceeding for the liquidation, dissolution or other winding-up of Adelphia, voluntary or involuntary, whether or not involving insolvency or bankruptcy proceedings;

. any assignment by Adelphia for the benefit of creditors; or

. any other marshaling of the assets of Adelphia;

all present and future senior indebtedness, including, without limitation, interest accruing after the commencement of the proceeding, assignment or marshaling of assets, will first be paid in full before any payment or distribution, whether in cash, securities or other property, will be made by Adelphia on

19

account of subordinated debt securities. In that event, any payment or distribution, whether in cash, securities or other property, other than securities of Adelphia or any other corporation provided for by a plan of reorganization or a readjustment, the payment of which

EDGAR EDGARpro    © 2002.    EDGAR Online, Inc.

is subordinate, at least to the extent provided in the subordination provisions of the indenture, to the payment of all senior indebtedness at the time outstanding and to any securities issued in respect thereof under any such plan of reorganization or readjustment and other than payments made from any trust described in the "Satisfaction and Discharge; Defeasance" below, which would otherwise but for the subordination provisions be payable or deliverable in respect of subordinated debt securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of Adelphia being subordinated to the payment of subordinated debt securities will be paid or delivered directly to the holders of senior indebtedness, or to their representative or trustee, in accordance with the priorities then existing among such holders until all senior indebtedness shall have been paid in full. No present or future holder of any senior indebtedness will be prejudiced in the right to enforce subordination of the indebtedness evidenced by subordinated debt securities by any act or failure to act on the part of Adelphia.

The term "senior indebtedness" is defined as the principal, premium, if any, and interest on:

. all indebtedness of Adelphia, whether outstanding on the date of the issuance of subordinated debt securities or thereafter created, incurred or assumed, which is for money borrowed, or which is evidenced by a note or similar instrument given in connection with the acquisition of any business, properties or assets, including securities;

. any indebtedness of others of the kinds described in the first bullet point above for the payment of which Adelphia is responsible or liable as guarantor or otherwise; and

. amendments, renewals, extensions and refundings of any such indebtedness;

unless in any instrument or instruments evidencing or securing such indebtedness or pursuant to which the same is outstanding, or in any such amendment, renewal, extension or refunding, it is expressly provided that such indebtedness is not superior in right of payment to subordinated debt securities. The senior indebtedness will continue to be senior indebtedness and entitled to the benefits of the subordination provisions irrespective of any amendment, modification or waiver of any term of the senior indebtedness or extension or renewal of the senior indebtedness.

Except as provided in the applicable prospectus supplement, the subordinated indenture for a series of subordinated debt does not limit the aggregate amount of senior indebtedness that may be issued by Adelphia. As of March 31, 2001, senior indebtedness of the Adelphia Parent Company aggregated approximately $3,424,051,000. In addition, because Adelphia is a holding company, the subordinated debt securities are effectively subordinated to all existing and future liabilities of Adelphia's subsidiaries.

## Modification of Indentures

From time to time, Adelphia and the trustees may modify the indentures without the consent of any holders of any series of debt securities with respect to some matters, including:

. to cure any ambiguity, defect or inconsistency or to correct or supplement any provision which may be inconsistent with any other provision of the indenture;

. to qualify, or maintain the qualification of, the indentures under the Trust Indenture Act; and

20

. to make any change that does not materially adversely affect the interests of any holder of such series of debt securities.

In addition, under the indentures, Adelphia and the trustee may modify some rights, covenants and obligations of Adelphia and the rights of holders of any series of debt securities with the written consent of the holders of at least a majority in aggregate principal amount of the series of outstanding debt securities. However, no extension of the maturity of any series of debt securities, reduction in the interest rate, extension of the time for payment of interest, change in the optional redemption or repurchase provisions in a manner adverse to any holder of the series of debt securities, other modification in the terms of payment of the principal of, or interest on, the series of debt securities, or reduction of the percentage required for modification, will be effective against any holder of the series of outstanding debt securities without the holder's consent.

In addition, Adelphia and the trustees may execute, without the consent of any holder of the debt securities, any supplemental indenture for the purpose of creating any new series of debt securities.

## Events of Default

The indentures provide that any one or more of the following described events with respect to a series of debt securities that has occurred and is continuing constitutes an "event of default" with respect to that series of debt securities:

. failure for 60 days to pay any interest or any sinking fund payment on the series of debt securities when due, (subject to the deferral of any due date in the case of an extension period);

. failure to pay any principal or premium, if any, on the series of the debt securities when due whether at maturity, upon redemption, by declaration or otherwise;

. failure to observe or perform in any material respect certain other covenants contained in the indenture for 90 days after written notice has been given to Adelphia from the trustee or the holders of at least 25% in principal amount of the series of outstanding debt securities;

. default resulting in acceleration of other indebtedness of Adelphia for borrowed money where the aggregate principal amount so accelerated exceeds $25 million and the acceleration is not rescinded or annulled within 30 days after the written notice thereof to Adelphia by the trustee or to Adelphia and the trustee by the holders of 25% in aggregate principal amount of the debt securities of the series then outstanding, provided that the event of default will be remedied, cured or waived if the default that resulted in the acceleration of such other indebtedness is remedied, cured or waived; or

. certain events in bankruptcy, insolvency or reorganization of Adelphia.

The holders of a majority in outstanding principal amount of the series of debt securities have the right to direct the time, method and place of conducting any proceeding for any remedy available to the trustee of the series. The trustee or the holders of not less than 25% in aggregate outstanding principal amount of the series may declare the principal due and payable immediately upon an event of default. The holders of a majority in aggregate outstanding principal amount of the series may annul the declaration and waive the default if the default (other than the non-payment of the principal of the series which has become due solely by the acceleration) has been cured and a sum sufficient to pay all matured installments of interest and principal due otherwise than by acceleration has been deposited with the trustee of the series.

21

The holders of a majority in outstanding principal amount of a series of debt securities affected thereby may, on behalf of the holders of all the holders of the series of debt securities, waive any past default, except a default in the payment of principal or interest, unless the default has been cured and a sum sufficient to pay all matured installments of interest and principal due otherwise than by acceleration has been deposited with the trustee of the series, or a default in respect of a covenant or provision which under the related indenture cannot be modified or amended without the consent of the holder of each outstanding debt security of the series. Adelphia is required to file annually with the trustees a certificate as to whether or not Adelphia is in compliance with all the conditions and covenants applicable to it under the indentures.

In case an event of default shall occur and be continuing as to a series of debt securities, the trustee of the series will have the right to declare the principal of and the interest on the debt securities, and any other amounts payable under the indenture, to be forthwith due and payable and to enforce its other rights as a creditor with respect to the debt securities.

No holder of any debt securities will have any right to institute any proceeding with respect to the indenture or for any remedy thereunder, unless the holder shall have previously given to the trustee written notice of a continuing event of default and unless also the holders of at least 25% in aggregate principal amount of the outstanding debt securities of the series shall have made written request and offered reasonably indemnity to the trustee of the series to institute the proceeding as a trustee, and unless the trustee shall not have received from the holders of a majority in aggregate principal amount of the outstanding debt securities of the class a direction inconsistent with the request and shall have failed to institute the proceeding within 60 days. However, these limitations do not apply to a suit instituted by a holder of a debt security for enforcement of payment of the principal or the interest on the debt security on or after the respective due dates expressed in the debt security.

**Consolidation, Merger, Sale of Assets and Other Transactions**

Unless otherwise indicated in the applicable prospectus supplement, the indentures provide that Adelphia will not consolidate with or merge into any other person or entity or sell, assign, convey, transfer or lease its properties and assets substantially as an entirety to any person or entity unless:

. either Adelphia is the continuing corporation, or any successor or purchaser is a corporation, partnership, or trust or other entity organized under the laws of the United States of America, any State thereof or the District of Columbia, and the successor or purchaser expressly assumes Adelphia's obligations on the debt securities under a supplemental indenture; and

. immediately before and after giving effect thereto, no event of default, and no event which, after notice or lapse of time or both, would become an event of default, shall have happened and be continuing.

Unless otherwise indicated in the applicable prospectus supplement, the general provisions of the indentures do not afford holders of the debt securities protection in the event of a highly leveraged or other transaction involving Adelphia that may adversely affect holders of the debt securities.

**Satisfaction and Discharge; Defeasance**

The indentures provide that when, among other things, all debt securities not previously delivered to the trustee for cancellation:

. have become due and payable, or

22

. will become due and payable at their stated maturity within one year,

and Adelphia deposits or causes to be deposited with the trustee, as trust funds in trust for the purpose, an amount in the currency or currencies in which the debt securities are payable sufficient to pay and discharge the entire indebtedness on the debt securities not previously delivered to the trustee for cancellation, for the principal, and premium, if any, and interest to the date of the deposit or to the stated maturity, as the case may be, then the indenture will cease to be of further effect (except as to Adelphia's obligations to pay all other sums due pursuant to the indenture and to provide the officers' certificates and opinions of counsel described therein), and Adelphia will be deemed to have satisfied and discharged the indenture.

The indentures provide that Adelphia may elect either:

. to terminate, and be deemed to have satisfied, all its obligations with respect to any series of debt securities, except for the obligations to register the transfer or exchange of such debt securities, to replace mutilated, destroyed, lost or stolen debt securities, to maintain an office or agency in respect of the debt securities and to compensate and indemnify the trustee ("defeasance"); or

. to be released from its obligations with respect to certain covenants ("covenant defeasance"), upon the deposit with the trustee, in trust for such purpose, of money and/or U.S. Government Obligations, as defined in the indenture, which through the payment of principal and interest in accordance with the term used will provide money, in an amount sufficient (in the opinion of a nationally recognized firm of independent public accountants) to pay the principal of, interest on and any other amounts payable in respect of the outstanding debt securities of the series.

Such a trust may be established only if, among other things, Adelphia has delivered to the trustee an opinion of counsel (as specified in the indenture) with regard to certain matters, including an opinion to the effect that the holders of the debt securities will not recognize income, gain or loss for federal income tax purposes as a result of the deposit and discharge and will be subject to federal income tax on the same amounts and in the same manner and at the same times as would have been the case if the deposit and defeasance or covenant defeasance, as the case may be, had not occurred.

**Redemption**

Unless otherwise indicated in the applicable prospectus supplement, debt securities will not be subject to any sinking fund requirements.

Unless otherwise indicated in the applicable prospectus supplement, Adelphia may, at its option, redeem the debt securities of any series in whole at any time or in part from time to time, at the redemption price set forth in the applicable prospectus supplement plus accrued and unpaid interest to the date fixed for redemption, and debt securities in denominations larger than $1,000 may be redeemed in part but only in integral multiples of $1,000. If the debt securities of any series are so redeemable only on or after a specified date or upon the satisfaction of additional conditions, the applicable prospectus supplement will specify the date or describe the conditions.

Adelphia will mail notice of any redemption at least 30 days but not more than 60 days before the redemption date to each holder of debt securities to be redeemed at the holder's registered address. Unless Adelphia defaults in the payment of the redemption price, on and after the redemption date interest shall cease to accrue on the debt securities or portions thereof called for redemption.

23

**Conversion or Exchange**

If and to the extent indicated in the applicable prospectus supplement, the debt securities of any series may be convertible or exchangeable into other securities. The specific terms on which debt securities of any series may be so converted or exchanged will be set forth in the applicable prospectus supplement. These terms may include provisions for conversion or exchange, either mandatory, at the option of the holder, or at the option of Adelphia, in which case the number of shares of other securities to be received by the holders of debt securities would be calculated as of a time and in the manner stated in the applicable prospectus supplement.

## Certain Covenants

The indentures contain certain covenants regarding, among other matters, corporate existence, payment of taxes and reports to holders of debt securities. If and to the extent indicated in the applicable prospectus supplement, these covenants may be removed or additional covenants added with respect to any series of debt securities.

## Governing Law

The indentures and the debt securities will be governed by and construed in accordance with the laws of the State of New York.

## Information Concerning the Trustees

Each trustee shall have and be subject to all the duties and responsibilities specified with respect to an indenture trustee under the Trust Indenture Act. Subject to these provisions, each trustee is under no obligation to exercise any of the powers vested in it by the indenture at the request of any holder of the debt securities, unless offered reasonable indemnity by the holder against the costs, expenses and liabilities which might be incurred thereby. Each trustee is not required to expend or risk its own funds or otherwise incur personal financial liability in the performance of its duties if the trustee reasonably believes that repayment or adequate indemnity is not reasonably assured to it.

24

## DESCRIPTION OF CAPITAL STOCK

The following description of the capital stock of Adelphia and certain provisions of Adelphia's Certificate of Incorporation and Bylaws as of July 20, 2001 is a summary and is qualified in its entirety by Adelphia's Certificate of Incorporation and Bylaws, which documents are exhibits to the registration statement covering this prospectus.

Adelphia's authorized capital stock consists of 1,200,000,000 shares of Class A common stock, 300,000,000 shares of Class B common stock, and 50,000,000 shares of preferred stock.

## Common Stock

Dividends. Holders of Class A common stock and Class B common stock are entitled to receive such dividends as may be declared by Adelphia's Board of Directors out of funds legally available for this purpose, but only after payment of dividends required to be paid on outstanding shares of any other class or series of stock having preference over common stock as to dividends. No dividend may be declared or paid in cash or property on either class of common stock, however, unless simultaneously a dividend is paid on the other class of common stock as follows. In the event a cash dividend is paid, the holders of Class A common stock will be paid a cash dividend per share equal to 105% of the amount payable per share of Class B common stock. In the event of a property dividend, holders of each class of common stock are entitled to receive the same value per share of common stock outstanding. In the case of any stock dividend, holders of Class A common stock are entitled to receive the same percentage dividend (payable in Class A common stock) as the holders of Class B common stock receive (payable in Class B common stock).

Voting Rights. Holders of Class A common stock and Class B common stock vote as a single class on all matters submitted to a vote of the stockholders, with each share of Class A common stock entitled to one vote and each share of Class B common stock entitled to ten votes, except:

. for the election of directors, and

. as otherwise provided by law.

In the annual election of directors, the holders of Class A common stock, voting as a separate class, are entitled to elect one of Adelphia's directors. The holders of Class A common stock and Class B common stock, voting as a single class with each share of Class A common stock entitled to one vote and each share of Class B common stock entitled to ten votes, are entitled to elect the remaining directors. Consequently, holders of Class B common stock have sufficient voting power to elect the remaining eight members of the current nine-member board of directors. Holders of Class A common stock and Class B common stock are not entitled to cumulate votes in the election of directors. Under Delaware law and Adelphia's Certificate of Incorporation, as amended, the affirmative vote of a majority of the outstanding shares of Class A common stock is required to approve, among other matters, a change in the powers, preferences or special rights of the shares of Class A common stock so as to affect them adversely, but is not required to approve an increase or decrease in the number of authorized shares of Class A common stock.

Liquidation Rights. Upon liquidation, dissolution or winding up of Adelphia, any distributions to holders of any class of common stock

EDGARpro     © 2002     EDGAR Online, Inc.

would only be made after payment in full of creditors and provision for the preference of any other class or series of stock having a preference over the common stock upon liquidation, dissolution or winding up that may then be outstanding. Thereafter, the holders of Class A common stock are entitled to a preference of $1.00 per share. After this amount is paid, holders

25

of the Class B common stock are entitled to receive $1.00 per share. Any remaining amount would then be shared ratably by both classes.

Other Provisions. Each share of Class B common stock is convertible at the option of its holder into one share of Class A common stock at any time. The holders of Class A common stock and Class B common stock are not entitled to preemptive or subscription rights. Neither the Class A common stock nor the Class B common stock may be subdivided, consolidated, reclassified or otherwise changed unless concurrently the other class of common stock is subdivided, consolidated, reclassified or otherwise changed in the same proportion and in the same manner.

**Preferred Stock**

The 50,000,000 shares of authorized preferred stock may be issued with such designations, powers, preferences and other rights and qualifications, limitations and restrictions thereof as Adelphia's board of directors may authorize without further action by Adelphia's stockholders, including but not limited to:

. the distinctive designation of each series and the number of shares that will constitute the series;

. the voting rights, if any, of shares of the series;

. the dividend rate on the shares of the series, any restriction, limitation or condition upon the payment of dividends, whether dividends will be cumulative and the dates on which dividends are payable;

. the prices at which, and the terms and conditions on which, the shares of the series may be redeemed, if the shares are redeemable;

. the purchase or sinking fund provisions, if any, for the purchase or redemption of shares of the series;

. any preferential amount payable upon shares of the series in the event of the liquidation, dissolution or winding up of Adelphia or the distribution of its assets;

. the prices or rates of conversion at which, and the terms and conditions on which, the shares of such series may be converted into other securities, if such shares are convertible. Adelphia has designated and has outstanding two classes of preferred stock--13% Series B Cumulative Redeemable Exchangeable preferred stock and 5 1/2% Series D Convertible preferred stock. For ease of reference, we refer to the 13% Series B Cumulative Redeemable Exchangeable preferred stock as the Exchangeable preferred stock and to the 5 1/2% Series D Convertible preferred stock as the 5 1/2% Convertible preferred stock; and

. In connection with the foregoing designations, the maximum number of shares authorized of Exchangeable preferred stock and 5 1/2% Convertible preferred stock is 1,500,000 shares and 2,875,000 shares, respectively. The Exchangeable preferred stock and 5 1/2% Convertible preferred stock rank senior to the common stock of Adelphia with respect to dividends and liquidation. The Exchangeable preferred stock and 5 1/2% Convertible preferred stock rank equal in right of payment as to dividends and upon liquidation, dissolution or winding-up of Adelphia.

Exchangeable Preferred Stock. The shares of Exchangeable preferred stock are redeemable at the option of Adelphia, on or after July 15, 2002. Adelphia is required, subject to certain conditions, to redeem all of the Exchangeable preferred stock outstanding on July 15, 2009, at a redemption price equal to 100% of the liquidation preference thereof, plus accumulated and unpaid dividends to the date of

26

redemption. Dividends on the Exchangeable preferred stock accrue at a rate of 13% of the liquidation preference per annum and are payable semiannually. The Exchangeable preferred stock is not entitled to vote in the election of directors of Adelphia or upon any other matter, except as provided by law, unless a Voting Rights Triggering Event, as defined in the related Certificate of Designation, occurs with respect to the Exchangeable preferred stock. If this occurs, the board of directors will be expanded by two seats, the directors for which shall then be elected by the holders of the Exchangeable preferred stock.

5 1/2% Convertible Preferred Stock. The 5 1/2% Convertible preferred stock accrues cumulative dividends at the rate of 5 1/2% per annum, or $11.00 per share of the 5 1/2% Convertible preferred stock per annum. The 5 1/2% Convertible preferred stock has a liquidation preference of $200 per share. Upon any voluntary or involuntary liquidation, dissolution or winding-up of the affairs of Adelphia, the holders of the 5 1/2% Convertible preferred stock are entitled to receive the liquidation preference for the 5 1/2%

Convertible preferred stock, plus any accrued but unpaid dividends thereon, and no more. Neither the voluntary sale, conveyance, exchange or transfer, for cash, shares of stock, securities or other consideration, of all or substantially all of the property or assets of Adelphia nor the consolidation or merger of Adelphia with or into one or more corporations will be deemed to be a voluntary or involuntary liquidation, dissolution or winding-up of Adelphia, unless the sale, conveyance, exchange or transfer shall be in connection with a liquidation, dissolution or winding-up of the business of Adelphia.

Each share of 5 1/2% Convertible preferred stock is convertible based upon its stated liquidation preference into shares of Class A common stock of Adelphia at any time at the election of the holder of it at a conversion price of $81.45 per share of Adelphia Class A common stock, or approximately 2.45549 shares of Class A common stock per share of 5 1/2% Convertible preferred stock. The conversion price is subject to adjustment in certain circumstances, such as if Adelphia pays a dividend in shares of Class A common stock or subdivides, combines or reclassifies the shares of Class A common stock or distributes rights to purchase common stock or makes certain other distributions to holders of Class A common stock. The 5 1/2% Convertible preferred stock is not entitled to vote in the election of directors of Adelphia or upon any other matter, except as provided by law, unless dividends are in arrears in an amount equal to at least six quarters. If this occurs, the board of directors will be expanded by two seats, the directors for which shall then be elected by the holders of the 5 1/2% Convertible preferred stock and serve until the arrearage is eliminated. The 5 1/2% Convertible preferred stock is not subject to mandatory redemption.

The 5 1/2% Convertible preferred stock may be redeemed at the option of Adelphia, in whole or in part, at any time on or after May 1, 2002, at the option of Adelphia in shares of Class A common stock at a redemption price of $206 per share plus accrued and unpaid dividends, if any, to the redemption date, or for cash at a redemption price of $200 per share plus accrued and unpaid dividends.

The rights of holders of shares of common stock as described above will be subject to, and may be adversely affected by, the rights of holders of any additional classes of preferred stock that may be designated and issued in the future.

We will describe the particular terms and conditions of a series of preferred stock offered by a prospectus supplement in the prospectus supplement relating to such series of preferred stock. The applicable prospectus supplement or prospectus supplements will describe the following terms of each series of preferred stock being offered:

. its title;

. the number of shares offered, any liquidation preference per share and the purchase price;

. any applicable dividend rate(s), period(s) and/or payment date(s) or method(s) of calculation;

27

. if dividends apply whether they shall be cumulative or non-cumulative and, if cumulative, the date from which dividends shall accumulate;

. any procedures for any auction and remarketing;

. any provisions for a sinking fund;

. any provisions for redemption;

. any listing of such preferred stock on any securities exchange or market;

. the terms and conditions, if applicable, upon which it will be convertible into common stock or another series of preferred stock of Adelphia, including the conversion price (or manner of calculation thereof) and conversion period;

. the terms and conditions, if applicable, upon which it will be exchangeable into debt securities of Adelphia, including the exchange price (or manner of calculation thereof) and exchange period;

. any voting rights;

. a discussion of any applicable material and/or special United States federal income tax considerations;

. whether interests in that series of preferred stock will be represented by depositary shares;

. its relative ranking and preferences as to any dividend rights and rights upon liquidation, dissolution or winding up of the affairs of Adelphia;

EDGAR®        © 2002, EDGAR Online, Inc.

. any limitations on the future issuance of any class or series of preferred stock ranking senior to or on a parity with the series of preferred stock being offered as to dividend rights and rights upon liquidation, dissolution or winding up of the affairs of Adelphia; and

. any other specific terms, preferences, rights, limitations or restrictions.

### Transfer Agent

The Transfer Agent and Registrar for the Class A common stock, the Exchangeable preferred stock and the 5 1/2% Convertible preferred stock is American Stock Transfer & Trust Company. The Transfer Agent and Registrar for the Class B common stock is Adelphia.

28

## DESCRIPTION OF WARRANTS

Adelphia may issue warrants to purchase its debt securities, as well as warrants to purchase its preferred or common stock. Warrants may be issued independently or together with any securities and may be attached to or separate from those securities. The warrants will be issued under warrant agreements to be entered into between Adelphia and a bank or trust company, as warrant agent, all as will be set forth in the related prospectus supplement.

### Debt Warrants

The following briefly summarizes the material terms of the debt warrant agreement, other than pricing and related terms disclosed in the accompanying prospectus supplement. You should read the particular terms of any debt warrants that are offered by us and the applicable debt warrant agreement which will be described in more detail in a prospectus supplement. The prospectus supplement will also state whether any of the generalized provisions summarized below do not apply to the debt warrants being offered.

#### General

Adelphia may issue warrants for the purchase of its debt securities. As explained below, each debt warrant will entitle its holder to purchase debt securities at an exercise price set forth in, or to be determinable as set forth in, the related prospectus supplement. Debt warrants may be issued separately or together with debt securities.

The debt warrants are to be issued under debt warrant agreements to be entered into between Adelphia and one or more banks or trust companies, as debt warrant agent, all as will be set forth in the prospectus supplement relating to the debt warrants being offered by the prospectus supplement. A form of debt warrant agreement, including a form of debt warrant certificate representing the debt warrants, will be filed as an exhibit to the registration statement of which this prospectus forms a part. See "Where You Can Find More Information" below for information on how to obtain a copy of the form of debt warrant agreement.

#### Terms of the Debt Warrants to be Described in the Prospectus Supplement

The particular terms of each issue of debt warrants, the debt warrant agreement relating to the debt warrants and the debt warrant certificates representing debt warrants will be described in the applicable prospectus supplement. This description will include:

. the initial offering price;

. the currency or currency unit in which the price for the debt warrants is payable;

. the title, aggregate principal amount and terms of the debt securities purchasable upon exercise of the debt warrants;

. the title and terms of any related debt securities with which the debt warrants are issued and the number of the debt warrants issued with each debt security;

. the date, if any, on and after which the debt warrants and the related debt securities will be separately transferable;

. the principal amount of debt securities purchasable upon exercise of each debt warrant and the price at which that principal amount of debt securities may be purchased upon exercise of each debt

29

warrant;

. the date on which the right to exercise the debt warrants will commence and the date on which this right will expire;

EDGAR EDGARpro    © 2002. EDGAR Online, Inc.

. if applicable, a discussion of United States federal income tax, accounting or other considerations applicable to the debt warrants;

. whether the debt warrants represented by the debt warrant certificates will be issued in registered or bearer form, and, if registered, where they may be transferred and registered; and

. any other terms of the debt warrants.

Debt warrant certificates will be exchangeable for new debt warrant certificates of different denominations and, if in registered form, may be presented for registration of transfer and debt warrants may be exercised at the corporate trust office of the debt warrant agent or any other office indicated in the related prospectus supplement. Before the exercise of debt warrants, holders of debt warrants will not be entitled to payments of principal, premium, if any, or interest, if any, on the debt securities purchasable upon exercise of the debt warrants, or to enforce any of the covenants in the indenture.

### Exercise of Debt Warrants

Unless otherwise provided in the related prospectus supplement, each debt warrant will entitle the holder of debt warrants to purchase for cash the principal amount of debt securities at the exercise price that will in each case be set forth in, or be determinable as set forth in, the related prospectus supplement. Debt warrants may be exercised at any time up to the close of business on the expiration date specified in the prospectus supplement relating to the debt warrants. After the close of business on the expiration date or any later date to which the expiration date may be extended by us, unexercised debt warrants will become void.

Debt warrants may be exercised as set forth in the prospectus supplement relating to the debt warrants. Upon receipt of payment and the debt warrant certificate properly completed and duly executed at the corporate trust office of the debt warrant agent or any other office indicated in the prospectus supplement, we will, as soon as practicable, forward the debt securities purchasable upon exercise of the debt warrants to the person entitled to them. If fewer than all of the debt warrants represented by the debt warrant certificate are exercised, a new debt warrant certificate will be issued for the remaining amount of debt warrants.

If you hold your interest in a debt warrant indirectly, you should check with the institution through which you hold your interest in the debt warrant to determine how these provisions will apply to you.

### Modifications

The debt warrant agreement may be amended by Adelphia and the debt warrant agent, without the consent of the holder of any debt warrant certificate, for the purpose of curing any ambiguity, or of curing, correcting or supplementing any defective provision contained in the debt warrant agreement, or making any provisions in regard to matters or questions arising under the debt warrant agreement that Adelphia may deem necessary or desirable; provided that the amendment may not adversely affect the interest of the holders of debt warrant certificates in any material respect. Adelphia and the debt warrant agent also may modify or amend the debt warrant agreement and the terms of the debt warrants, with the consent of the owners of not less than a majority in number of the then outstanding unexercised debt warrants affected. However, modifications or amendments that result in any of the following changes may be made only with the consent of the owners affected by the modification or amendment:

30

. an increase in the exercise price of the debt warrants;

. a shortening of the period of time during which the debt warrants may be exercised;

. any material and adverse change that affects the exercise rights of the owners of the debt warrants; or

. a reduction in the number of debt warrants whose owners must consent to the modification or amendment of the debt warrant agreement or the terms of the debt warrants.

### Merger, Consolidation, Sale or Other Dispositions

Under the debt warrant agreement, Adelphia may, to the extent permitted in the indenture, consolidate with, or sell or convey all or substantially all of its assets to, or merge with or into, any other corporation. If at any time there is a merger, consolidation, sale, transfer, conveyance or other disposition of substantially all of the assets of Adelphia, the successor or assuming corporation will succeed to and be substituted for Adelphia, with the same effect as if it had been named in the debt warrant agreement and in the debt warrants as Adelphia. Adelphia will then be relieved of any further obligation under the debt warrant agreement or under the debt warrants.

### Enforceability of Rights, Governing Law

The debt warrant agent will act solely as the agent of Adelphia in connection with the issuance and exercise of debt warrants and will not assume any obligation or relationship of agency or trust for or with any holder of a debt warrant certificate or any owner of a beneficial interest in debt warrants. The holders of debt warrant certificates, without the consent of the debt warrant agent, the trustee, the holder of any debt securities issued upon exercise of debt warrants or the holder of any other debt warrant certificates, may, on their own behalf and for their own benefit, enforce, and may institute and maintain any suit, action or proceeding against Adelphia suitable to enforce, or otherwise in respect of, their rights to exercise debt warrants evidenced by their debt warrant certificates. Except as may otherwise be provided in the related prospectus supplement, each issue of debt warrants and the applicable debt warrant agreement will be governed by the laws of the State of New York.

### Equity Warrants

The following briefly summarizes the material terms and provisions of the equity warrants, other than pricing and related terms disclosed in the accompanying prospectus supplement. You should read the particular terms of the equity warrants that are offered by Adelphia, which will be described in more detail in a prospectus supplement. The prospectus supplement will also state whether any of the general provisions summarized below do not apply to the equity warrants being offered.

### General

Adelphia may issue warrants for the purchase of its equity securities such as its preferred stock or common stock. As explained below, each equity warrant will entitle its holder to purchase equity securities at an exercise price set forth in, or to be determinable as set forth in, the related prospectus supplement. Equity warrants may be issued separately or together with equity securities.

The equity warrants are to be issued under equity warrant agreements to be entered into between Adelphia and one or more banks or trust companies, as equity warrant agent, all as will be set forth in the prospectus supplement relating to the equity warrants being offered by the prospectus supplement. A form of equity warrant agreement, including a form of equity warrant certificate representing the equity

31

warrants, will be filed as an exhibit to the registration statement of which this prospectus forms a part. See "Where You Can Find More Information" below for information on how to obtain a copy of the form of equity warrant agreement.

### Terms of the Equity Warrants to be Described in the Prospectus Supplement

The particular terms of each issue of equity warrants, the equity warrant agreement relating to the equity warrants and the equity warrant certificates representing equity warrants will be described in the applicable prospectus supplement. This description will include:

. the title of the equity warrants;

. the securities for which the equity warrants are exercisable;

. the price or prices at which the equity warrants will be issued;

. if applicable, the designation and terms of the preferred stock or common stock with which the equity warrants are issued, and the number of equity warrants issued with each share of preferred stock or common stock;

. if applicable, the date on and after which the equity warrants and the related preferred stock or common stock will be separately transferable;

. if applicable, a discussion of any material federal income tax considerations; and

. any other terms of the equity warrants, including terms, procedures and limitations relating to the exchange and exercise of the equity warrants.

Holders of equity warrants will not be entitled, solely by virtue of being holders, to vote, to consent, to receive dividends, to receive notice as shareholders with respect to any meeting of shareholders for the election of directors or any other matter, or to exercise any rights whatsoever as shareholders of Adelphia.

The exercise price payable and the number of shares of common stock or preferred stock purchasable upon the exercise of each equity

warrant will be subject to adjustment if Adelphia issues a stock dividend to holders of common stock or preferred stock, or if Adelphia declares a stock split, reverse stock split, combination, subdivision or reclassification of common stock or preferred stock. Instead of adjusting the number of shares of common stock or preferred stock purchasable upon exercise of each equity warrant, Adelphia may elect to adjust the number of equity warrants. No adjustments in the number of shares purchasable upon exercise of the equity warrants will be required until cumulative adjustments require an adjustment of at least 1% of those shares. Adelphia may, at its option, reduce the exercise price at any time. Adelphia will not issue fractional shares upon exercise of equity warrants, but Adelphia will pay the cash value of any fractional shares otherwise issuable.

Notwithstanding the previous paragraph, if there is a consolidation, merger, or sale or conveyance of substantially all of the property of Adelphia, the holder of each outstanding equity warrant will have the right to the kind and amount of shares of stock and other securities and property, including cash, receivable by a holder of the number of shares of common stock or preferred stock into which that equity warrant was exercisable immediately prior to the consolidation, merger, sale or conveyance.

32

### Exercise of Equity Warrants

Unless otherwise provided in the related prospectus supplement, each equity warrant will entitle the holder of equity warrants to purchase for cash the principal amount of equity securities at the exercise price that will in each case be set forth in, or be determinable as set forth in, the related prospectus supplement. Equity warrants may be exercised at any time up to the close of business on the expiration date specified in the prospectus supplement relating to the equity warrants. After the close of business on the expiration date or any later date to which the expiration date may be extended by Adelphia, unexercised equity warrants will become void.

Equity warrants may be exercised as set forth in the prospectus supplement relating to the equity warrants. Upon receipt of payment and the equity warrant certificate properly completed and duly executed at the corporate trust office of the equity warrant agent or any other office indicated in the prospectus supplement, Adelphia will, as soon as practicable, forward the equity securities purchasable upon exercise of the equity warrants to the person entitled to them. If fewer than all of the equity warrants represented by the equity warrant certificate are exercised, a new equity warrant certificate will be issued for the remaining amount of equity warrants.

If you hold your interest in an equity warrant indirectly, you should check with the institution through which you hold your interest in the equity warrant to determine how these provisions will apply to you.

### Modifications

The equity warrant agreement may be amended by Adelphia and the equity warrant agent, without the consent of the holder of any equity warrant certificate, for the purpose of curing any ambiguity, or of curing, correcting or supplementing any defective provision contained in the equity warrant agreement, or making any provisions in regard to matters or questions arising under the equity warrant agreement that Adelphia may deem necessary or desirable; provided that the amendment may not adversely affect the interest of the holders of equity warrant certificates in any material respect. Adelphia and the equity warrant agent also may modify or amend the equity warrant agreement and the terms of the equity warrants, with the consent of the owners of not less than a majority in number of the then outstanding unexercised equity warrants affected. However, modifications or amendments that result in any of the following changes may be made only with the consent of the owners affected by the modification or amendment:

. an increase in the exercise price of the equity warrants;

. A shortening of the period of time during which the equity warrants may be exercised;

. Any material and adverse change that affects the exercise rights of the owners of the equity warrants; or

. A reduction in the number of equity warrants whose owners must consent to the modification or amendment of the equity warrant agreement or the terms of the equity warrants.

### Merger, Consolidation, Sale or Other Dispositions

Under the equity warrant agreement, Adelphia may, to the extent permitted in the indenture, consolidate with, or sell or convey all or substantially all of its assets to, or merge with or into, any other corporation. If at any time there is a merger, consolidation, sale, transfer, conveyance or other disposition of substantially all of the assets of Adelphia, the successor or assuming corporation will succeed to and be substituted for Adelphia, with the same effect as if it had been named in the equity warrant agreement and in the equity

33

warrants as Adelphia. Adelphia will then be relieved of any further obligation under the equity warrant agreement or under the equity

warrants.

## Enforceability of Rights, Governing Law

The equity warrant agent will act solely as the agent of Adelphia in connection with the issuance and exercise of equity warrants and will not assume any obligation or relationship of agency or trust for or with any holder of an equity warrant certificate or any owner of a beneficial interest in equity warrants. The holders of equity warrant certificates, without the consent of the equity warrant agent, the holder of any equity securities issued upon exercise of equity warrants or the holder of any other equity warrant certificates, may, on their own behalf and for their own benefit, enforce, and may institute and maintain any suit, action or proceeding against Adelphia suitable to enforce, or otherwise in respect of, their rights to exercise equity warrants evidenced by their equity warrant certificates. Except as may otherwise be provided in the related prospectus supplement, each issue of equity warrants and the applicable equity warrant agreement will be governed by the laws of the State of New York.

## DESCRIPTION OF DEPOSITARY SHARES

The following briefly summarizes the material provisions of the deposit agreement and of the depositary shares and depositary receipts, other than pricing and related terms disclosed in the applicable prospectus supplement. You should read the particular terms of any depositary shares and any depositary receipts that are offered by us and any deposit agreement relating to a particular series of preferred stock which will be described in more detail in a prospectus supplement. The prospectus supplement will also state whether any of the generalized provisions summarized below do not apply to the depositary shares or depositary receipts being offered. A form of deposit agreement, including the form of depositary receipt, will be filed as an exhibit to the registration statement of which this prospectus forms a part. See "Where You Can Find More Information" below for information on how to obtain a copy of the form of deposit agreement.

### General

Adelphia may, at its option, elect to offer fractional shares of preferred stock, rather than full shares of preferred stock. If it decides to do so, Adelphia will issue receipts for depositary shares, each of which will represent a fraction of a share of a particular series of preferred stock. The shares of any series of preferred stock represented by depositary shares will be deposited under a deposit agreement between Adelphia and a bank or trust company selected by Adelphia having its principal office in the United States and having a combined capital and surplus of at least $50,000,000, as preferred stock depositary. Each owner of a depositary share will be entitled to all the rights and preferences of the underlying preferred stock, including dividend, voting, redemption, conversion and liquidation rights, in proportion to the applicable fraction of a share of preferred stock represented by the depositary share.

The depositary shares will be evidenced by depositary receipts issued pursuant to the deposit agreement. Depositary receipts will be distributed to those persons purchasing the fractional shares of preferred stock in accordance with the terms of the applicable prospectus supplement.

### Dividends and Other Distributions

The preferred stock depositary will distribute all cash dividends or other cash distributions received in respect of the deposited preferred stock to the record holders of depositary shares relating to the underlying preferred stock in proportion to the number of the depositary shares owned by the holders. The preferred stock depositary will distribute any property received by it other than cash to the record holders of depositary shares entitled to these distributions. If the preferred stock depositary determines

34

that it is not feasible to make a distribution, it may, with the approval of Adelphia, sell the property and distribute the net proceeds from the sale to the holders of the depositary shares.

### Redemption of Preferred Stock

If Adelphia is to redeem a series of preferred stock represented by depositary shares, the depositary shares will be redeemed from the proceeds received by the preferred stock depositary resulting from the redemption, in whole or in part, of the applicable series of preferred stock. The depositary shares will be redeemed by the preferred stock depositary at a price per depositary share equal to the applicable fraction of the redemption price per share payable in respect of the shares of preferred stock so redeemed.

Whenever Adelphia redeems shares of preferred stock held by the preferred stock depositary, the preferred stock depositary will redeem as of the same date the number of depositary shares representing shares of preferred stock so redeemed. If fewer than all the depositary shares are to be redeemed, the depositary shares to be redeemed will be selected by the preferred stock depositary by lot or ratably or by any other equitable method as the preferred stock depositary decides.

**Withdrawal of Preferred Stock**

Unless the related depositary shares have previously been called for redemption, any holder of depositary shares may receive the number of whole shares of the related series of preferred stock and any money or other property represented by those depositary receipts after surrendering the depositary receipts at the corporate trust office of the preferred stock depositary. Holders of depositary shares making these withdrawals will be entitled to receive whole shares of preferred stock on the basis set forth in the related prospectus supplement for that series of preferred stock.

However, holders of whole shares of preferred stock will not be entitled to deposit that preferred stock under the deposit agreement or to receive depositary receipts for that preferred stock after withdrawal. If the depositary shares surrendered by the holder in connection with withdrawal exceed the number of depositary shares that represent the number of whole shares of preferred stock to be withdrawn, the preferred stock depositary will deliver to that holder at the same time a new depositary receipt evidencing the excess number of depositary shares.

**Voting Deposited Preferred Stock**

When the preferred stock depositary receives notice of any meeting at which the holders of any series of deposited preferred stock are entitled to vote, the preferred stock depositary will mail the information contained in the notice to the record holders of the depositary shares relating to the applicable series of preferred stock. Each record holder of the depositary shares on the record date will be entitled to instruct the preferred stock depositary to vote the amount of the preferred stock represented by the holder's depositary shares. To the extent possible, the preferred stock depositary will vote the amount of the series of preferred stock represented by depositary shares in accordance with the instructions it receives.

Adelphia will agree to take all reasonable actions that the preferred stock depositary determines are necessary to enable the preferred stock depositary to vote as instructed. The preferred stock depositary will vote all shares of any series of preferred stock held by it proportionately with instructions received if it does not receive specific instructions from the holders of depositary shares representing that series of preferred stock.

**Amendment and Termination of the Deposit Agreement**

The form of depositary receipt evidencing the depositary shares and any provision of the deposit

35

agreement may at any time be amended by agreement between Adelphia and the preferred stock depositary. However, any amendment that imposes additional charges or materially and adversely alters the existing rights of the holders of depositary shares will not be effective unless the amendment has been approved by the holders of at least a majority of the affected depositary shares then outstanding. Holders who retain their depositary receipts after the amendment becomes effective will be deemed to agree to the amendment and will be bound by the amended deposit agreement. The deposit agreement automatically terminates if:

. all outstanding depositary shares have been redeemed;

. each share of preferred stock has been converted into or exchanged for common stock; or

. a final distribution in respect of the preferred stock has been made to the holders of depositary shares in connection with any liquidation, dissolution or winding up of Adelphia.

Adelphia may terminate the deposit agreement at any time and the preferred stock depositary will give notice of that termination to the record holders of all outstanding depositary receipts not less than 30 days prior to the termination date. In that event, the preferred stock depositary will deliver or make available for delivery to holders of depositary shares, upon surrender of the depositary shares, the number of whole or fractional shares of the related series of preferred stock as are represented by those depositary shares.

**Charges of Preferred Stock Depositary; Taxes and Other Governmental Charges**

No fees, charges and expenses of the preferred stock depositary or any agent of the preferred stock depositary or of any registrar will be payable by any person other than Adelphia, except for any taxes and other governmental charges and except as provided in the deposit agreement. If the preferred stock depositary incurs fees, charges or expenses for which it is not otherwise liable at the election of a holder of a depositary receipt or other person, that holder or other person will be liable for those fees, charges and expenses.

**Resignation and Removal of Depositary**

The preferred stock depositary may resign at any time by delivering to Adelphia notice of its intent to do so, and Adelphia may at any

© 2002.  EDGAR Online, Inc.

time remove the preferred stock depositary. Any resignation or removal will take effect upon the appointment of a successor preferred stock depositary and its acceptance of the appointment. A successor preferred stock depositary must be appointed within 60 days after delivery of the notice of resignation or removal and must be a bank or trust company having its principal office in the United States and having a combined capital and surplus of at least $50,000,000.

### Miscellaneous

The preferred stock depositary will forward all reports and communications from Adelphia which are delivered to the preferred stock depositary and which Adelphia is required to furnish to the holders of the deposited preferred stock.

Neither the preferred stock depositary nor Adelphia will be liable if it is prevented or delayed by law or any circumstances beyond its control in performing its obligations under the deposit agreement. The obligations of Adelphia and the preferred stock depositary under the deposit agreement will be limited to performance with honest intentions of their duties under the agreement and they will not be obligated to prosecute or defend any legal proceeding in respect of any depositary shares, depositary receipts or shares of preferred stock unless satisfactory indemnity is furnished. Adelphia and the preferred stock depositary may rely upon written advice of counsel or accountants, or upon information

36

provided by holders of depositary receipts or other persons believed to be competent and on documents believed to be genuine.

## DESCRIPTION OF GUARANTEES

From time to time, Adelphia may guarantee debt securities issued by any of its subsidiaries. The following briefly summarizes the material terms of the guarantees. You should read the particular terms of any guarantees that are offered by us and the applicable guarantee agreement which will be described in more detail in a prospectus supplement. The prospectus supplement will also state whether any of the generalized provisions summarized below do not apply to the guarantees being offered. Each guarantee will be qualified as an indenture under the Trust Indenture Act of 1939. We will name the trustee who will act as indenture trustee under each guarantee for purposes of the Trust Indenture Act in the prospectus supplement relating to such guaranteed debt securities. The terms of each guarantee will be those set forth in the applicable guarantee agreement and those made part of the guarantee agreement by the Trust Indenture Act. Because the following is only a summary of the guarantees, it does not contain all information that you may find useful. For further information about the guarantees, you should read the relevant guarantee agreement. Forms of the guarantee agreement are included as exhibits to the registration statement of which this prospectus forms a part. See "Where You Can Find More Information" below for information on how to obtain copies of the forms of the guarantee agreement. Each guarantee will be held by the guarantee trustee for the benefit of the holders of the guaranteed debt securities.

### The Guarantees

Under each guarantee, we will irrevocably and unconditionally agree to pay in full, to the extent not paid by or on behalf of our issuing subsidiary, to the holders of the guaranteed debt securities, the payment of principal of, and any premium, if any, and interest, if any, and sinking fund payments, if any, on, the guaranteed debt securities when due, whether at maturity, by acceleration or redemption or otherwise. Under the terms of the full and unconditional guarantee, holders of the guaranteed debt securities will not be required to exercise their remedies against the issuer of the debt securities before they proceed directly against Adelphia. We may satisfy our obligation to make a guarantee payment by paying the required amounts directly to the holders of the guaranteed debt securities, or by causing the applicable subsidiary to pay them to the holders. The guarantees will be a general unsecured obligation of Adelphia and will be either (1) subordinated in right of payment to all of Adelphia's senior indebtedness or (2) ranked equally in right of payment with all of Adelphia's senior indebtedness, which ranking will be set forth in the applicable prospectus supplement.

### Amendments, Assignment and Succession

We and the guarantee trustee may not amend the guarantee agreement in a way that will adversely affect in any material respect the rights of the holders of the guaranteed securities without the consent of a majority of the outstanding guaranteed debt securities. The manner of obtaining any such approval of holders of such guaranteed debt securities will be set forth in an accompanying prospectus supplement.

We may not assign our obligations under the guarantee agreement except in connection with a merger, consolidation or sale and pursuant to which the successor or assignee agrees in writing to perform our obligations under the guarantee agreement. Each of the guarantees will bind our successors, assigns, receivers, trustees and representatives and will inure to the benefit of the holders of the outstanding guaranteed debt securities.

37

### Events of Default

EDGARpro    © 2002 EDGAR Online, Inc.

An event of default under the guarantee agreement will occur if we fail to (1) make any guarantee payment when obligated to do so, or (2) perform any other obligation and the default remains unremedied for 30 days. The holders of a majority of the outstanding guaranteed debt securities will have the right to direct the time, method and place of conducting any remedy available to the guarantee trustee or to direct the exercise of any trust or power conferred upon the guarantee trustee under the guarantee agreement.

We, as guarantor, will be obligated to file annually with the guarantee trustee a certificate as to our compliance with all the conditions and covenants applicable to us under the guarantee.

**The Guarantee Trustee**

The guarantee trustee will undertake to perform only those duties that are specifically set forth in the guarantee agreement, except that, after a default by us under the guarantee, it must exercise the same degree of care and skill as a prudent person would exercise or use in the conduct of his or her own affairs. Subject to this provision, the guarantee trustee is under no obligation to exercise any of the powers vested in it by the guarantee agreement at the request of any holder of guaranteed debt securities unless it is offered reasonable indemnity against the cost, expenses and liabilities that it might incur as a result.

**Termination of the Guarantees**

Each guarantee will terminate as to the guaranteed debt securities issued by the applicable subsidiary upon full payment of the aggregate principal amount of, plus all accrued and unpaid premiums, interest and sinking fund payments, if any, on, all the applicable guaranteed debt securities. Until that time, the guarantee will remain in full force and effect. In addition, the guarantee will continue to be effective or will be reinstated, as the case may be, if at any time any holder of the guaranteed debt securities must restore payment of any sums paid to it under the applicable debt securities or guarantee.

## PLAN OF DISTRIBUTION

Any of the securities being offered under this prospectus may be sold in any one or more of the following ways from time to time:

. through agents;

. to or through underwriters;

. through dealers; and

. directly by Adelphia to purchasers.

The distribution of the securities may be effected from time to time in one or more transactions at a fixed price or prices, which may be changed, at market prices prevailing at the time of sale, at prices related to such prevailing market prices or at negotiated prices. Securities may also be offered or sold through depository receipts issued by a depository institution.

Offers to purchase securities may be solicited by agents designated by Adelphia from time to time. Any agent involved in the offer or sale of the securities under this prospectus will be named, and any commissions payable by Adelphia to these agents will be set forth, in a related prospectus supplement. Unless otherwise indicated in a prospectus supplement, any agent will be acting on a reasonable best

38

efforts basis for the period of its appointment. Any agent may be deemed to be an underwriter, as that term is defined in the Securities Act, of the securities so offered and sold.

If securities are sold by means of an underwritten offering, Adelphia will execute an underwriting agreement with an underwriter or underwriters at the time an agreement for such sale is reached, and the names of the specific managing underwriter or underwriters, as well as any other underwriters, the respective amounts underwritten and the terms of the transaction, including commissions, discounts and any other compensation of the underwriters and dealers, if any, will be set forth in a related prospectus supplement. That prospectus supplement and this prospectus will be used by the underwriters to make resales of the securities. If underwriters are used in the sale of any securities in connection with this prospectus, those securities will be acquired by the underwriters for their own account and may be resold from time to time in one or more transactions, including negotiated transactions, at fixed public offering prices or at varying prices determined by the underwriters and Adelphia at the time of sale. Securities may be offered to the public either through underwriting syndicates represented by managing underwriters or directly by one or more underwriters. If any underwriter or underwriters are used in the sale of securities, unless otherwise indicated in a related prospectus supplement, the underwriting

EDGAR FATPATH EDGARpro    © 2002    EDGAR Online, Inc.

agreement will provide that the obligations of the underwriters are subject to some conditions precedent and that the underwriters with respect to a sale of these securities will be obligated to purchase all such Securities if any are purchased.

Adelphia may grant to the underwriters options to purchase additional securities, to cover over-allotments, if any, at the initial public offering price, with additional underwriting commissions or discounts, as may be set forth in a related prospectus supplement. If Adelphia grants any over-allotment option, the terms of that over-allotment option will be set forth in the prospectus supplement for these securities.

If a dealer is utilized in the sale of the securities in respect of which this prospectus is delivered, Adelphia will sell these securities to the dealer as principal. The dealer may then resell such securities to the public at varying prices to be determined by such dealer at the time of resale. Any such dealer may be deemed to be an underwriter, as such term is defined in the Securities Act, of the securities so offered and sold. The name of the dealer and the terms of the transaction will be set forth in the prospectus supplement relating to those offers and sales.

Offers to purchase securities may be solicited directly by Adelphia and those sales may be made by Adelphia directly to institutional investors or others, who may be deemed to be underwriters within the meaning of the Securities Act with respect to any resale of those securities. The terms of any sales of this type will be described in the prospectus supplement.

Securities may also be offered and sold, if so indicated in the related prospectus supplement, in connection with a remarketing upon their purchase, in accordance with a redemption or repayment in connection with their terms, or otherwise, by one or more "remarketing firms," acting as principals for their own accounts or as agents for Adelphia. Any remarketing firm will be identified and the terms of its agreement, if any, with Adelphia and its compensation will be described in a related prospectus supplement. Remarketing firms may be deemed to be underwriters, as that term is defined in the Securities Act, in connection with the securities remarketed by them.

If so indicated in a related prospectus supplement, Adelphia may authorize agents and underwriters to solicit offers by certain institutions to purchase securities from Adelphia at the public offering price set forth in a related prospectus supplement as part of delayed delivery contracts providing for payment and delivery on the date or dates stated in a related prospectus supplement. Such delayed delivery contracts will be subject to only those conditions set forth in a related prospectus supplement. A commission indicated in a related prospectus supplement will be paid to underwriters and agents soliciting purchases of securities pursuant to delayed delivery contracts accepted by Adelphia.

39

Agents, underwriters, dealers and remarketing firms may be entitled under relevant agreements with Adelphia to indemnification by Adelphia against some liabilities, including liabilities under the Securities Act, or to contribution with respect to payments which such agents, underwriters, dealers and remarketing firms may be required to make in respect thereof.

Each series of securities will be a new issue and, other than the Class A common stock, which is quoted on the Nasdaq National Market, will have no established trading market. Unless otherwise specified in a related prospectus supplement, Adelphia will not be obligated to list any series of securities on an exchange or otherwise. We cannot assure you that there will be any liquidity in the trading market for any of the securities.

Agents, underwriters, dealers and remarketing firms may be customers of, engage in transactions with, or perform services for, Adelphia and its subsidiaries in the ordinary course of business.

40
**WHERE YOU CAN FIND MORE INFORMATION**

We file annual, quarterly and special reports, as well as proxy statements and other information with the SEC. You may read and copy any document we file with the SEC at the SEC's Public Reference Room at 450 Fifth Street, N.W., Washington, D.C. 20549 or at its Regional Offices in Chicago, Illinois or New York, New York. You may obtain further information about the operation of the Public Reference Room by calling the SEC at 1-800-SEC-0330. Our SEC filings are also available to the public over the Internet at the SEC's web site at http://www.sec.gov, which contains reports, proxy statements and other information regarding registrants like us that file electronically with the SEC.

This prospectus is part of a registration statement on Form S-3 filed by us with the SEC under the Securities Act of 1933, as amended. As permitted by SEC rules, this prospectus does not contain all of the information included in the registration statement and the accompanying exhibits filed with the SEC. You may refer to the registration statement and its exhibits for more information.

The SEC allows us to "incorporate by reference" into this prospectus the information we file with the SEC. This means that we can disclose important information to you by referring you to those documents. The information incorporated by reference is considered to

EDGAR EATPATH EDGARpro    © 2002.  EDGAR Online, Inc.

be part of this prospectus. If we subsequently file updating or superseding information in a document that is incorporated by reference into this prospectus, the subsequent information will also become part of this prospectus and will supersede the earlier information.

We are incorporating by reference the following documents that we have filed with the SEC:

. our Annual Report on Form 10-K for the year ended December 31, 2000, as amended by our Form 10-K/A;

. our Quarterly Report on Form 10-Q for the quarter ended March 31, 2001;

. our Current Reports on Form 8-K for the events dated June 7, 2001, April 25, 2001, April 20, 2001, February 14, 2001, February 2, 2001, January 23, 2001, January 18, 2001, January 8, 2001, January 3, 2001 and January 1, 2001, and exhibits 99.01 and 99.02 to our Current Report on Form 8-K for the event dated September 9, 1999 (as amended by our Form 8-K/A filed on January 2, 2001);

. our definitive proxy statement dated July 5, 2001 with respect to the Annual Meeting of Stockholders to be held on August 7, 2001; and

. the description of our Class A common stock contained in our registration statement filed with the SEC under Section 12 of the Exchange Act and subsequent amendments and reports filed to update such description.

We are also incorporating by reference into this prospectus all of our future filings with the SEC under Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act until this offering has been completed.

41

You may obtain a copy of any of our filings which are incorporated by reference, at no cost, by writing to or telephoning us at the following address:

Adelphia Communications Corporation One North Main Street Coudersport, Pennsylvania 16915 Attention: Investor Relations Telephone: (814) 274-9830

You should rely only on the information provided in this prospectus or incorporated by reference. We have not authorized anyone to provide you with different information. You should not assume that the information in this prospectus is accurate as of any date other than the date on the first page of the prospectus. We are not making this offer of securities in any state or country in which the offer or sale is not permitted.

## LEGAL MATTERS

Buchanan Ingersoll Professional Corporation, Pittsburgh, Pennsylvania will pass upon the validity of the securities. Any required information regarding ownership of Adelphia's securities by lawyers of such firm will be contained in the applicable prospectus supplement. If the securities are underwritten, the applicable prospectus supplement will also set forth whether and to what extent, if any, a law firm for the underwriters will pass upon the validity of the securities.

## EXPERTS

The financial statements and the related financial statement schedules incorporated in this prospectus by reference from Adelphia's Annual Report on Form 10-K for the year ended December 31, 2000, have been audited by Deloitte & Touche LLP, independent auditors, as stated in their report, which is incorporated herein by reference, and have been so incorporated in reliance upon the report of such firm given upon their authority as experts in accounting and auditing.

The consolidated financial statements of Century Communications Corp. and subsidiaries as of May 31, 1999 and 1998 and for each of the three years in the period ended May 31, 1999, incorporated by reference in this prospectus from Adelphia's Current Report on Form 8-K filed September 9, 1999 have been audited by Deloitte & Touche LLP, independent auditors, as stated in their report, which is incorporated herein by reference, and have been so incorporated in reliance upon the report of such firm given upon their authority as experts in accounting and auditing.

The consolidated financial statements of FrontierVision Partners, L.P. and subsidiaries as of December 31, 1998 and 1997, and for each of the years in the three year period ended December 31, 1998, have been incorporated by reference herein from Adelphia's Current Report on Form 8-K filed September 9, 1999 (as amended on January 2, 2001), in reliance upon the report of KPMG LLP, independent certified public accountants, incorporated by reference herein, and upon the authority of said firm as experts in accounting and auditing.

42

**PART II**

**INFORMATION NOT REQUIRED IN PROSPECTUS**

## ITEM 14. OTHER EXPENSES OF ISSUANCE AND DISTRIBUTION

The following is an estimate of the expenses which will be incurred by Adelphia in connection with the issuance and distribution of the securities being registered.*

### AMOUNT

```
SEC filing fee................................................  $1,231,416
Trustee fees.................................................      10,000
Blue Sky fees and expenses...................................      20,000
Legal fees and expenses......................................     200,000
Accounting fees and expenses.................................     150,000
Printing and engraving expenses..............................     150,000
Miscellaneous expenses.......................................      50,000
----------------------                                         ----------

Total........................................................  $1,811,416
                                                               ==========
```

_____

*All amounts are estimated except for the SEC filing fee.

## ITEM 15. INDEMNIFICATION OF DIRECTORS AND OFFICERS

Section 145 of the Delaware General Corporation Law provides in general that a corporation may indemnify its directors, officers, employees or agents against expenditures (including judgments, fines, amounts paid in settlement and attorneys' fees) made by them in connection with certain lawsuits to which they may be made parties by reason of their being directors, officers, employees or agents and shall so indemnify such persons against expenses (including attorneys' fees) if they have been successful on the merits or otherwise. The bylaws of Adelphia provide for indemnification of the officers and directors of Adelphia to the full extent permissible under Delaware law.

Adelphia's Certificate of Incorporation also provides, pursuant to Section 102(b)(7) of the Delaware General Corporation Law, that directors of Adelphia shall not be personally liable to Adelphia or its stockholders for monetary damages for breach of fiduciary duty as a director for acts or omissions after July 1, 1986, provided that directors shall nonetheless be liable for breaches of the duty of loyalty, bad faith, intentional misconduct, knowing violations of law, unlawful distributions to stockholders, or transactions from which a director derived an improper personal benefit.

Adelphia maintains, at its expense, a policy of insurance which insures its directors and officers, subject to certain exclusions and deductions as are usual in such insurance policies, against certain liabilities which may be incurred in those capacities.

II-1

## ITEM 16. EXHIBITS AND FINANCIAL STATEMENT SCHEDULES

(a) The following is a complete list of Exhibits filed as part of this Registration Statement, which are incorporated herein:

| Exhibit No. | Reference | |
|---|---|---|
| 1.01 | Forms of Underwriting Agreements | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16104) |
| 4.01 | The Certificate of Incorporation of Adelphia Communications Corporation, as amended | Incorporated herein by reference is Exhibit 3.01 to Registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999. (File No. 0-16014) |
| 4.02 | Bylaws of Adelphia Communications Corporation, as amended | Incorporated herein by reference is Exhibit 3.02 to Registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999. (File No. 0-16014) |
| 4.03 | Senior Debt Indenture between Adelphia Communications Corporation The Bank of New York, successor entity by acquisition to Bank of Montreal Trust Company | Incorporated herein by reference is Exhibit 4.01 to Registrant's Form 8-K for the event dated April 28, 1999. (File No. 0-16104). |
| 4.04 | Subordinated Debt Indenture between Adelphia Communications Corporation and The Bank of New York, successor entity by acquisition to Bank of Montreal Trust Company | Incorporated herein by reference is Exhibit 4.01 to Registrant's Form 8-K for the event dated January 23, 2001. (File No. 0-16104). |
| 4.05 | Form of Subordinated Guarantee Agreement | Previously filed. |
| 4.06 | Form of Senior Guarantee Agreement | Previously filed. |
| 4.07 | Certificate of Designations for 5-1/2% Series D Convertible Preferred Stock | Incorporated herein by reference is Exhibit 3.01 to Registrant's Current Report on Form 8-K for the event dated April 28, 1999. (File No. 0-16104) |
| 4.08 | Form of Debt Warrant Agreement, including a form of debt warrant certificate | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16104) |

II-2

| | | |
|---|---|---|
| 4.09 | Form of Equity Warrant Agreement, including a form of equity warrant certificate | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16104) |
| 4.10 | Form of Deposit Agreement, including a form of depositary receipt | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16104) |
| 5.01 | Opinion of Buchanan Ingersoll Professional Corporation | Previously filed. |
| 12.01 | Computation of Ratio of Earnings to Combined Fixed Charges and Preferred Stock Dividends | Previously filed. |
| 23.01 | Consent of Deloitte & Touche LLP with respect to financial statements of Adelphia Communications Corporation | Previously filed. |
| 23.02 | Consent of Deloitte & Touche LLP with respect to financial statements of Century Communications Corp. | Previously filed. |
| 23.03 | Consent of KPMG LLP with respect to financial statements of FrontierVision Partners, L P | Previously filed. |
| 23.04 | Consent of Buchanan Ingersoll Professional Corporation (included in Exhibit 5.01) | Previously filed. |
| 24.01 | Power of Attorney (included on the signature page of the Registration Statement) | Previously filed. |
| 25.01 | Statement of Eligibility of Trustee | Previously filed. |

II-3

## ITEM 17. UNDERTAKINGS

(a) Rule 415 Offering.

The undersigned Registrant hereby undertakes:

(1) To file, during any period in which offers or sales are being made, a post-effective amendment to this Registration Statement:

(i) To include any prospectus required by Section 10(a)(3) of the Securities Act of 1933;

(ii) To reflect in the prospectus any facts or events arising after the effective date of the Registration Statement (or the most recent post- effective amendment thereof) which, individually or in the aggregate, represent a fundamental change in the information set forth in the Registration Statement;

(iii) To include any material information with respect to the plan of distribution not previously disclosed in the Registration Statement or any material change to such information in the Registration Statement;

Provided, however, that paragraphs (1)(i) and (1)(ii) above do not apply if the Registration Statement is on Form S-3 or Form S-8, and the information required to be included in a post-effective amendment by those paragraphs is contained in periodic reports filed with or furnished to the Commission by the Registrant pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934 that are incorporated by reference in the Registration Statement.

(2) That, for the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(3) To remove from registration by means of a post-effective amendment any of the securities being registered which remain unsold at the termination of the offering.

(b) Filings Incorporating Subsequent Exchange Act Documents by Reference.

The undersigned Registrant hereby undertakes that, for purposes of determining any liability under the Securities Act of 1933, each filing of the Registrant's annual report pursuant to Section 13(a) or Section 15(d) of the Securities Exchange Act of 1934 (and, where applicable, each filing of an employee benefit plan's annual report pursuant to Section 15(d) of the Securities Exchange Act of 1934) that is incorporated by reference in the Registration Statement shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(c) Request for Acceleration of Effective Date.

Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to directors, officers and controlling persons of the Registrant pursuant to the foregoing provisions, or otherwise, the Registrant has been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is, therefore,

II-4

unenforceable. In the event that a claim for indemnification against such liabilities (other than the payment by the Registrant of expenses incurred or paid by a director, officer or controlling person of the Registrant of expenses incurred or paid by a director, officer or controlling person of the Registrant in the successful defense of any action, suit or proceeding) is asserted by such director, officer or controlling person in connection with the securities being registered, the Registrant will, unless in the opinion of its counsel the matter has been settled by controlling precedent, submit to a court of appropriate jurisdiction the question of whether such indemnification by it is against public policy as expressed in the Securities Act of 1933 and will be governed by the final adjudication of such issue.

(d) Rule 430A.

The undersigned Registrant hereby undertakes that:

(1) For purposes of determining any liability under the Securities Act of 1933, the information omitted from the form of prospectus filed as part of this registration statement in reliance upon Rule 430A and contained in a form of prospectus filed by the Registrant

pursuant to Rule 424(b)(1) or (4) or 497(h) under the Securities Act shall be deemed to be part of this registration statement as of the time it was declared effective.

(2) For the purpose of determining any liability under the Securities Act of 1933, each post-effective amendment that contains a form of prospectus shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

(e) Trust Indenture Application.

The undersigned Registrant hereby undertakes to file an application for the purpose of determining the eligibility of the trustee to act under subsection
(a) of Section 310 of the Trust Indenture Act ("Act") in accordance with the rules and regulations prescribed by the Commission under Section 305(b)(2) of the Act.

II-5

## SIGNATURES

Pursuant to the requirements of the Securities Act of 1933, the Registrant certifies that it has reasonable grounds to believe that it meets all of the requirements for filing this Registration Statement on Form S-3 and has duly caused this Registration Statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of Coudersport, Commonwealth of Pennsylvania, on the 19th day of July, 2001.

### ADELPHIA COMMUNICATIONS CORPORATION

```
                 By /s/ Timothy J. Rigas
                 -------------------------------------------
                 Timothy J. Rigas, Executive Vice President,
                 Chief Financial Officer, Chief Accounting
                 Officer, Treasurer and Director
```

Pursuant to the requirements of the Securities Act, this Registration Statement has been signed by the following persons in the capacities and on the dates indicated.

| SIGNATURES | TITLE | DATE |
|---|---|---|
| *  | Chairman, President and Chief Executive Officer | July 19, 2001 |
| JOHN J. RIGAS | | |
| /s/ Timothy J. Rigas | Executive Vice President, Chief Financial Officer, Chief Accounting Officer, Treasurer and Director | July 19, 2001 |
| TIMOTHY J. RIGAS | | |
| *  | Executive Vice President, Secretary and Director | July 19, 2001 |
| MICHAEL J. RIGAS | | |
| *  | Executive Vice President and Director | July 19, 2001 |
| JAMES P. RIGAS | | |
| *  | Director | July 19, 2001 |
| PETER L. VENETIS | | |
| | Director | |
| DENNIS P. COYLE | | |
| | Director | |
| PETE J. METROS | | |
| | Director | |
| LESLIE J. GELBER | | |
| | Director | |
| ERLAND E. KAILBOURNE | | |

\* /s/ Timothy J. Rigas
--------------------------------
Timothy J. Rigas
Attorney-in-fact


II-6
**EXHIBIT INDEX**

EDGARpro    © 2002.  EDGAR Online, Inc.

| Exhibit No. | Reference | |
|---|---|---|
| 1.01 | Forms of Underwriting Agreements | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16014) |
| 4.01 | The Certificate of Incorporation of Adelphia Communications Corporation, as amended | Incorporated herein by reference is Exhibit 3.01 to Registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999.  (File No. 0-16014) |
| 4.02 | Bylaws of Adelphia Communications Corporation, as amended | Incorporated herein by reference is Exhibit 3.02 to Registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999.  (File No. 0-16014) |
| 4.03 | Senior Debt Indenture between Adelphia Communications Corporation and The Bank of New York, successor entity by acquisition to Bank of Montreal Trust Company | Incorporated herein by reference is Exhibit 4.01 to Registrant's Form 8-K for the event dated April 28, 1999. (File No. 0-16104). |
| 4.04 | Subordinated Debt Indenture between Adelphia Communications Corporation and The Bank of New York, successor entity by acquisition to Bank of Montreal Trust Company | Incorporated herein by reference is Exhibit 4.01 to Registrant's Form 8-K for the event dated January 23, 2001. (File No. 0-16104). |
| 4.05 | Form of Subordinated Guarantee Agreement | Previously filed. |
| 4.06 | Form of Senior Guarantee Agreement | Previously filed. |
| 4.07 | Certificate of Designations for 5-1/2% Series D Convertible Preferred Stock | Incorporated herein by reference is Exhibit 3.01 to Registrant's Current Report on Form 8-K for the event dated April 28, 1999. (File No. 0-16104) |
| 4.08 | Form of Debt Warrant Agreement, including a form of debt warrant certificate | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16104) |
| 4.09 | Form of Equity Warrant Agreement, including a form of equity warrant certificate | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16104) |
| 4.10 | Form of Deposit Agreement, including a form of depositary receipt | To be filed by Form 8-K and incorporated herein by reference. (File No. 0-16104) |
| 5.01 | Opinion of Buchanan Ingersoll Professional Corporation | Previously filed. |
| 12.01 | Computation of Ratio of Earnings to Combined Fixed Charges and Preferred Stock Dividends | Previously filed. |
| 23.01 | Consent of Deloitte & Touche LLP with respect to financial statements of Adelphia Communications Corporation | Previously filed. |
| 23.02 | Consent of Deloitte & Touche LLP with respect to financial statements of Century Communications Corp. | Previously filed. |
| 23.03 | Consent of KPMG LLP with respect to financial statements of FrontierVision Partners, L.P. | Previously filed. |
| 23.04 | Consent of Buchanan Ingersoll Professional Corporation (included in Exhibit 5.01) | Previously filed. |
| 24.01 | Power of Attorney (included on the signature page of the Registration Statement) | Previously filed. |
| 25.01 | Statement of Eligibility of Trustee | Previously filed. |

# End of Filing

EDGAR EDGARpro     © 2002   EDGAR Online, Inc.